```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                     Newport News Division
```

**JOANN WRIGHT HAYSBERT,**

      Plaintiff,

v.                                Civil Action No. 4:20cv121

**BLOOMIN' BRANDS, INC.**
**And**
**OUTBACK STEAKHOUSE OF FLORIDA, LLC,**

      Defendants.


<u>ORDER</u>

In her fourth and fifth requests to extend discovery in this slip and fall negligence case, Plaintiff Joann Haysbert ("Haysbert" or "Plaintiff") seeks additional subpoenas and deposition testimony allegedly to explore the nature of a work order for floor repairs in the building's lobby. Because the work order was produced near the end of an already extended discovery period, and stated that the repairs were believed necessary due to "lots of slip and falls," the court previously ordered limited additional discovery, Minute Order (ECF NO. 126, at 2), which the parties completed in July. After reviewing Haysbert's latest requests, along with the voluminous exhibits she attached, the court held argument on both motions and thereafter directed Outback to supplement the record with complete transcripts of three witnesses, along with a declaration confirming the company's

1

representation that the work order was closed without any action being taken on the basis of its recommendations. See Defs.' Mem. in Opp'n to Mot. for Extension of Fact Disc. (ECF No. 163); Defs.' Resp. to Mot. for Extension of Fact Disc. (ECF No. 165). Though the court did not direct or anticipate additional briefing, Plaintiff supplemented the record with additional deposition transcripts along with a declaration from an Outback waitress who was not deposed. See Clark Decl. (ECF No. 160); Pl.'s Reply to Mot. for Extension of Time to Complete Disc. (ECF No. 164). Collectively, these documents establish that the issue addressed by the work order occurred months before Plaintiff's visit to the Outback, in an area of the restaurant far from where she fell. In addition, Plaintiff has produced no evidence that Outback's later decision to replace the entire floor in the premises is related to the work order, or to any issue of a defective condition in the dining room where the incident occurred. Instead, witnesses consistently testified that the replacement was due to a leak near the kitchen which caused floorboards to buckle.

Plaintiff's counsel, as is his right, apparently does not believe Outback's representations, or the testimony of eight witnesses he has already deposed. But he has produced no evidence to meaningfully contradict them or to suggest that there is good cause to extend again a discovery period which began over a year ago under the court's Rule 16(b) Order. See R. 16(b) Scheduling

2

Order (ECF No. 12). Moreover, none of the witnesses he seeks to depose (or re-depose) have been shown to have any additional information relevant to the condition of the floor on May 23, 2018, the date of his client's fall. Finally – even if Plaintiff's counsel had a basis to conclude additional discovery was necessary, this discovery is unconnected to the work order, and counsel has not established any reason why he could not have timely pursued additional discovery on these topics during the period discovery has been ongoing. Accordingly, as set out in greater detail below, Plaintiff's two most recent requests to extend discovery are both DENIED.

### I.   ANALYSIS

#### A.   Legal Standard

Pursuant to Rule 16(b)(4), with regard to modifying a Rule 16(b) Scheduling Order, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); see also McMillan v. Cumberland . Bd. of Educ., 734 Fed. App'x. 836, 845 (4th Cir. 2018) (unpublished) ("Once a district court has entered a scheduling order it may be modified only for good cause." (citing Fed. R. Civ. P. 16(b)(4); Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008))). "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot be reasonably met despite the party's diligence,' and … 'the good-cause standard will not be satisfied if the [district]

3

court concludes that the party seeking relief … has not acted diligently in compliance with the schedule.'" Cook v. Howard, 484 Fed. App'x. 805, 815 (4th Cir. 2012) (unpublished) (alteration in original) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure Civ. 3d § 1522.2 (3d 2010)).

B.   **Plaintiff Has Not Shown Good Cause to Again Extend Discovery.**

Plaintiff originally filed her Complaint in the Circuit Court for the City of Hampton on July 13, 2020, alleging a fall in the Chesapeake Outback on May 23, 2018.[1]  Outback removed the case to this court, filed an Answer, and on August 7, 2020 the court issued its Rule 26(f) Scheduling Order authorizing the parties to commence "any form of discovery at any time subsequent to the date of this Order" requiring only that noticed depositions could not require attendance before late September 2020.  R. 26(f) Pretrial Order (ECF No. 7).  The Rule 26(f) Order also directed the parties to confer regarding a plan for discovery anticipating its completion on or before December 31, 2020.  Id.  On September 1, 2020, the court entered its Rule 16(b) Scheduling Order fixing the date for trial on June 15, 2021 and directing completion of all fact discovery by the Plaintiff no later than April 6, 2021, R. 16(b)

---

[1] Though Plaintiff's Complaint was beyond the two-year statute of limitations for such claims under Virginia law, she took advantage of extensions to the limitation period approved by the Supreme Court of Virginia due to the COVID-19 pandemic.  See In re: Order Declaring a Judicial Emergency in Response to COVID-19 Emergency (ECF No. 45-2); In re: Seventh Order Extending Decl. of Judicial Emergency in Response to COVID-19 Emergency (ECF No. 45-3). Accordingly, her Complaint was timely filed.

4

Scheduling Order (ECF No. 12), and expert discovery no later than May 11, 2021. Id.

During the contentious course of discovery, the court amended deadlines multiple times and on April 23, 2021 adopted the parties' Joint Stipulation fixing new deadlines. As relevant here, the Stipulation extended Plaintiff's fact discovery to July 7, 2021 and the deadline for disclosure of initial expert reports to June 16, 2021. Order (ECF No. 75). Thereafter, in addition to numerous other contested motions,[2] Haysbert filed two more requests to extend expert deadlines, Pl.'s Mot. for Extension of Expert Disc. Deadlines (ECF No. 92), and fact discovery generally. Pl.'s Mot. for Extension of Time to Complete Disc. (ECF No. 114). On June 15, 2021, the court convened a hearing to address several outstanding motions, including those requested extensions. By this time, discovery in the case had been open for nearly a year. Plaintiff had already served extensive written discovery, including requests for production and requests for admission. In addition, Plaintiff had already deposed at length five Outback witnesses, including the following:

> Chip Chase, Former Managing Partner of Chesapeake Outback (7 hours)

---

[2] In total the undersigned has considered 26 contested discovery motions. Plaintiff's counsel also objected to almost all of the decisions denying his requests for relief resulting in additional review by the district judge. See, e.g., Order (ECF No. 151); Order (ECF No. 161).

5

>Lisa Crosby, Former Key Manager of Chesapeake Outback, working on May 23, 2018 (9 hours over two days)
>
>Joi Myrick, Chesapeake Outback hostess working on May 23, 2018
>
>Sondra Gump, Chesapeake Outback To-Go area employee working on May 23, 2018
>
>Alecia Eletherion, Former Outback partner and Rule 30(b)(6) designee on 84 identified topics (7 hours)

Plaintiff had also already identified multiple liability and medical experts. On the basis of this extensive record, the court found little reason to further extend discovery when it convened on June 15, 2021. However, Haysbert's motion identified a work order that requested floor repairs at the Chesapeake Outback. Mem. of P. & A. in Supp. Pl.'s Mot. for Extension of Disc. Deadline, Attach. 2, Ex. B (ECF No. 115-2, at 13). The work order was a short, computer-generated document which was ambiguous on its face. It had one date of March 8, 2018 (before Haysbert fell) and another of November 14, 2018, long after the incident. Id. Because the work order had been produced late[3] in the extended discovery period and because it included references to "slip and falls" suggesting it might lead to the discovery of admissible

---

[3] The work order was produced on June 2, 2021, within the extended period of time for Plaintiff's extended fact discovery. Defendant's contend that the document was not requested earlier and surfaced only during preparation of Outback's 30(b)(6) witness. As noted elsewhere, the document does not relate to either the date of Plaintiff's fall or the condition of the floor where it occurred. So Defendants' explanation for its production is entirely consistent with the discovery requested. Regardless of the reason why it was produced in June, the court found good cause to permit investigation and ordered additional discovery to determine is relevance, if any.

evidence, the court granted <u>in part</u> the pending requests for extension, extended Plaintiff's expert disclosure date for liability experts by 45 days, and directed additional fact discovery limited to the nature of the work order and whether it might lead to admissible evidence relevant to Plaintiff's May 23, 2018 fall. Minute Order (ECF No. 126).

Since the court directed supplemental discovery, Plaintiff concluded two more depositions of Outback witnesses: Marcus Wilson, former Outback manager and author of the work order (2 hours); and Nicholas Seifert, Joint Venture Partner for Outback (over 5 hours). Plaintiff also located and deposed an independent witness identified in the Outback Incident Report. That witness was deposed on June 28, 2021. <u>See</u> Defs.' Mem. in Opp'n to Mot. for Extension of Fact Discovery, Exs. 1-3 (ECF No. 163-1 to 163-3). Unrelated to these extensions, Plaintiff also submitted a declaration from an Outback server who stated that during her employment she had "personally witnessed approximately five slip and falls[ ] in the dining room," including two by former Manager Crosby. Clark Decl. ¶¶ 3, 6 (ECF No. 160).

Notwithstanding this voluminous discovery record, Plaintiff's present motions both (nearly identically) allege that additional discovery is necessary to discover reasons why the Outback floor was eventually replaced in late 2018 or early 2019. Her counsel calls the "extremely limited discovery" granted by the court into

7

the work order request insufficient to inform his liability experts and fully investigate the alleged cause of Plaintiff's fall on May 23, 2018. Pl.'s Reply to Mot. for Extension of Time to Complete Discovery (ECF No. 164, at 3). Specifically, Plaintiff seeks to depose additional Outback witnesses, including the Regional Facilities Manager Theresa Seibert (previously Theresa Matthews), a new Rule 30(b)(6) designee on the topic of the floor replacement, and as-yet-unidentified flooring contractors involved in the project.

After reviewing the entire discovery history in the case, including the complete deposition transcripts of Wilson, Seifert, Crosby, and Eleftherion, the court finds no basis to further extend discovery in this year-old tort case. Wilson's testimony adequately describes the reasons for the language he used in submitting the work order. Wilson Dep. 65:15-66:11 (ECF No. 163-1, at 65-66) (explaining that on March 7, 2018, he noticed people losing their footing, but that "[n]obody fell"); id. 71:7-14 (ECF No. 163-1, at 71) ("[S]aying floors up front needs replaced, not refinished correctly, that's just terminology that we use as restaurants to get the work order looked at faster."); id. 95:25-96:17 (ECF No. 163-1, at 95-96) ("[M]e putting floor not refinished correctly is literally just me using verbiage."); id. 111:8-112:14 (ECF No. 163-1, at 111-12) (explaining that no one fell on March 7, 2018 but that his use of the phrase "slip and falls" was

8

"verbiage"); id. 119:13-19 (ECF No. 163-1, at 119)("From, you know, me being a restaurant manager and not knowing about floors, that's the verbiage I used."); id. 124:1-5 (ECF No. 163-1, at 124) ("I don't know what actually needed to happen up front. I put that work order in using that verbiage to get attention to the issue, because maybe I thought it was more than what it was."); id. 141:24-142:6 (ECF No. 163-1, at 141-42) (Q: "[Y]our work order talks about lots of slips and falls, and you - but you're saying that that was verbiage, that it didn't actually - that you actually knew of any, that you actually experienced any slip and falls happening at your restaurants, is that what you're saying?" A: "Correct."). He also clarifies that the locations he observed were near the front door - an area Plaintiff successfully navigated on her way in and out of the Outback on May 23, 2018. See id. 87:1-88:25 (ECF No. 163-1, at 87-88); id. 96:20-25 (ECF No. 163-1, at 96); id. 128:5-21 (ECF No. 163-1, at 128). Finally, he stated that he had not seen the problem re-occur since his original report in March, 2018. Id. 77:18-78:20 (ECF No. 163-1, at 77-78); id. 113:14-114:17 (ECF No. 163-1, at 113-14); id. 116:4-14 (ECF No. 163-1, at 116); id. 119:20-121:17 (ECF No. 163-1, at 119-21); id. 122:10-20 (ECF No. 163-1, at 122).

With respect to the later floor replacement, which occurred long after Haysbert's fall, testimony from Wilson, Seifert, Eleftherion, and Crosby all refer in various ways to a flood caused

9

by a defective machine and aesthetic problems perceived by management. See, e.g., Wilson Dep. 78:21-80:22 (ECF No. 163-1, at 78-80) (explaining that "the two different floor incidents are two different situations" and that he heard the floor was replaced after a "soda machine exploded and killed the - the floor area by the kitchen wall underneath the booths and a little bit into the . . . POSI area"); id. 125:11-127:1 (ECF No. 163-1, at 125-26) (stating that he heard the floor was replaced because a soda fountain "exploded in between the walls, which leaked into the floor, which buckled the floor" near the kitchen); Seifert Dep. 39:1-17 (ECF No. 163-2, at 39) (stating that "[t]here was a water leak in the kitchen that damaged a part of the floor," specifically "[t]he rear part of the floor in the dining room"); id. 217:15-18 (ECF No. 163-2, at 217) (Q: "What was the water leaking happening from, where was it coming from?" A: "I believe it was something related to the soda station in the kitchen."); Crosby Dep. 248:19-20 (ECF No. 164-2, at 273) ("We did change the floor, but only because we got flooded and it bubbled."); Eleftherion Dep. 95:18-96:18 (ECF No. 164-2, at 488) (describing the floor replacement as an "aesthetic upgrade"). At present, no witness (including Haysbert herself) has identified any unusual condition or issue involving the flooring where Haysbert sustained her fall on May 23, 2018. In fact, multiple witnesses, including an independent witness with no connection whatsoever to Outback testified that

10

there was nothing present on the floor which would have made it defective. See Robinson Dep. (ECF No. 163-3, at 34-35) (Q: "Did you notice anything about the floor prior to seeing the woman fall, anything in particular?" A: "Not that I remember. No."); id. (ECF No. 163-3, at 60-61) (Q: "Did you notice anything slippery on the floor?" A: "No."); id. 61:3-9 (ECF No. 163-3, at 61) ("I do remember looking at the floor, but I don't recall seeing anything that would have – you know, anything significant that would have caused the slip and fall that I recall.").

As the matter is only before the court on a discovery motion it is not necessary to reach any conclusions regarding the floor or its condition on May 23, 2018. I review this extensive testimony only to highlight the already accumulated evidence on that critical topic. Plaintiff's supposed need for additional discovery is not directed to the work order which is what prompted the most recent narrow extension of already extended deadlines. Plaintiff's counsel has had adequate access to discovery regarding the condition of the floor, including the eventual floor replacement which was discussed in the earliest Outback depositions. And there is no dispute that the floor was replaced in late 2018 or early 2019 long after Plaintiff's fall and had nothing to do with the work order Wilson authored nine months earlier. In fact, the Regional Facilities Manager for Bloomin' Brands, Theresa Seibert submitted a sworn declaration asserting

11

that the March 7, 2018 request for floor maintenance was never completed and that she rejected the "stale" proposal on November 14, 2018. Seibert Decl. ¶ 6(a)-(g) (ECF No. 165-1, at 2).

Haysbert also relies on the declaration of Outback Server Dejah Clark, who represented that the "approximately five" slip and falls she witnessed during her employment all involved women and ceased after the floor was replaced. It is difficult to know what to make of this testimony given that Clark does not report the date of any of these events, or even speculate on their cause. For purposes of these two motions to extend, however, it is sufficient to note that Clark was identified as an Outback employee several months before the close of discovery. See Minute Order, March 30, 2021 (granting in part Plaintiff's Motion to Compel and ordering Defendant to identify all Outback employees working on many 23, 2021). Her declaration says nothing about either the late disclosed work order, or the eventual floor repair. And under Virginia law it is fundamental that negligence is not presumed from the mere happening of an accident. Brill v. Safeway Stores, Inc., 227 Va. 246, 247 (1984).

To the extent Haysbert argues she needs additional time to investigate matters unrelated to the work order - such as cleaning procedures, previous reports of slip and falls, or related matters - she has had ample time since discovery began in the case over a year ago, and the court has already ruled on numerous requests

12

directed to these issues. Because the questions posed by the late disclosed work order have been addressed in the discovery already permitted, Plaintiff's fourth (ECF No. 143) and fifth (ECF No. 155) requests to extend it again are DENIED.

IT IS SO ORDERED.

                                      /s/
                              Douglas E. Miller
                              United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

August 23, 2021

Norfolk, Virginia