## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

JOANN WRIGHT HAYSBERT,

        Plaintiff,

v.                                       Action No. 4:20cv121

BLOOMIN' BRANDS, INC., et al.,

        Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter comes before the Court on motions for summary judgment filed by the plaintiff,

JoAnn Wright Haysbert ("plaintiff"), and defendants, Bloomin' Brands, Inc. ("Bloomin' Brands")

and Outback Steakhouse of Florida, LLC ("Outback Steakhouse"). ECF Nos. 184, 187. The

motions were referred to the undersigned United States Magistrate Judge on November 19, 2021,

pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). ECF No. 212.

After examination of the briefs and record, the Court finds that a hearing is unnecessary, as the

facts and legal arguments are adequately presented, and the decision process would not be aided

significantly by oral argument. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons

discussed below, the undersigned recommends that both motions for summary judgment be

**DENIED**.

### I.       PROCEDURAL BACKGROUND

On July 13, 2020, plaintiff filed a one-count complaint against defendants in the Circuit

Court for the City of Hampton. ECF No. 1-1. The complaint alleges that defendants owned and

operated an Outback restaurant and that they negligently failed to exercise reasonable care toward the safety of plaintiff. *Id.* at ¶¶ 31–39. Specifically, defendants allegedly failed to keep the floor in a reasonably safe condition and failed to warn plaintiff of unsafe conditions, namely a "slippery area on the floor," that defendants knew or should have known about, leading to plaintiff's fall and injury. *Id.*

Defendants removed the case to this Court on July 31, 2020. ECF No. 1. Defendants simultaneously filed an answer to the complaint, which they had previously filed in the Circuit Court. ECF No. 3.

On October 15, 2021, defendants moved for summary judgment, ECF No. 184, with Outback Steakhouse arguing[1] that plaintiff is "unable to identify any defect in the area of the restaurant where she fell," and that, therefore, there is no evidence of negligence in the absence of a defect or hazard. Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.")[2], ECF No. 185, at 2, 14–15. Bloomin' Brands also seeks summary judgment arguing that it is merely the parent corporation of Outback Steakhouse and, therefore, not liable to plaintiff. *Id.* at 4. Plaintiff filed a response in opposition on October 29, 2021. Pl.'s Opp. Defs.' Mot. Summ. J. ("Pl.'s Opp."), ECF No. 189. Defendants filed a reply on November 4, 2021. Reply Pl.'s Opp. Defs.' Mot. Summ. J. ("Defs.' Reply"), ECF No. 192.

Plaintiff also filed a motion for summary judgment on October 21, 2021, ECF No. 187, arguing that defendants breached their duty to plaintiff by failing to remedy an inherently

---

[1] Although "[p]laintiff addresse[d] Outback's argument as if it were presented by both Defendants," Pl.'s Opp. 6 n.1, and although the arguments would apply to Bloomin' Brands to the extent it owed a duty to plaintiff, only Outback Steakhouse seeks summary judgment on the ground that there is no evidence of any defect. Defs.' Mem. 1 ("As to Outback Steakhouse . . . .").

[2] Notwithstanding the short form notation for the parties' filings, all cited page numbers for the filings are citations to ECF page numbers.

dangerous defect in the flooring of which they had notice and by affirmatively creating a dangerous condition by using improper cleaning methods. Mem. Points Authorities Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem."), ECF No. 188, at 4. Defendants filed their response on November 4, 2021. Defs.' Mem. Opp. Pl.'s Mot. Summ. J. ("Defs.' Opp."), ECF No. 191. Plaintiff filed a reply brief on November 10, 2021. Pl.'s Reply Defs.' Opp. Pl.'s Mot. Summ. J. ("Pl.'s Reply"), ECF No. 193.

## II.    FACTUAL BACKGROUND

The following undisputed facts have been gathered from the pleadings, the parties' factual recitations for and in opposition to summary judgment, and the exhibits appended to the summary judgment filings, including excerpts of deposition testimony.

On May 23, 2018, plaintiff was a customer and invitee at an Outback restaurant in Chesapeake, Virginia (the "Chesapeake restaurant"), which is owned and operated by Outback Steakhouse. ECF No. 193-3, at 2; Defs.' Mem. at 1. Bloomin' Brands is the owner of Outback Steakhouse, ECF No. 185-8, at 10, 54–55 (testimony from Nicholas Seifert, joint venture partner of Outback Steakhouse), and the franchisor of the Chesapeake restaurant where plaintiff fell. ECF No. 188-3, at 2 (Bloomin' Brands' response to plaintiff's request for admissions). Plaintiff was there with her daughter, Nineveh Lynn Haysbert,[3] to order take out. *Id.* at 38; ECF No. 193-3, at 2. After placing her order and waiting about ten minutes in a parked car, plaintiff entered the restaurant to use the restroom. ECF No. 188-3, at 29. Once inside, she approached the hostess stand at the front of the restaurant to ask for directions to the restroom. *Id.* The hostess walked out from around the stand and directed plaintiff to the back of the restaurant. *Id.*; ECF No. 193-3, at 2. After taking one or two steps towards the restroom, plaintiff fell on the ground, hitting her

---

[3] To avoid confusion between plaintiff and her daughter, the Court refers to Nineveh Lynn Haysbert as Ms. Nineveh.

head and body on the left side.  ECF No. 188-3, at 25, 29; ECF No. 193-3, at 2.  Plaintiff says she

was in shock and overwhelmed from the fall, leaving her dazed and wobbly.  ECF No. 188-3, at

30.  Plaintiff says she fell because the floor was "slick," but cannot recall anything else concerning

the condition of the floor.  *Id.* at 23–24.  According to the testimony of former assistant manager

Lisa Crosby, plaintiff also said that "the floors were slick" shortly after falling.  ECF No. 193-2,

at 3; ECF No. 193-3, at 3, 21.  There was no warning where plaintiff fell of any defect in the

flooring or any signage that the floor was wet or that a patron needed to be cautious.  ECF No.

188-3, at 19, 39; ECF No. 193-3, at 16, 21.  Plaintiff was wearing "dress shoes" at the time she

fell, which have a "small heel" of "maybe two inches, if that."  ECF No. 185-3, at 32.

Plaintiff claims that, after she took one or two steps past the hostess down the walkway,

her next memory was waking up to several people standing around her, asking if she was alright.

ECF No. 188-3, at 16, 25, 29.  A server went to fetch Ms. Nineveh, who came in and saw several

people helping her mother stand up.  *Id.* at 39.  After briefly speaking with some other patrons and

Ms. Crosby, plaintiff and Ms. Nineveh left the restaurant in their car.  *Id.* at 29–30.

The floor of the Chesapeake restaurant was mopped every night.  ECF No. 193-3, at 6.

Defendants did not have a written policy on cleaning procedures and did not use cleaning logs or

sweep sheets.  *Id.* at 6–8.  The floor was over 20 years old at the time of the incident, and defendants

were already considering "refacing" the floor because "it looked like it was aging and needed to

be changed."  *Id.* at 14 (although this statement is from plaintiff, defendants responded that "[t]his

fact is undisputed").  Marcus Wilson, a former manager at the Chesapeake restaurant and now a

managing partner of Outback Steakhouse Williamsburg, ECF No. 185-7, at 18, 51, submitted a

work order on March 7, 2018, approximately 2.5 months before plaintiff's fall, which stated "Floor

up front needs replaced / Floor not refinished correctly lots of slip and falls.  When temperature

4

changes outside it tends to collect moisture and sweat." ECF No. 188-3, at 36. No repairs or changes were made to the floor until December 2018 or January 2019, when the entire floor was replaced after a water leak damaged the floor at the rear of the dining room. ECF No. 185-7, at 124; ECF No. 185-8, at 38–39.

Plaintiff also offers a declaration dated August 7, 2021, from Deajah Clark, a current server at the Chesapeake restaurant who also worked there on May 23, 2018. ECF No. 188-3, at 117–18. Ms. Clark reports witnessing "approximately five slip and falls occur in the dining room . . . all of them involving women." *Id.* at 117. Although not specifically identifying when these falls occurred, Ms. Clark states that "[s]ince the floor was changed, I have not seen anyone slip and fall." *Id.* at 118. She also states that "[g]uests and employees regularly complained about the slippery conditions of the floors." *Id.* at 117. Further, she states that "several women fell near the middle of the dining room area past the hostess stand," and that she saw Lisa Crosby "slip and fall twice near the middle of the dining room area past the hostess stand." *Id.* at 118. She also opines that these incidents "occurred due to the slipperiness of the floor in the dining room area." *Id.*

## III.   STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment and directs a Court to grant such motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).

Subsequently, the burden shifts to the non-moving party to present specific facts demonstrating that a genuine dispute of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). For the evidence to present a "genuine" dispute of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When addressing a summary judgment motion, a court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the non-moving party. *Id.* at 255. Nevertheless, if the non-moving party's evidence "is merely colorable, or is not significantly probative," *id.* at 249–50, or fails to rise above the level of "[m]ere unsupported speculation," *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006), a well-supported motion for summary judgment may be granted.

## IV.    DISCUSSION

Under Virginia law, a claim of negligence requires proof of "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King,* 585 S.E.2d 545, 548 (Va. 2003). A Virginia business has a legal duty to exercise ordinary care for customers on its premises. *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (citing *Colonial Stores v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)). A business breaches its legal duty to its invitees if it fails to remedy or warn of any unsafe condition on its premises that it has actual or constructive notice of, unless that condition is open and obvious. *Indian Acres v. Denion*, 213 S.E.2d 797, 799 (Va. 1975). "Inferences [of notice] must be based on facts, not presumptions. It is incumbent upon the plaintiff to show why and how the accident happened. If

6

that is left to conjecture, guess or random judgment, the plaintiff is not entitled to recover." *Murphy v. Saunders, Inc.,* 121 S.E.2d 375, 378 (Va. 1961). But although "negligence cannot be presumed from the mere happening of an accident," a plaintiff need not "negate every theory or possibility that the accident occurred in some manner which would relieve the defendants of liability." *Brill v. Safeway Stores, Inc.,* 315 S.E.2d 214, 215 (Va. 1984) (internal quotations and citations omitted). Instead, circumstantial evidence "may be sufficient to warrant the jury in inferring how the accident happened." *Id.* (internal quotations and citations omitted).

A plaintiff can also recover if they can show that the defect was affirmatively made by the defendant, as this constitutes another form of breach and constructive notice. *Austin v. Shoney's, Inc.*, 486 S.E.2d 285, 288 (Va. 1997) (holding that using improper cleaning methods for a grease-like film left near the kitchen was a hazardous condition affirmatively created by the property owner). In such cases, defendant "'ha[s] a duty to exercise reasonable care to avoid the genesis of the danger.'" *Id.* (quoting *Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 231 (Va. 1986)).

**A.     Genuine disputes of material fact relating to whether the floor was defective require denial of both summary judgment motions.**

**1.     The parties move for summary judgment based on the presence or absence of material defects in the flooring and based on the cleaning procedures of the Chesapeake restaurant.**

**a.     Plaintiff's argument for summary judgment**

Plaintiff moves for summary judgment, arguing that there is no genuine dispute of material fact regarding the presence of an inherent defect that caused the floor to be slick, causing plaintiff, a business invitee, to fall, and that defendants had actual and constructive notice of this defect. Pl.'s Mem. 4. Plaintiff cites her testimony that she fell because the floor was slick to show that the floor was defective. *Id.* at 9. Plaintiff also argues that the work order submitted by Mr. Wilson and the other slip and fall incidents reported by Ms. Clark, including those involving Ms. Crosby,

both show that the floor was defective and gave defendants actual notice of the defect. *Id.* at 9, 11–12. Further, plaintiff argues that defendants had constructive notice of the defect because the floor near the hostess stand was mopped prior to plaintiff's fall but no warning sign was posted. *Id.* at 9–10, 12–13; *see also* ECF No. 188-1, at 2; ECF No. 188-3, at 19, 39 (plaintiff's testimony and Ms. Nineveh's declaration that no wet floor signs were present). Plaintiff's evidence that the floor was mopped is predicated on hearsay testimony from Ms. Nineveh that several patrons told her that the floor where plaintiff fell had recently been mopped. ECF No. 188-3, at 38–39. Plaintiff also cites a text message from the son of Christopher Robinson, who, along with his father, was a patron at the time of the accident, which says that the floor was "I guess wet." *Id.* at 120–22.

Additionally, plaintiff argues that the failure to maintain allegedly industry standard cleaning procedures, or even to follow defendants' own cleaning procedures, was a dangerous condition created by defendants and itself a breach of the duty of care for which plaintiff can recover. Pl.'s Mem. 10–11. Finally, plaintiff argues that defendants failed to prevent the genesis of the danger by failing to fix the floors and that defendants failed to warn plaintiff of the danger, resulting in her injuries. *Id.* at 13–17.

In response, defendants argue that multiple witnesses have indicated that the floor was not actually hazardous. Defs.' Opp. 3–4. Specifically, defendants point to the testimony of Ms. Crosby, Ms. Alicia Eleftherion, managing partner and proprietor of the Chesapeake restaurant, and Christopher Robinson, along with plaintiff's answers to interrogatories and requests for admissions, to dispute that the floor was slick. *Id.* Defendants also note that plaintiff did not herself testify that she *saw* a defect in the flooring, and argue that any reference to Mr. Wilson's work order ignores his deposition testimony clarifying what he meant by "front of the restaurant," and which provides important context to his work order. *Id.* at 15–16. Defendants further argue

that Christopher Robinson's son did not witness plaintiff's fall and cannot accurately testify to its circumstances, and that other testimony about any mopping is contradicted by the testimony of Christopher Robinson. *Id.* at 3. Finally, defendants dispute that they had improper cleaning procedures and challenge the relevance of their internal cleaning policies to establish the standard of care, their duties, or any breach thereof. *Id.* at 14–15.

Plaintiff replies that she has shown defendants are liable by circumstantial evidence that she slipped due to a dangerous condition that defendants had notice of or that defendants created. Pl.'s Reply 5–7. Plaintiff also argues that defendants' policies and procedures are admissible to show their cleaning procedures did not conform to industry standards. *Id.* at 7–8. Further, plaintiff argues that she testified that the floor was slick, causing her to fall. ECF No. 193-3, at 3–4. Plaintiff argues that the work order speaks for itself, and that Christopher Robinson only testified that he cannot recall any mopping, and not affirmatively that there was no mopping. *Id.*

### b.   Outback Steakhouse's argument for summary judgment

Outback Steakhouse moves for summary judgment arguing that plaintiff has failed to establish the presence of any defect in the flooring. Defs.' Mem. at 14–15.[4] Outback Steakhouse notes that negligence is not presumed, and that plaintiff bears the burden of proof on all elements of negligence. *Id.* at 15 (quoting *Doe v. Terry*, 639 S.E.2d 197, 200 (Va. 2007) (A plaintiff must

---

[4] While Outback Steakhouse recites the applicable law that plaintiff must show actual or constructive knowledge of the unsafe condition, it does not argue it is entitled to summary judgment based on lack of notice of any defect. Defs.' Mem. 1, 14. Therefore, the Court will not consider any issues regarding notice as grounds for granting Outback Steakhouse summary judgment, notwithstanding plaintiff discussing notice in her response, Pl.'s Opp. 20–21, and defendants mentioning notice in passing in their reply brief, Defs.' Reply 2 ("Plaintiff has still not shown that a defect or hazardous condition on the floor where Plaintiff fell existed and *was known to Defendants*") (emphasis added). *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (internal quotations and citations omitted).

"furnish evidence to show how and why the accident occurred—some fact or facts by which it can be determined by the jury, and not be left entirely to conjecture, guess or random judgment, upon mere supposition, without a single known fact.")).

Outback Steakhouse also contends that plaintiff's responses to its requests for admission and its interrogatories support granting it summary judgment. After noting various objections, plaintiff replied that she had "insufficient [information] to enable her to admit or deny" that (a) she was "unable to identify any defect in the floor . . . at the time of the occurrence;" and, (b) "the floor was not wet at [that] time." *Id.* at 2–3. Citing her blacking out and defendants' possession of the premises, plaintiff also said that she "cannot respond" to an interrogatory seeking, among other things, a description and location of "any defect, defective condition, foreign substance or object on the Defendant's premises [that] caused or contributed to [plaintiff's] injuries." *Id.* at 5–6. Plaintiff also testified in deposition that she was walking and then fell, "[s]o something must have been wrong with the floor," although she said she did not know what, and that she did not look at the floor to see if there was something that could have caused her to fall. *Id.* at 6–7. Further, other witnesses including Ms. Crosby and patron Christopher Robinson testified that they either saw nothing on the floor or cannot recall anything on the floor that could have caused plaintiff's fall. *Id.* at 8–12. Therefore, Outback Steakhouse argues that plaintiff cannot show the presence or absence of any defect. *Id.* at 15–16.

In response, plaintiff argues that she does not need to show or personally testify that there was a spill or foreign object on the floor. Pl.'s Opp. 15. Instead, she only needs to show that defendants breached their duty to exercise ordinary care to keep the restaurant in a reasonably safe condition. *Id.* at 15–17. In any case, plaintiff testified that she fell because the floor was slick. *Id.* at 17; ECF No. 185-3, at 32, 35. Such statements, plaintiff argues, are consistent with the work

order from Mr. Wilson, the fact that the floor had been improperly mopped before plaintiff's fall, the fact that she slipped on something wet, and Ms. Clark's declaration about the slipperiness of the dining room floor and the resulting falls by others in the same area. Pl.'s Opp. 17. Further, plaintiff argues that she has shown improper cleaning led to an accumulation of excess or residual moisture, citing to defendants' alleged failures to comply with industry cleaning standards and defendants' lack of formal policies and proper training on spills. *Id.* at 17–19. Finally, plaintiff argues that defendants failed to remove the dangerous condition, namely the floor that was "not refinished correctly," as noted in the work order, which was a reasonably foreseeable "genesis of the danger" of slip and falls. *Id.* at 21–22; ECF No. 188-3, at 36.

Outback Steakhouse, in reply, argues that plaintiff has a selective memory concerning her fall and its causes, remembering all the details regarding her fall except for a hazard or defect in the floor. Defs.' Reply 1. Outback Steakhouse also argues that other testimony discredits plaintiff's testimony and claims by showing there was no hazard or defect in the floor at the time of her fall. *Id.* (citing deposition testimony from Ms. Crosby, Ms. Eleftherion, and Christopher Robinson). Further, Outback Steakhouse argues that deposition testimony from Mr. Wilson shows that the defect noted in the work order did not occur again and that the location of plaintiff's fall does not match the area referred to in his work order. *Id.* at 2 (citing ECF No. 185-7, 66:17-20; 77:21-25; 96:24-25; 124:6-18; 144:13-17). Outback Steakhouse also disputes plaintiff's arguments concerning the cleaning logs or other policies because there was no defect in the floor and because defendants had appropriate policies in place to deal with spills. Defs.' Reply at 2–3.

2.      **The presence or absence of any alleged defect in the floor is a genuinely disputed material fact.**

a.     **Plaintiff's motion for summary judgment**

Addressing plaintiff's evidence for purposes of her motion first, plaintiff can point to the following to show there was a defect.

First, she contemporaneously stated that the floor was slick, ECF No. 193-2, at 3, and later testified that the slick floor caused her to fall, ECF No. 188-3, at 23. A finder of fact could find this slickness to be a defect in the flooring if it finds the floor was too slippery. *See Charles v. Commonwealth Motors, Inc.*, 79 S.E.2d 594, 596 (Va. 1954) ("From the fact that a floor is slippery it does not necessarily result that it is dangerous to walk upon. It is the degree of slipperiness that determines whether the condition is reasonably safe. This is a question of fact."). Second, plaintiff can point to the work order's statements that "Floor up front needs replaced / Floor not refinished correctly lots of slip and falls" to support the existence of a defect in the floor causing slip and falls near the front. ECF No. 188-3, at 36. Although the exact location of the alleged defect is not clear from the work order, it could reasonably be interpreted to include the area around the hostess stand, which is near the front of the restaurant. *Id.* at 29. This is also supported by the undisputed fact that the Chesapeake restaurant's flooring was over 20 years old, was aging, and the defendants were considering "refacing" it. ECF No. 193-3, at 14. Third, plaintiff can point to Ms. Clark's declaration about the slipperiness of the dining room floor and the resulting multiple slip and falls that she observed, including Ms. Crosby's two falls "near the middle of the dining room area past the hostess stand." ECF No. 188-3, at 117–18.[5]

_____

[5] A text message purporting to be from the son of Christopher Robinson sent between September 23, 2020, and October 1, 2020, states "[a]ll we know is it was I guess wet and the lady slipped and fell [a]nd she hit her head on the floor." ECF No. 188-3, at 120, 124–26. Although the text message is attached as Exhibit A to a declaration from plaintiff's investigator, Kristina Perry, it is

Outback Steakhouse, however, has presented sufficient evidence to show a genuine material dispute of fact about whether the floor was, in fact, slippery or inherently slick, with the testimony of Ms. Crosby and Christopher Robinson.

Ms. Crosby,[6] for example, testified that she saw nothing on the floor at the time of the incident and that the floor "looked bone dry." ECF No. 185-4, at 109–12. Ms. Crosby also testified that "[s]ometimes heels on wood don't go together" and agreed it was possible that unseen grease stains were present on the floor, and acknowledged she was unsure why plaintiff fell. *Id.* at 111–12 (noting also that she did not touch the floor to feel for moisture). Notwithstanding plaintiff's challenges to Ms. Crosby's statements, such statements give rise to genuine disputes about the condition of the floor.

Similarly, Christopher Robinson did not recall seeing anything "slippery" on the floor, ECF No. 185-6, at 22, 25–26, 30–32, 76, nor did he recall any mopping, *id.* at 22, 32–34, 76. Further, he testified that he did not notice that the floor was slippery with his shoes, and, when asked if he saw anything irregular or unusual that could explain plaintiff's fall, said that there was "[a]bsolutely none." *Id.* at 60, 76. Taking all reasonable inferences in favor of Outback Steakhouse, Christopher Robinson's testimony reasonably supports its arguments that there was no defect or hazard on the floor.

---

unsworn. ECF No. 188-3, at 120–126. Therefore, the Court cannot consider this unsworn statement. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.") (internal citation omitted).

[6] Alicia Eleftherion's testimony on this matter appears to be solely based on statements from Ms. Crosby and from examining a picture Ms. Crosby took of the floor. ECF No. 191-5, at 2–3. Therefore, the Court does not consider her testimony because it appears to be inadmissible hearsay. *See* Fed. R. Civ. P. 56(c)(1); Fed. R. Evid. 801; *Mt. Valley Pipelines, LLC v. 1.23 Acres of Land*, No. 7:18cv610, 2019 WL 8920215, at *7 (W.D. Va. July 12, 2019). Further, it is cumulative.

As for the work order, Mr. Wilson testified that he was referring to an area at "[t]he front. Up front, near the front door." ECF No. 185-7, at 96. Further, Mr. Wilson directly denied that anyone slipped and fell on the day he submitted his work order, or that the floor sweating condition reoccurred. ECF No. 185-7, at 77, 111–12. He further testified that the statement that "floors up front needs replaced, not refinished correctly, that's just terminology that we use as restaurants to get the work order looked at faster." *Id.* at 71. Though his testimony as a whole is open to interpretation, especially given the hostess stand is also near the front, ECF No. 188-3, at 29, it is sufficient for purposes of opposing plaintiff's motion to raise a question of fact as to what area the work order was referring to and whether there was a defect in the floor on the day plaintiff fell.

Finally, concerning Ms. Clark, her declaration does not state any time period in which the slip and falls happened, other than before the floor was replaced in late 2018 or early 2019. ECF No. 188-3, at 118. Taking all reasonable inferences in favor of Outback Steakhouse, it is possible that the slip and falls noted occurred well before plaintiff fell or before the submission of the work order on March 7, 2018.

Disputes about the slickness of the floor, or the location or existence of the defect noted in the work order, are for a finder of fact to weigh, not a court on summary judgment. *See* Fed. R. Civ. P. 56(a). Therefore, taking all reasonable inferences in favor of Outback Steakhouse, the Court finds that there is a genuine dispute of material fact that must be put to the finder of fact, namely, whether the flooring was slippery or inherently slick when and where plaintiff fell. [7]

---

[7] Plaintiff also offers testimony from Ms. Nineveh that several witnesses allegedly told Ms. Nineveh that there had recently been mopping where plaintiff fell, and that this improper mopping caused the floor to be "slippery" without warning that the floor had been mopped. Pl.'s Mem. 12; ECF No. 188-1, at 5; ECF No. 188-3, at 38–39. Plaintiff has submitted a trial brief arguing that this testimony is admissible hearsay because it is a present sense impression. ECF No. 220. Because the Court finds that there is a dispute about whether the floor was slick at the time of plaintiff's fall, the Court need not consider this evidence.

### b.   Outback Steakhouse's motion for summary judgment

Outback Steakhouse argues that plaintiff cannot herself identify the defect in the flooring to suggest that she has no evidence that there was a defect in the flooring. Defs.' Mem. 15–16. On its own, this argument is not persuasive. Plaintiff only needs to point to defects which a finder of fact could reasonably find caused the floor to be slippery or inherently slick, causing her to fall, such as the defect identified in the work order. *Brill,* 315 S.E.2d at 215; *Fobbs v. Webb Bldg. Ltd. P'ship,* 349 S.E.2d 355, 358  (Va. 1986) (holding that, where plaintiff could not say why she fell other than she "stepped on something which was very slippery," testimony from other witnesses showing water on the floor before and after she fell was enough for a jury to conclude a hazardous condition existed that caused the fall); *Anderson v. Kroger Ltd P'ship I,* No. 2:11cv192, 2011 WL 5101764, at *4 (E.D. Va. Oct. 26, 2011) (A lack of direct evidence "of what caused her to fall is not fatal to her case, as [plaintiff] may prove negligence and proximate cause through circumstantial evidence.") (citing *Charles,* 79 S.E.2d. at 595; *Fobbs,* 349 S.E.2d at 358).

In other words, plaintiff has to provide a reasonable explanation of the accident that is more than just "conjecture, guess, or random judgment," *Sneed v. Sneed,* 244 S.E.2d 754, 755 (Va. 1978), which can be supported through direct or circumstantial evidence, *Anderson,* 2011 WL 5101764, at *4, that supports "[a] legitimate inference of want of due care on the part of the defendant [that] can reasonably be drawn by a jury from the established circumstances." *Bly v. Southern Ry. Co.,* 31 S.E.2d 564, 570 (Va. 1944).

Plaintiff has offered evidence that the floor was slick enough to cause her to fall, including her own testimony, ECF No. 188-3, at 23, which a jury could find to be a defect on its own. *Charles,* 79 S.E.2d at 596. Although the cause of the slickness is uncertain, she has offered at least one plausible, non-speculative reason based on Mr. Wilson's work order:  because the floor "up

front" had defective finishing that caused slip and falls. ECF No. 188-3, at 36; ECF No. 185-7, at 124. The slickness of the floor is also supported by other evidence, including Ms. Clark's statement about the "slipperiness of the floor in the dining room," the resulting falls, and how replacement of the floor obviated the problem. ECF No. 188-3, at 118. As an employee of the Chesapeake restaurant for at least two years, Ms. Clark was arguably well-situated to know of the condition of the floor before and after it was replaced, as well as about incidents and complaints relating thereto. *Id.* at 117–18. Notwithstanding the age of the floor and the fact that defendants were considering refinishing it, the only evidence of any repairs is the replacement that occurred in late 2018 or early 2019. ECF No. 185-7, at 124; ECF No. 185-8, at 38–39.

Such evidence, collectively, gives rise to a genuine dispute of material fact regarding the existence of any flooring defect on the day plaintiff fell. *See Kroger Ltd P'ship I*, 2011 WL 5101764, at *4 (holding that circumstantial evidence was sufficient to get past summary judgment, where "[p]laintiff has offered evidence that she believed she had tripped over the mat, that other witnesses concluded that she had tripped over the mat, and that a regular Kroger customer had previously, on several occasions, noticed that the mat tended to roll up.")

This conclusion is further supported by the work order and Mr. Wilson's testimony. Although Outback Steakhouse argues that Mr. Wilson's testimony clearly shows that he was not referring to the area where plaintiff fell, Defs.' Reply 2, his testimony is not so clear. Mr. Wilson testified that his work order referred to the area at the front of the restaurant, but did not definitively state that this excludes the area where plaintiff fell. ECF No. 185-7, at 87–96. His most specific testimony about the area he was referring to is that it was "[t]he front. Up front, near the front

door." *Id.* at 96.  This could include the area around the hostess stand, which is also near the front.

ECF No. 188-3, at 29. [8]

Further, concerning the "lots of slip and falls" identified in the work order, Mr. Wilson

testified as follows:

> Q Did you first become aware on March 7th of 2018 that when the temperature
> changes outside the floor tends to collect sweat?
> A Yes.
> Q Did you first become aware on March 7th of 2018 that there were lots of slip-
> and-falls that happened on the floor at Chesapeake Outback Steakhouse?
> A Yes.  They were footing that day when they were walking in.
> Q I'm sorry, they were what?
> A It was a little -- some people lost a little bit of footing a little bit.  *Nobody fell.*
> People lost footing when they walked in the door that day.  So it's kind of like when
> people wear --
> Q On March –
> A -- high heels –
> Q On March 7th --
> A -- when they walk into -- when they walk into a restaurant and you have high
> heels on or any type of dress shoes and -- and what was happening is that day, when
> anybody with high heels or dress shoes was coming in, it tended to seem to be --
> and then that's what I noticed about the floor.

ECF No. 185-7, at 65–66 (emphasis added).  Despite his testimony that the floor was causing

people to lose their footing, he also testified as follows:

> Q Mr. Wilson, when you indicated, as part of your work order, that when the
> temperature changes outside the floor tends to collect moisture and sweat, does that
> mean that the floor could get slippery?
> A I don't know if that's a yes-or-no question.  I can't answer that in a yes-or-no
> question.
> Q You may answer it however you like.

---

[8] Although the Court previously observed that Mr. Wilson clarified that the locations he observed
"were near the front door – an area that plaintiff successfully navigated in and out of the Outback,"
this was in the context of a discovery dispute and the Court also stated that "it is not necessary to
reach any conclusions regarding the floor or its conditions on May 23, 2018," ECF No. 168, at 9,
11.  The same is true for defendants' citation to the Court's prior observation that "no witnesses
(including Haysbert herself) has identified any unusual condition or issue involving the flooring
where Haysbert sustained her fall on May 23, 2018." Defs.' Mem. 15–16.

A Okay.  So when the temperature outside tends to collect -- change, it tends to collect moisture and sweat.  I'll say, once again, that that's what it seemed to be doing that day.

Q And it seemed to be slippery that day, correct?

A Not slippery.

Q Then how would you describe what was happening?

A It just seemed to have some type of moisture on it that seemed to be, basically, what would be a cleaning issue.

Q So how is that not slippery?  What's the difference between the floor being slippery and what you just said?

A The floor being slippery and the floor not being slippery?

. . .

Q -- you just said to me seemed to -- to indicate that the floor was slippery.  So I'm trying to understand what's the difference between a slippery floor and what you just described.

A So we use chemicals, like Wash 'n Walk and Oasis 100 where the floor can be wet but not slippery.  The floor can be -- have moisture on it, but not be slippery, because of the type of chemicals we use in the restaurant.

Q So you're -- you're saying that the time that those temperature changes outside, when the floor tends to collect moisture and sweat, that the floor wasn't slippery, is that what you're saying?

A I don't know, sir.  Once again, sir, this is a very vague question.  You're asking me questions that is not in my expertise of chemicals and floor knowledge, so –

Q Okay.  You –

A -- unfortunately, I can't really answer your questions, because they're, technically, something that's really something I can't answer.  I'm not a -- I'm not a scientist.  I don't deal with chemicals every day, besides what we use on the floors.

*Id.* at 67–69.  However, when asked why he referenced "lots of slip and falls" in the work order,

having already testified that the floor was not slippery and that no one fell, he stated the following:

Q So when you said here lots of slip and falls, what are you referring to?

A It's a verbiage, just like earlier, as in floor up front needs replaced.  It's just verbiage, slip and falls.  You don't say slips; you would say slip and falls.

Q But you said no one fell that day.

A No, sir.

Q So if no one fell that day, what would be wrong with saying lots of slips?

A Because you would just include both.  Verbiage --

Q Why –

A -- just like -- just like earlier with floor up front.

Q Why would you do that if no one –

A It's all verbiage.

Q If no one fell, why would you -- why would you say lots of slip and falls?
A Verbiage.

*Id.* at 111–12.

Such testimony provides grounds for questioning the reliability of Mr. Wilson's testimony about the location of the flooring noted in the work order that needed to be replaced. Therefore, the task of weighing Mr. Wilson's testimony and his work order as it relates to the state of the floor at the Chesapeake restaurant is best left for the finder of fact.

Taking all disputed facts in favor of plaintiff, sufficient evidence exists to "raise the inference that [her] fall was caused by the condition of the floor." *Shoney's, Inc.*, 486 S.E.2d at 288.

### 3.   Plaintiff's argument on cleaning standards also requires showing that the restaurant floor was slick to show any breach proximately caused plaintiff's injuries.

Plaintiff also seeks summary judgment arguing that defendants breached their duty of care by using improper cleaning methods that violated industry standards. Pl.'s Mem. 10–11. Even if plaintiff can establish that the alleged industry standards are so universal that defendants breached their duty by having substandard cleaning policies, plaintiff's theory of liability still requires showing that this breach proximately caused her injuries. *See Shoney's, Inc.*, 486 S.E.2d at 288 (discussing how proof of improper cleaning methods could be a breach of the duty of care and could be constructive notice, but still addressing the inferences required for a proximate cause finding separately). Plaintiff testified that she fell because the floor was "slick," ECF No. 188-3, at 19, 23–25, and plaintiff has not suggested any other reason why or how improper cleaning methods could have caused her to fall. Pl.'s Mem. 10–11. As such, this theory of liability requires the same inquiry as the first:  whether the floor on which plaintiff fell was, in fact, slippery or inherently slick.

Therefore, the Court need not address whether defendants' alleged failure to use industry standard cleaning methods is itself a breach of defendants' duty of care, because plaintiff would still need to show that such a breach proximately caused her injuries. The Court has already found that a material dispute of fact exists about whether the floor was slippery or inherently slick.

Therefore, the Court recommends that the parties' motions for summary judgment be **DENIED.**

**B.    Bloomin' Brands' non-compliance with Rule 56(c)(1)'s requirement to cite to record evidence to show the absence of a genuine dispute of material fact precludes granting it summary judgment.**

Bloomin' Brands also seeks summary judgment, arguing that the company did not owe plaintiff any legal duty. Defs.' Mem. 1.

A party seeking summary judgment must establish the absence of any material factual dispute such that the party is entitled to judgment as a matter of law. However, a moving party cannot simply assert that its factual contentions are true. Instead, a moving party must support its assertions by citing to materials in the record to show the absence of a genuine dispute of material fact, or by showing that the non-moving party cannot produce admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1); *Norfolk S. Ry. Co. v. Balt. and Annapolis Ry.*, 715 F. App'x 244, 250 (4th Cir. 2017) ("A party asserting a fact at summary judgment 'must support the assertion.'" (citing Fed. R. Civ. P. 56(c)(1)). This means that a moving party that does not bear the burden of proof at trial can either point to record evidence or must "show[] —that is, point[] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Here, Bloomin' Brands argues that it owed plaintiff no legal duty because "[t]he [Chesapeake] restaurant was owned and operated by Outback Steakhouse of Florida, LLC.

Bloomin' Brands, Inc. is a parent corporation of Outback Steakhouse of Florida, LLC, but does not directly operate the restaurant and has no direct ownership interest in or control over the location of the accident." Defs.' Mem. 1. These two sentences are Bloomin' Brands' entire argument for summary judgment. Notably, they do not contain a single citation to record evidence to establish the claimed relationship between Bloomin' Brands and Outback Steakhouse. Nor do defendants include any reference to operation or ownership in their statement of undisputed facts, *id.* at 2–13, as required by Local Civil Rule 56(B). Further, Bloomin' Brands does not suggest that plaintiff lacks admissible evidence concerning its operation or ownership interest in Outback Steakhouse. *Id.* at 1.[9] Finally, although plaintiff raises several of these points in her opposition brief, Pl.'s Opp. 8–9, defendants do not address any issues specifically concerning Bloomin' Brands' liability in their reply brief.

As such, Bloomin' Brands has failed to comply with Rule 56(c)(1), has failed to establish that Bloomin' Brands is entitled to summary judgment, and has failed to respond to plaintiff's arguments on the matter. Therefore, pursuant to Federal Rule of Civil Procedure 56(e), the Court recommends that Bloomin' Brands' motion for summary judgment be **DENIED**.

## V.    RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's motion for summary judgment, ECF No. 187, and defendants' motion for summary judgment, ECF No. 184, be **DENIED**.

---

[9] In fact, there appears to be evidence in the record that Bloomin' Brands exercised at least some control over the Chesapeake restaurant. ECF No. 189-3, at 62, 87 (materials produced by Bloomin' Brands in response to a request for documents relating to sanitation policies and employee training at the Chesapeake restaurant), 107–109 (affidavit of Theresa Seibert, regional facilities manager at Bloomin' Brands, stating she provides "assistance with maintenance needs for the Chesapeake restaurant," and attaching a copy of Mr. Wilson's work order as something entered in the "computerized maintenance systems" that she works with).

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
February 18, 2022