```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF VIRGINIA
 2                    NEWPORT NEWS DIVISION


 3


 4   JOANN WRIGHT HAYSBERT        )
                                  )
 5            Plaintiff,          )
                                  )
 6   v.                           )     Civil Action No.
                                  )        4:20cv121
 7   BLOOMIN' BRANDS, INC.,       )
     and OUTBACK STEAKHOUSE       )
 8   OF FLORIDA, LLC,             )
                                  )
 9            Defendants.         )


10


11                 TRANSCRIPT OF PROCEEDINGS


12                 (Final Pretrial Conference)


13                   Norfolk, Virginia
                      July 29, 2022

14


15   BEFORE:   THE HONORABLE ROBERT J. KRASK
               United States Magistrate Judge
16


17


18   Appearances:


19        HAYSBERT MOULTRY, LLP
                  By: Nazareth M. Haysbert
20        -- and --
          CRANDALL & KATT
21                By: David A. McKelvey
                      Counsel for Plaintiff
22
          MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C.
23                By: John D. McGavin
                      Counsel for Defendants
24


25
```

```
1                    P R O C E E D I N G S

2

3           (Commenced at 11:00 a.m. as follows:)

4

5           COURTROOM DEPUTY CLERK:  Haysbert v. Bloomin' Brands,

6  Incorporated, et al., Case 4:20cv121.

7           Is plaintiff ready to proceed?

8           MR. HAYSBERT:  Yes, Your Honor.

9           COURTROOM DEPUTY CLERK:  Is defense ready to proceed?

10          MR. McGAVIN:  Good morning.  I'm John McGavin.  I'm

11  here on behalf of the defense, and the defense is ready to

12  proceed.

13          THE COURT:  Good morning, everybody.  Give me just a

14  minute to get squared away.  And could you both identify

15  yourselves for the record?

16          MR. McKELVEY:  Adam McKelvey for the plaintiff.

17          MR. HAYSBERT:  Nazareth Haysbert for the plaintiff.

18          THE COURT:  Very good.  Thank you.

19          Okay.  We are here for the final pretrial conference

20  in the case of JoAnn Haysbert v. Bloomin' Brands Inc. and

21  Outback Steakhouse of Florida.  Just so everyone is on the same

22  page, my understanding is that the jury trial is set for

23  August 9th, 2022, at 11 a.m. here in Norfolk.  You're expected

24  to be here early, be set up and be ready to go by 11.  Don't

25  show up at 10:30, come early that day.  I know Judge Smith will
```

1    want to start with the case promptly at that time.

2            Mr. Haysbert, let me start by asking you -- and I have

3    some preliminary things to go through before we get to the final

4    pretrial order and the matters contained therein --

5    approximately how many days do you think it will take you to put

6    on your case-in-chief?

7            MR. HAYSBERT:  Your Honor, I believe we can do it

8    within two to three days.

9            THE COURT:  Very good.  Thank you.

10           And Mr. McGavin, the defense case?

11           MR. McGAVIN:  Your Honor, it's partially dependent

12   upon which of the defendant's witnesses are called in

13   plaintiff's case, but I think it's one day.

14           THE COURT:  Okay.  So I'll estimate -- and I always

15   just try to give the trial judge an estimate of the time

16   involved, so I'll estimate three to four days just to be

17   conservative.  I know Judge Smith moves cases quickly and that

18   is this court's practice to move them quickly.  So make sure

19   your witnesses are here and ready to testify and ready to go.

20           We'll talk about outstanding issues and problems.  I

21   know there are some discussed at the conclusion of the final

22   proposed pretrial order that the parties have submitted, but I

23   want to first talk about some trial readiness issues.  I always

24   like to just go over this stuff.  I assume you already know

25   this, but in an abundance of caution I'd like to review it with

1    counsel.

2           So first, if you want to bring electronic devices into

3    the courthouse for trial you need to seek advance approval from

4    the court to do that.  And if you go to the court's

5    external-facing web page, there's a tab that is entitled

6    Resources, and if you click on that tab there's a drop-down that

7    exposes requests to use the court's evidence presentation system

8    or to bring your own electronic device in for connecting to that

9    system, perhaps to show PowerPoints or to show an exhibit or

10   something like that.  So you have to seek advance approval, and

11   you should do so immediately for the trial, and that will go to

12   the trial judge, and if the trial judge approves it, you then

13   also -- it'll go through the IT department and you'll need to

14   seek their approval as well.  And if you want to make sure that

15   you have the equipment that can connect to the system and you

16   have the proper cables and so forth, you can set up, in advance,

17   before trial, don't do it the morning of trial, a dry run to

18   connect to the court's system with the folks from Information

19   Technology from the court, and they will make sure you are good

20   to go with that.  So no surprises the morning of trial.  Take

21   care of that in advance of trial.

22          Mr. McGavin?

23          MR. McGAVIN:  I have my forms here, Your Honor, signed

24   and filled out.  What are the logistics?  Do I take that up to

25   chambers of Judge Smith or what is --

```
1              THE COURT:  You have to file them, typically.

2              MR. McGAVIN:  You mean electronically file --

3              THE COURT:  Yes.

4              MR. McGAVIN:  -- these forms?

5              THE COURT:  Yes.

6              MR. McGAVIN:  Does it have to come with a separate

7    motion?

8              THE COURT:  No, I think you just file the request and

9    it will be acted on by the court promptly.

10             MR. McGAVIN:  Thank you.

11             MR. HAYSBERT:  To follow up on that question, the

12   conversation with the IT department, is that something that we

13   call them about or will they be able to access the court system?

14             THE COURT:  Yes, you have to call them and make an

15   appointment, and given how quickly this trial is coming, you

16   need to do so promptly in conjunction with the filing of your

17   request to access that evidence presentation system.

18             All right.  And I note that the defendant had filed

19   jury instructions already.  Pursuant to Local Rule 51 and

20   Paragraph 4 of the Amended Rule 16 order, ECF No. 233, the

21   parties are to file proposed jury instructions and voir dire not

22   later than August 2nd, which I think is next Tuesday, if my

23   memory is correct.  Let me just check.

24             Yes, that's Tuesday.

25             And you are to electronically file your instructions.
```

1    One set is to be with authorities listed for the instruction,

2    the title of the instruction and instruction number for each

3    proposed jury instruction, a second set is to be electronically

4    filed without authorities, titles and numbers.  And I think the

5    Rule 16 order says you may supply an electronic copy of those,

6    of both sets with the clerk of court.  I think it's usually a

7    good idea if you want the trial judge to be able to access, if

8    she wants to access or use a particular instruction you have, if

9    you submit a flash drive with both sets of those in addition to

10   filing.  It doesn't excuse you from the obligation to file, but

11   you can send that to the clerk's office for the trial judge's

12   use should she want to make use of any particular instruction

13   that you have.

14        Local Rules here prevent and preclude any

15   communications with jurors, as you know.  This is a small

16   courthouse, and it's very easy to run into jurors coming and

17   going, entering court, you know, using the elevators to go to

18   the bathroom, whatever it is.  You are not to communicate with

19   jurors in any way, shape or form.  You can't even acknowledge

20   them, say hello, say goodbye, smile, whatever.  No

21   communications at all.  Typically the trial judge will give an

22   introduction that you're not being rude to them, but you're

23   following the Court's rules that you're not to communicate with

24   them with any way, shape or form.

25        In terms of the trial judge's preferences, Judge

1  Smith's are, I think, the same as any other trial judges here.

2  The trial judges conduct voir dire, the attorneys do not.  You

3  are to stand when you are addressing the Court or witnesses or

4  noting objections.  You don't sit at counsel's table.  And

5  presumably whoever is not at the podium will be standing at

6  counsel's table, and whoever's at the podium if you're

7  questioning witnesses, all your work is going to be done from

8  that podium.

9          Our court's rules are that you do not walk around the

10 well of the court.  You never approach the witness box in any

11 way, shape or form.  If there's something you want to give the

12 witness, you must provide that to the court security officer who

13 will come to you at the podium or to counsel's table to collect

14 whatever it is that you want the witness to see.

15         We do not favor speaking objections, and we certainly

16 do not favor arguing with the Court's ruling.  If you've made an

17 objection and the Court has ruled, then it is time to move on.

18         With respect to exhibits, I'll direct you to

19 Paragraph 1 of the amended Rule 16 order which indicates that

20 the exhibits are to be placed in a binder; that binder is to

21 have tabs, the tabs are to be numbered, and the binder is to

22 have an index at the front of the binder with an index listing

23 all the exhibits respectively for the defense and for plaintiff.

24 You are to deliver the original exhibits and two copies to the

25 clerk and a copy to opposing counsel not later than one business

1    day before trial.

2              You are to use a simple exhibit numbering system.  It

3    appears, at least in the plaintiff's exhibits that I have, that

4    the system is simple and straightforward.

5              And Tom, I just noticed I don't have -- I didn't bring

6    that defense binder of exhibits.  Can you bring that down as

7    well?

8              Mark before trial -- you should mark the exhibits with

9    exhibit stickers.  I see here Mr. Haysbert you have P1 in front

10   of it.  That's not going to suffice.  You're going to need to

11   put an exhibit sticker on each exhibit in the lower right-hand

12   corner marking it as Plaintiff's 1 and so forth.  And the same

13   thing for the defense if that hasn't already been done.

14             Judge Smith is not one who has many bench conferences.

15   I'm not saying she'll never hold a bench conference, but having

16   tried cases before her in the past I would say that's done very

17   infrequently.  She will expect, as all the judges in this court

18   do, that you're going to treat the Court, treat opposing

19   counsel, treat the opposing party and the jurors with respect.

20   And part of treating them with respect, as it relates to the

21   jurors, is respecting their time.  So that means being ready to

22   go forward with your case when the Court is in session and being

23   ready to question witness when it's your turn, or to

24   cross-examine them, rather than the fumbling around with papers.

25   As I mentioned before, have your witnesses here and ready to go.

1          It's not unusual, if you don't have a witness, that a

2     trial judge will say your case has rested and it's over.  So if

3     you don't want that to happen to you, I'm sure either side, make

4     sure you have everybody here.

5          Like all trial judges, Judge Smith does not like

6     surprises.  If there is an issue, it won't behoove you to

7     present that issue to the Court that's arisen at 11 a.m. on the

8     first day of trial or the subsequent days of trial at the start

9     of trial.  So put issues that arise on the Court's radar screen

10    early.

11         Any questions about any of that, counsel?

12         MR. HAYSBERT:  No, sir.

13         THE COURT:  Mr. McGavin?

14         MR. McGAVIN:  No, Your Honor.

15         THE COURT:  All right.  Thank you.  It's all pretty

16    standard fare, and I'm sure you all are well aware of that

17    stuff, but just to be safe I like to go over it.

18         So I think we are ready to go over then the proposed

19    final pretrial order that the parties have submitted.  I'm just

20    going to step through this.  There's no reason for me to address

21    the stipulation regarding undisputed facts.  There apparently

22    are no exhibits to which the parties have agreed as to their

23    admissibility, so we will proceed with the exhibits to which

24    there are unresolved objections and we will start with the

25    plaintiff's exhibits.

1          First is the declaration of Deajah Clark.  That's

2   Plaintiff's Exhibit No. 1.  Mr. McGavin, I'm happy to hear you

3   on this.

4          Let me, before I do, though, I guess Mr. Haysbert, is

5   Ms. Clark going to be a witness at trial?  Is she going to be

6   here to testify?

7          MR. HAYSBERT:  Your Honor, I'm glad you brought this

8   up.  We have been attempting to serve Ms. Clark.  We've

9   attempted twice.  I just called our process server to see if

10  they had attempted again, and we are, at this point, unsure

11  whether or not she's going to be at trial because we've been

12  unable to serve her with a trial subpoena.  We've been trying

13  for the last several weeks.

14          THE COURT:  All right.  Thank you.

15          Mr. McGavin, happy to hear your objection.

16          MR. McGAVIN:  The basis of our objection is --

17          THE COURT:  I'm going to have you come to the podium.

18  I'll get you in the habit early, because that is what Judge

19  Smith is going to insist on.

20          MR. McGAVIN:  I have appeared in the Eastern District

21  many times, Your Honor, and I apologize.

22          THE COURT:  No worries.

23          MR. McGAVIN:  Your Honor, there are two exhibits that

24  are similar.  They're declarations by Ms. Haysbert, who is the

25  daughter, that's No. 2, and also this declaration by Deajah

1  Clark.  They are both, taking them both together since it's the

2  same issue, they are out-of-court statements of individuals that

3  I would like to be able to cross-examine regarding their

4  assertions.  And for them to be allowed to testify by

5  declaration -- they haven't been deposed, at least as I recall

6  it, and it's hearsay.  So therefore I do object.

7             THE COURT:  Thank you.

8             Mr. Haysbert?

9             MR. HAYSBERT:  Thank you, Your Honor.  So these are

10 two, fundamentally two issues with respect to --

11            THE COURT:  Let's take Ms. Clark first, please.

12            MR. HAYSBERT:  I was going to say.  So with Deajah

13 Clark, she is at this point unavailable.  We have no idea where

14 she is.  So Your Honor, we would like the document admitted as a

15 statement against interest.  Deajah Clark is, for all we know,

16 still an employee of Outback Steakhouse working at the Outback.

17            THE COURT:  You say "for all we know."  Do you have

18 any factual information that would indicate whether she is still

19 employed there?

20            MR. HAYSBERT:  We, we believe that she is.  We don't

21 have any information that she's not still employed there.  I'm

22 happy to listen to whatever Your Honor might provide in terms of

23 how we can assure you of whether or not she's there or not.  I

24 could stop by the Outback Steakhouse, verify it with someone who

25 still works there as a manager or something.  But as far as we

1 know, the last time I communicated with Deajah Clark, I believe

2 that was several -- I want to say maybe six months ago, she was

3 working there at the time.

4          THE COURT:  Well, the declaration appears to contain

5 out-of-court statements by a declarant who at least at this

6 point it's uncertain whether she's going to be a witness at

7 trial, and there's no information that -- I note that the

8 declaration is signed August 7, 2021.  She references that she

9 was employed on May 23rd, 2018, but there's no information about

10 her employment subsequent to -- well, she says she was still

11 employed as of the date of the declaration, but there's no

12 information about whether she's employed there now.  I'm not

13 quite sure how it would be admissible without that information.

14 With all due respect, your belief doesn't, you know, it's not a

15 fact upon which I can rely in making a determination about

16 whether or not she is still employed there.  And I also note

17 that the information, particularly the nature of the information

18 contained in the report, is missing critical details that will

19 be vital to the jury assessing whether or not the facts that she

20 would presumably testify to, if she was here, are pertinent and

21 relevant to the dispute at hand.  Certainly for summary judgment

22 purposes the Court gave it consideration, but at trial it's

23 wholly another matter.  Absent such information, I think there's

24 some significant risk that the probative value of any statements

25 contained in this document are substantially outweighed by the

1  prejudice to the defense not being able to question her about

2  these statements.

3          Was she deposed by you or by the defense?

4          MR. HAYSBERT:  She was not deposed, Your Honor.  I

5  would like to reserve the exhibit so that we can obtain the

6  information that you need with respect to whether or not she's

7  still employed there.  But additionally to that we would like to

8  know defendant's arguments for what critical information is

9  missing from the affidavit.

10          THE COURT:  Well, it's not the defendant's arguments.

11  The Court's assessment of the information that's provided, it

12  lacks information on the date of the slip and falls, the

13  location of the slip and falls, whether she has any information

14  about the events or the conditions that gave rise to the slip

15  and falls.  There's any number of questions that I think would

16  be needed to be answered before the Court could make a decision

17  about this, even if she was a potentially an employee.  And this

18  bare-bones affidavit is lacking much of that information.  It

19  was enough, in the Court's judgment, to give rise of a genuine

20  dispute of material fact at the summary judgment stage, but at

21  trial I think the issues and the objections raised by the

22  defense are well-taken, so I'm going to sustain the objection.

23          MR. HAYSBERT:  Your Honor, if I may?

24          THE COURT:  I've ruled.  We're going to move on.

25          So you wanted to speak about Exhibit No. 2.  You said

14

```
1   it was different.  Talk to me about that.  Do you anticipate

2   that Ninevah Haysbert is going to be testifying at trial?

3            MR. HAYSBERT:  Yes, I do.  I believe she will be

4   testifying at trial, Your Honor.

5            THE COURT:  Then what need if any would you have for

6   this hearsay statement?

7            MR. HAYSBERT:  There would be no need at this time.

8            THE COURT:  Are you withdrawing the Exhibit 2?

9            MR. HAYSBERT:  We will withdraw Exhibit 2, yes, Your

10  Honor.

11           THE COURT:  Thank you.

12           That brings us to Plaintiff's Exhibit No. 3.  And

13  Mr. Haysbert, I didn't -- nothing was included in the binder

14  that was provided to the Court with these demonstratives and

15  images.  Do you have a copy of whatever constitutes Exhibit 3?

16           MR. HAYSBERT:  Your Honor, if I may, my understanding

17  is that demonstratives are not necessary to be provided at this

18  time; that they are responsible for being provided to the Court

19  within the week of trial.  If I'm wrong, then I can rectify that

20  issue.

21           THE COURT:  Well, there's a difference between

22  pedagogical devices and demonstratives that are used to help a

23  jury understand an expert's testimony as they're testifying that

24  won't be admitted into evidence but are used to help demonstrate

25  and clarify what the expert is testifying and opining about, and
```

1   there's a difference between that and Rule 1006 summaries.

2   Which category are you suggesting that these demonstratives and

3   images fall in?

4          MR. HAYSBERT:  Your Honor, if I may, I believe both.

5   For one, on one hand, Dr. Haider is very knowledgeable, has

6   testified as an expert witness in number of cases.  She has a

7   set of pedagogical materials that she has stated that she will

8   use to explain her opinions.  At the same time, once those

9   opinions have been provided, at the conclusion of those opinions

10  we would like to be able to summarize for the jury what she has

11  provided the jury, and if it's possible, for that summary to be

12  admitted to the jury as evidence.

13         THE COURT:  All right.  Well, have you provided these

14  demonstratives and any summaries that might fall within

15  Exhibit 3 -- and I guess I'm wondering whether some of these may

16  show up in Exhibit 5, if there's some overlap, but we'll focus

17  on 3 -- have you provided them to the defense?

18         MR. HAYSBERT:  We have not yet provided her

19  demonstratives to the defense.

20         THE COURT:  All right.  Why not, I guess?

21         MR. HAYSBERT:  We were under the belief that it was

22  not necessary to provide those demonstratives until the week of

23  trial.

24         THE COURT:  Well --

25         MR. HAYSBERT:  The week before trial.

1           THE COURT:  -- I'm going to direct that you supply

2    them to the defense by Monday at noon.  So that's August 1st at

3    noon, so they have them for review.

4           MR. HAYSBERT:  We'll do, Your Honor.

5           THE COURT:  Let me just note that on this.

6           Okay.  That brings us to Plaintiff's 4.  Mr. McGavin,

7    your objection to that?

8           MR. McGAVIN:  Your Honor, the objection goes

9    hand-in-glove to the objection to Ms. Haider testifying.  So we

10   anticipate having questions for her during voir dire which will

11   go to her qualifications and/or reliability of her testimony.

12   So if we are unsuccessful on that, then I anticipate it may be

13   likely that these would be admissible, but if she is not

14   qualified and/or not permitted to testify regarding diagnostic

15   studies and there is not sufficient reliability of this testing

16   to support their use, then the exhibits would not be admitted.

17   So in some ways it's conditional upon her ability to offer the

18   opinions for which she is tendered.

19          THE COURT:  So I guess maybe I'm a little confused.

20   So these images, at least the exhibit describes them as being

21   images taken by Dr. Filler.  How did they relate if at all to

22   Dr. Haider?  Is Dr. Filler testifying?

23          MR. HAYSBERT:  Your Honor, yes, Dr. Filler is also an

24   expert witness in the case.  He will be testifying.

25          THE COURT:  Okay.  So let's take your hearsay

```
 1    objection first.  These images appear to be some kind of

 2    diagnostic imaging made by a machine, so they don't involve

 3    assertions by human declarants that would qualify as hearsay.

 4    So I think your hearsay objection, I'll overrule that as it

 5    relates to this, though there is, on the last page, about a

 6    paragraph worth of written findings that arguably would

 7    constitute hearsay.  Do you want to be heard on that before

 8    we...

 9              MR. McGAVIN:  I think that, that is -- and you said

10    Page 4, Your Honor?

11              THE COURT:  I'm sorry.  The last page of Plaintiff's

12    Exhibit 4.

13              MR. McGAVIN:  I'm sorry, I misunderstood.

14              THE COURT:  I may have misspoke.

15              MR. McGAVIN:  Yes.  The last page would include the

16    hearsay, Your Honor.  Depending -- it's essentially a report of

17    what the images show.

18              THE COURT:  All right.  Mr. Haysbert, you can address

19    that right from there.

20              Mr. McGavin, stay there.

21              If you'll stand up, Mr. Haysbert.  What's your

22    response to the hearsay objection to the reported findings on

23    the last page of Plaintiff's 4?

24              MR. HAYSBERT:  Your Honor, I have no problem striking

25    that portion from the exhibit list.
```

1    THE COURT:  Okay.  So that gets me to your 702/703

2  objection to the images themselves, Mr. McGavin.  What do you

3  want to say about that?

4    MR. McGAVIN:  Your Honor, if -- I assume that they

5  would be offered through Dr. Haider, but if they're offered

6  through Dr. Filler, he's a Ph.D, he's not an MD or a

7  radiologist, as I understand his qualifications.  So it goes to

8  whether or not -- and he's being offered to interpret these

9  documents, because otherwise there would have to be a proper

10 foundation for him to explain what they mean.  In other words,

11 they may be images in and of themselves, mechanical images, but

12 they're not, they're not relevant.  They don't help the jury

13 unless someone can interpret what these numbers and colors mean,

14 and they have to be interpreted by someone with proper

15 qualifications, reliability and the ability -- the methodology

16 and the peer review to make these images admissible.  And that's

17 what we're really driving at, is whether Dr. Filler the Ph.D or

18 Dr. Haider are sufficiently qualified to render opinions, and

19 then, secondly, whether there's an adequate foundation factually

20 as to what occurred in the accident to make that causal link of

21 any finding in these diagnostic studies as related to this

22 occurrence.  So there has to be a factual foundation that there

23 is, in fact, a head injury or head trauma sufficient to cause an

24 injury, and you can't -- they don't become admissible without

25 that proper foundation.  Much of this, I think, depends, Your

1  Honor, regarding the expert's testimony, as to how the evidence

2  comes in and which witnesses are here to present them.

3          THE COURT:  Mr. Haysbert -- stay right there,

4  Mr. McGavin -- let me hear from you.

5          MR. HAYSBERT:  The expert disclosures have been

6  provided to opposing counsel in approximately August of last

7  year.  Dr. Filler is a medical doctor, he has an MD.  He also

8  has a JD, and he has a Ph.D as well.  He is the inventor of DTI

9  testing, and has indicated in several affidavits that he's filed

10 in the court in this case that such testing is reliable, he's

11 never, he's never been involved in a case where it has not been

12 found to be reliable by a court.

13         THE COURT:  Mr. McGavin, do you want to respond to

14 that?

15         MR. McGAVIN:  I think I've covered my position on

16 this, Your Honor.

17         THE COURT:  Okay.  I'm going to rule that the defense

18 has failed to provide the Court sufficient information to

19 address the *Daubert*-type objections that are being raised.

20 Unfortunately this is similar to what the Court encountered in

21 the motion *in limine* matter that the Court previously addressed

22 in its ruling in ECF No. 235.  In that case there was, I

23 believe, a motion *in limine* filed by the plaintiff to which the

24 defense responded with a two-sentence response.  The Court

25 characterized the briefing as wholly inadequate.  And in

1  addition, there's simply no information -- I don't have

2  Dr. Filler's report in front of me or any basis upon which I

3  could assess the defense objection at this juncture.  I'm going

4  to note that the objection is insufficient -- overruled due to

5  the insufficient showing by the defense.

6          That doesn't, of course, relieve the plaintiff of its

7  obligation to, as the proponent of this evidence, to put forth

8  admissible grounds and factual bases and predicates for its

9  admission at trial.  I'm not ruling on that.  I'll reserve the

10  ultimate ruling on that.  But there's no information before me

11  today that would permit me to make a judgment about the

12  relevance and reliability of Dr. Filler's imaging and any

13  opinions he might have about that imaging.

14          Let me note that on this.

15          That brings us to Exhibit 5.  Plaintiff's Exhibit 5.

16  This appears to be, according to the final pretrial order,

17  excerpts of Dr. Haider's life care plan for JoAnn Haysbert.  And

18  when you say this is an excerpt -- this is a lengthy document --

19  has it been excerpted, Mr. Haysbert?

20          MR. HAYSBERT:  Yes, Your Honor.  The document in

21  itself is much longer.  What we're specifically focusing on here

22  are the numbers that were came to and the summary of those

23  numbers and what the care is needed.  So we believe that that

24  should go to the jury for their determination.

25          What's not there -- my apologies, Your Honor.  If I

1   may continue?  What's not here is all of the analysis and

2   details that were provided by Dr. Haider's testimony within the

3   life care plan.

4          THE COURT:  Mr. McGavin, you have a hearsay objection

5   and what appears to be, I guess, another *Daubert* objection to

6   this information; is that correct?

7          MR. McGAVIN:  Not exactly, Your Honor.  It's an

8   evidentiary foundation.  Any life care plan requires an

9   evidentiary foundation, meaning, just as an example, in this

10  case, Mrs. Haysbert has not had any medical care other than a

11  visit the day after and the evaluation by Dr. Haider and the

12  scan by Dr. Filler.  So we're four year out, and she's still

13  working and not having medical care.  So there has to be an

14  evidentiary foundation to say that evaluations, treatments,

15  personal care and home services, those are matters of proof that

16  the plaintiff must put on.  And it seems to me that, just like

17  in any life care plan, the plaintiff has to establish that

18  evidentiary foundation before the document is in and of itself

19  admissible as a summary or even the evidentiary basis is

20  established from a health care provider and, as well, the

21  testimony of the plaintiff.

22         THE COURT:  Well I can't, obviously, rule on the

23  foundation.  So that's one aspect of this, and I won't be able

24  to address that.  That's going to have to be determined based on

25  the evidence at trial.  So I agree with you on that.

1        Are you making a hearsay objection as well?  I think

2   you say that the expert report is not properly admissible as

3   evidence as hearsay.

4        MR. McGAVIN:  It is, Your Honor.  It's a lengthy

5   report, which is an out-of-court rendition and statement.  It is

6   hearsay.  I understand under Federal Rule of Evidence 1006 you

7   can have summaries of evidence, and certainly life care plans,

8   if the numbers are properly admissible, they do come in and a

9   summary is appropriate.  I understand that, and obviously have

10  encountered that many, many times.  So it seems to me that it

11  is, in fact, hearsay.  It is not -- again, it requires an

12  evidentiary foundation, and these are primarily, I believe,

13  issues the trial court will be dealing with once the evidence

14  starts to be presented.

15       THE COURT:  Mr. Haysbert, let me hear you on the

16  hearsay objection.  And I'll tell you, expert reports are

17  hearsay, expert CVs are hearsay, and they're typically not

18  admitted.  I think, one, it's an out-of-court statement; two,

19  Rule 702 references the fact that experts may opine by way of

20  testimony rather than putting their report in where there's an

21  objection such as one that's posed here.  How do you respond to

22  that?

23       MR. HAYSBERT:  Your Honor, first of all, you're

24  correct.  I thank you very much.  What we've done is we've done

25  this two ways.  We have either provided the evidentiary

1  foundation at trial and then had the numbers and life care plan

2  admitted and they go to the jury for the jury's consideration,

3  or, in this case, we have placed it into an exhibit for

4  consideration when the evidentiary foundation is established to

5  go to the jury as admissible evidence.  So that's how we

6  prepared it in this case.  But again, Your Honor, this is not

7  the complete life care plan, this is not even half of it.  And

8  the reason this is here and nothing else is because it provides

9  the summary of numbers.  How much she needs for future care.

10  That would be based on the testimony as provided not only by

11  expert Dr. Haider, but also by the plaintiff at trial.

12         And just to respond to one assertion that I heard,

13  that Dr. Haysbert has not had ongoing medical care with respect

14  to these concerns, that is just -- I don't know where he's

15  getting that information from.  She's been under the care of her

16  treating physicians, and Dr. Haider is one such person who has

17  observed Dr. Haysbert and been able to come to some

18  determinations based on her own observations.  But she also has

19  a treating physician, Dr. Debra Chinniry, who will be appearing

20  at trial and testifying as a treating physician.

21         THE COURT:  All right.  I understand there are some

22  objections to that.  We'll get to Dr. Chinniry later.

23         Let me just ask you, I'll give you an example, which I

24  think this goes to Mr. McGavin's hearsay objection, but looking

25  at the last page of Plaintiff's 5, if you'll turn to that, it

1  references some kind of summary, saying that Dr. Haysbert

2  suffered a fall and blow to the head on May 23rd; that she now

3  suffers from numerous deficits, and it describes those, and the

4  conclusion that, to a reasonable of degree medical probability,

5  a majority of these deficits are more likely than not permanent

6  in nature.

7          MR. HAYSBERT:  I do want to apologize for the

8  inadvertent mistake of including that information.  It was not

9  our intention.  That information should be redacted from the

10 exhibit, Your Honor.

11         THE COURT:  All right.  Well, here's what I'm going to

12 do:  I will sustain the hearsay objection as to the expert's

13 report.  I will reserve as to questions of foundation and

14 admissibility of any Rule 1006 or pedagogical summaries, and

15 note that plaintiff agrees to redact the written statement on

16 the last page under Summary of Costs.  Okay.  That is Exhibit

17 No. 5.

18         Exhibit No. 6 appears to be of the same ilk.  It

19 involves a different witness, Enrique Vega.  I'm inclined to

20 make the same rulings with respect to this unless either of you

21 want to be heard on this.

22         Mr. McGavin, do you want to be heard further on

23 Exhibit 6?

24         MR. McGAVIN:  No.

25         THE COURT:  Mr. Haysbert?

1            MR. HAYSBERT:  My apologies, Your Honor.  Give me one

2    moment, please.

3            This information we have provided the Court with would

4    be the same argument.  This is nothing in terms of the analysis,

5    mental impressions provided by Dr. Vega, but within his

6    expertise, background and experience he is putting them in

7    numbers that are reflected from the life care plan and would be

8    summaries of the treatment that she needs, and would not be

9    hearsay evidence.

10           THE COURT:  All right.  I'm going to make the same

11   ruling then.  I'll sustain the hearsay objection, but reserve.

12           Exhibit No. 7.  Nothing was included in the binder.

13   This was Vocational -- excerpts of Vocational Economics, Inc.

14   medical cost care summary for JoAnn Wright Haysbert.

15           MR. HAYSBERT:  Your Honor, again, this is an

16   inadvertent mistake on my part not to include this information.

17   Again, this is medical costs summary.  I think the information

18   provided is in the title of the information itself.  What I

19   would like to do is provide the updated information to the Court

20   as soon as possible, and I can email the Court with that

21   information.

22           THE COURT:  All right.  I'm going to direct you to

23   disclose it to defense by noon on August 1st, and I'm going to

24   make the same rulings applicable to this as to Exhibits 5 and 6.

25           MR. HAYSBERT:  Thank you, Your Honor.

 1          MR. McGAVIN:  Your Honor, may I ask a clarification

 2   question on this?

 3          THE COURT:  You may.

 4          MR. McGAVIN:  When we were looking at this, it wasn't

 5   clear whether or not 7 is also partially -- or 6 also includes

 6   information for 7.  I don't -- I just wasn't clear.  And so in

 7   looking at it I was wondering if that -- it was just a

 8   pagination issue?  I just -- I would just ask perhaps if that's

 9   what's being referenced, there's personal care home services,

10   laboratory studies, medications are also included in 6, so I

11   just didn't know whether that was supposed to be split in half

12   somehow.  But if there's something different that's coming, I

13   will review it on Monday.

14          THE COURT:  Mr. Haysbert, can you address that?

15          MR. HAYSBERT:  Yes, Your Honor.  In the expert

16   disclosures that we provided last year, approximately August,

17   there were two different reports provided by Mr. Vega, one was

18   the ECC economic analysis report -- these are two different

19   reports.  So there should be two separate pieces of information

20   with respect to those, two different reports.  But we will

21   update it by noon on August 1st to clear up any miscommunication

22   or confusion.

23          THE COURT:  Plaintiff's 8.  This appears to be a, just

24   a brief summary of a visit by JoAnn Haysbert, the plaintiff, to

25   MedCare.  I don't know if it specifies the date or not.  I see

1   the exhibit references the date as being May 25th, 2018.  Yes,

2   it does, at the top upper right-hand corner.

3            Mr. McGavin, what is your objection to this document?

4            MR. McGAVIN:  It's hearsay, Your Honor.  The history

5   provided by the patient is properly admissible as an exception

6   to the hearsay rule --

7            THE COURT:  Where is the history?

8            MR. McGAVIN:  I don't see any.  That's the point.

9            THE COURT:  Right.

10           MR. McGAVIN:  And we also -- it's not clear to us

11  whether or not this is a complete record from this facility.

12  There's to intake history, there's no history, no statement from

13  the patient, it just begins with vitals.  And so it's

14  essentially an evaluation by a doctor who is not anticipated to

15  testify.

16           THE COURT:  Mr. Haysbert, how do you want to respond

17  to that?

18           MR. HAYSBERT:  Your Honor, we put this document into

19  the exhibit list in response to testimony and what we expect to

20  be testimony by defendant's expert that Dr. Haysbert did not

21  obtain any sort of medical care within days of the incident

22  having occurred.  So we wanted to put this here in an abundance

23  of caution to ask the Court its leave with respect to the

24  expected testimony that we will hear from the defendant's

25  expert.

1        MR. McGAVIN:  The issue, Your Honor, is whether or not

2   she had any medical care for an alleged traumatic brain injury.

3   That's the claim here.  And even the diagnosis in this document

4   does not have any reference to a TBI or a head injury.  The

5   plaintiff apparently traveled to South Carolina a day or so

6   after the accident and there was no emergency care, and this

7   document -- we have requested a complete copy of it previously,

8   this is what we've been given, and there's no reference to any

9   head injury or blow to the head, any cut, bruise.  There's no

10  reference.  So...

11       THE COURT:  Well, it does reference contusion of the

12  shoulder, left shoulder, contusion of the wrist and wrist pain,

13  and a fall.  But you're right, if you're arguing that it doesn't

14  reference any kind of head, complaints about the head, it

15  doesn't reference that.  It doesn't appear to.  It does

16  reference some X-rays of the shoulder and the left wrist.  But

17  yes, if a proper foundation is laid this may be admissible, but

18  I'm going to reserve on this.

19       That brings us to this series of interrogatory

20  responses and supplemental responses by both defendants in the

21  case.  The exhibits are 9 through, it looks like 16.  I'm happy

22  to hear you on this, Mr. McGavin.

23       MR. McGAVIN:  Your Honor, in our meet-and-confer I was

24  hopeful that I could identify specifically, since these contain

25  objections and other information -- in other words, tell me

1  which one of these you really want and/or that you really need.

2  Because these are all being offered and they contain much

3  extraneous information that is irrelevant, but to the extent

4  that plaintiff could identify some statement that he wishes to

5  use -- in other words, shoot with, shoot with specificity rather

6  than with a shotgun, perhaps I could reconsider.  But what I'm

7  confronted with is numerous documents that are just being

8  offered which contain significant information which is neither

9  relevant nor material and will be of no help in proving the

10  case.

11           This is, this is a slip-and-fall case.  It's a

12  run-of-the-mill slip-and-fall case, and the issues are quite

13  discrete.  So that's why I object.  They lack probative value.

14  There is prejudicial impact.  They may be cumulative of other

15  testimony that is offered.  And we've attempted in our

16  meet-and-confer to narrow the issue for the Court without

17  success.

18           THE COURT:  All right.  Thank you.

19           Mr. Haysbert, what about that?  And I'll tell you, the

20  Court's practice is we don't typically permit the wholesale

21  moving of answers to admissions, answers to interrogatories into

22  evidence.  Mr. McGavin is correct, that typically, you know,

23  it's going to be focused.  What question was asked, what answer

24  is asked that's relevant and material for the jury to know in

25  helping to decide the party's dispute.  We don't just move these

1    in wholesale.  So why can't you do that?

2            MR. HAYSBERT:  Well, Your Honor, we can do that today

3    if it wouldn't take too much of the Court's time.  Otherwise we

4    could meet and confer with Mr. McGavin and have it done by,

5    let's say, the end of the day on Monday.  But the issue here

6    is --

7            THE COURT:  Why wasn't that done before now?

8            MR. HAYSBERT:  I have no response for that, Your

9    Honor.

10           I do want to just make a point about something very

11   important.  We have no indication whether anyone from Bloomin'

12   Brands is going to testify or appear, and we have not been given

13   any information regarding anyone from Bloomin' Brands who might

14   be within the circumference of this Court's jurisdiction

15   subpoena-wise.  So we're concerned about the fact that what

16   evidence will we be able to put on with respect to Bloomin'

17   Brands's position in this case.  They are a defendant.  They're

18   party to this case.  We were not allowed to obtain the

19   deposition testimony of a person most knowledgeable.  So we

20   believe that with respect to Bloomin' Brands, not only the

21   interrogatory responses, some of which wasn't even signed,

22   verified interrogatories, and then requests for admissions

23   should be admissible in the event there is no one that shows up

24   to testify on behalf of a defendant in this case.

25           THE COURT:  Well, here's my response to this:  So

1   these are only interrogatories, and I'm going to direct counsel

2   to identify -- meet and confer and identify which ones you want

3   to use and attempt to only mark those as exhibits -- and you're

4   going to have to redact and excerpt these things.  So that --

5   Mr. McGavin, I did note that many of these don't have

6   verifications.  I'm not quite sure why.  Were they verified?

7           MR. McGAVIN:  Your Honor, I'd have to check.  I'm --

8   my belief is that they were, but I'd have to go through them

9   chapter and verse and --

10          THE COURT:  I'm assuming that you wouldn't contest

11   that these are the respective defendants' answers in any event?

12          MR. McGAVIN:  No, Your Honor.

13          THE COURT:  All right.

14          MR. McGAVIN:  I just would like to know what I'm up

15   against.

16          THE COURT:  Sure.  Sure.

17          MR. McGAVIN:  I would just point out to the Court

18   that, as to Bloomin' Brands, it's stipulated that Outback owns

19   and operates this location.  So this concern over Bloomin'

20   Brands as a defendant, they're not even involved in managing and

21   running this store.  So...

22          THE COURT:  That ship has already sailed so far as I'm

23   concerned.  You know, they're still --

24          MR. McGAVIN:  I understand.

25          THE COURT:  -- in the case, they're still a defendant,

1 and Mr. Haysbert has the right to offer evidence that pertains

2 to any potential liability that they may have relative to the

3 plaintiff.

4         But what I'm going to direct you to do is meet and

5 confer and identify the ones you need.  You clearly don't need

6 all these.  There's much in them that is not useful to proving

7 your case.  Maybe there are things that are useful and relevant,

8 but you all should be able to agree on what those answers are,

9 put them in one document, and you could even use it as an

10 agreed-upon exhibit.  The answers are the answers.  You know,

11 you've already given them.  They don't strike me as terribly

12 significant one way or another to this dispute, but they could

13 be pertinent to plaintiff's attempt to prove the case.

14         So include -- I'll just tell you, in this document I'm

15 expecting you to include the caption, I expect you to include

16 the heading, the question and the answer, and to exclude and to

17 redact irrelevant and immaterial things.  And those would

18 include objections.  They would include home addresses and phone

19 numbers for witnesses who are identified on these documents.  In

20 the exhibit you want to admit, pull out all of that stuff.  And

21 I'm very confident that the two of you can put your heads

22 together and figure out which ones of these can be admitted.

23 And I'm going to tell you to choose carefully, you know.  We

24 don't -- Judge Smith isn't going to allow you to just move these

25 in wholesale.  She's going to want to know which ones -- you're

1   going to have to go through the same exercise at trial.  So you

2   don't want that to happen.  You want to do it now in advance of

3   trial so you can put in what may have some bearing on this case

4   and leave the rest of it that has not bearing on the case out.

5           Are we clear on that?

6           MR. HAYSBERT:  Yes, Your Honor.  Should I resubmit it

7   to your chambers?

8           THE COURT:  What I'll ask you to do is submit a

9   supplemental final pretrial order with the entry for this

10  exhibit and noting that it is being substituted in place of

11  Exhibits 9 through 16.  I don't know that there's any need to go

12  through and mark all those exhibits.  You could probably just

13  put all of this in one document and have it be a short, brief

14  document, and the jury will be grateful to you that you put

15  everything that is potentially of significance to them in one

16  place.  And if there is an outstanding objection still to the

17  particular answer, you can still note that on the supplemental

18  final pretrial, and I'll just rule on it one way or the other

19  without assistance from you all.  Likely I'll reserve on it for

20  the trial Judge, and if something has to be whited out or

21  removed, that can happen.

22          MR. McGAVIN:  Your Honor, may I ask, I have meetings

23  Monday related to this case.  Could I have just the ones that

24  plaintiff truly wants by close of business Monday?  And that way

25  I can review it and get back to counsel.  But the starting

1 point, I think, is, if counsel could provide to me --

2          THE COURT:  I'm going to make it simpler:  After this

3 hearing is done, the two of you can sit down here in the

4 courthouse and he can get it to you before you leave the court

5 today.

6          MR. HAYSBERT:  Your Honor, if I may?  I do have a

7 10 o'clock court appearance.  And when I say 10 o'clock, I mean

8 in the Alameda courthouse in Union City, California.  Done

9 remotely.

10          THE COURT:  When?

11          MR. HAYSBERT:  10 o'clock this morning.  Pacific

12 Standard Time.

13          THE COURT:  Well, that's...  I don't know that you're

14 going to make that --

15          MR. HAYSBERT:  That's fine.

16          THE COURT:  -- given the rate we're going.  So you

17 know, I can't help you with that.  I want you two, you're here,

18 meet, sit down and go over this, and just identify which ones

19 you want to use so Mr. McGavin has it.  I want this supplemental

20 final pretrial order with this exhibit, and if there's

21 subsequent ones we can talk about, but just submit it as an

22 additional document just with the one entry for this.  I don't

23 need everything that's gone before and everything that's gone

24 after.  I'll sign it and submit it and file it so that Judge

25 Smith knows what we've done, okay?

```
 1              Okay.  The next groups of exhibits, and perhaps we can

 2   take them as a group, are three Outback Safety Reference Guides,

 3   Best Practices, and the video.  So that is

 4   Exhibits 17 through 22.

 5              Mr. McGavin, happy to hear from you on those.

 6              MR. McGAVIN:  Thank you, Your Honor.  In a premises

 7   liability case, the question is not policy and procedure, it's

 8   was the floor defective.  In other words, was it slippery or was

 9   it not?  And that's a factual question.  Outback could have no

10   policies and have perfect floors without a defect, or it could

11   have hundreds of pages of policies and still have slippery

12   floors.  Policies do not determine whether or not a floor is

13   slippery.  So this whole effort to establish the standard of

14   care is largely irrelevant to the test in this simple premises

15   liability case; which is, was the floor slippery, was there a

16   foreign substance present.  And that is somewhat of a specific

17   objection to, for example, the video, because in that they talk

18   about a wet floor.  There's no evidence the floor was wet.  The

19   witnesses do not say that the floor was wet.  Ms. Haysbert does

20   not say her clothes were wet afterwards.  So this effort to

21   establish a standard of care based upon internal policy, No. 1,

22   we believe fails.  Secondly, the documents are filled with many

23   irrelevant issues, safety training, slip and fall prevention,

24   strain prevention, keg storage, as an example.

25              We then go on to Exhibit 18.  This is related to "Do
```

```
1   Your Part To Keep Our Floors Clean And Dry."  Well, if the floor
2   is not clean and dry and we had notice of the defect, then we're
3   negligent.  And don't give a warning.  That's the standard in a
4   slip-and-fall case.  But that's a legal issue.  And using these
5   documents to establish the standard of care or whether or not
6   the floor was, in fact, slippery, dirty, wet or defective is a
7   factual issue.  So we do object to the use of these best
8   practices documents.  They don't guarantee either a slippery
9   floor or a perfect floor.
10          I would also point out, for example in No. 19, this is
11  a document that refers to slip and falls around water, in the
12  kitchen, around drains.  There's no allegation in this case this
13  happened anywhere near a drain.  It happened in the dining room.
14  So there's no allegation of a drain not being -- or being
15  clogged with grease or dirt or debris.
16          We get to 20.  This is for employees to wear
17  slip-resistant shoes.  It's a standard Worker's Compensation
18  internal request to employees.  This goes to instructing
19  employees to wear slip-resistant shoes because they're working
20  in food service, so they'll be back in the kitchen presumably
21  and serving and carrying food that might have French fries and
22  blooming onions and steaks and other things.
23          And then we get over to "Prevention of Slip and Falls:
24  Use of Mats."  Again, just, this goes to the same issue of
25  standard of care.
```

1          As to the video, "Clean and Safe Floors:  Cleaning Up
2    Spills," there's no evidence of a spill.  There's no witnesses
3    that testified to that.  Plaintiff is attempting to bootstrap a
4    text message in another exhibit here from a witness who's not on
5    plaintiff's witness list who will not be testifying, it's the
6    son of the man who witnessed the incident, so the son is the one
7    who said "I guess there was something on the floor."  The father
8    says there wasn't.  And he saw Ms. Haysbert fall and said there
9    was nothing on the floor that I saw.

10          Likewise, the store employee, Ms. Crosby, does not say
11   that there was any spill.  Nothing was cleaned afterwards.
12   That's confirmed.

13          So as to those specifics, they would be irrelevant to
14   offer that to the jury.  There would have to be some evidence to
15   support the notion that the floor was wet or there was a spill
16   that needed to be cleaned.  That's not the allegation, as I
17   understand it.

18          So for these reasons, Your Honor, we believe that this
19   category of exhibits, which are policies and procedures, are
20   irrelevant and not properly admissible.

21          THE COURT:  Thank you.

22          Mr. Haysbert?

23          MR. HAYSBERT:  Your Honor, there's a lot to unpack
24   here.  I'll try and do my best.

25          No. 1, defendant's counsel was given ample opportunity

```
 1   to depose plaintiff's daughter, a witness in this case, who
 2   provided an affidavit ultimately that indicated that when she
 3   walked in to the restaurant, having been summoned by someone, an
 4   employee within the restaurant, that her present-sense
 5   impression was there was someone mopping the floor at that time,
 6   and that she had been told by a patron that there was a spill of
 7   some kind that they had not adequately cleaned up.  The
 8   references are right to the affidavit you have there.  What this
 9   goes to -- there is evidence, potential evidence on our side.
10           What this goes to, Your Honor goes back to your ruling
11   on the motion for summary judgment and Fourth Circuit law and
12   case law in Virginia where a floor being defective is not just
13   based upon whether or not the floor itself was defective, which
14   is one argument we intend to make in this case, but also whether
15   or not that floor was adequately cleaned and sufficiently
16   cleaned and did not have spills or certain objects on it such
17   that the plaintiff would be injured.
18           So in this case we also have, with respect to these
19   documents, a notice issue.  If you have materials that say
20   employees are required to wear slip-resistant shoes and they're
21   wearing slip-resistant shoes and they're not being careful that
22   there's a slippery floor or something wet on the floor because
23   they're wearing those shoes, yet there are other patrons that
24   are in the store that are walking not necessarily with
25   slip-resistant shoes, that they're not being cognizant.  And
```

```
 1   ultimately our experts are relying on these materials in saying
 2   that what they were actually doing within this restaurant wasn't
 3   complying with their own internal rules and procedures, weren't
 4   complying with industry standards.
 5          THE COURT:  But their internal policies have no
 6   bearing -- Fourth Circuit case law is clear on that -- on what
 7   the standard of care is.  That's a product of Virginia common
 8   laws as enunciated by the Virginia Supreme Court.  So the
 9   policies cannot be used to set the standard of care, and you
10   seem to be suggesting that's the purpose you want to use them
11   for.
12          MR. HAYSBERT:  Not at all.  We're not suggesting that
13   the internal policies should be used to determine the standard
14   of care, but there is industry standard practice, and our
15   experts ought to be able to opine that there is an industry
16   standard practice that the store should have been in compliance
17   with and that these documents that we're reviewing are not
18   complying with those industry standards.  That is the law.  And
19   our experts ought to be able to opine on that.
20          In addition to that, this information also provides
21   you with details providing the determination of whether or not
22   there was adequate notice with respect to the plaintiff.  We
23   have evidence, we have people that will appear at trial
24   intending to offer evidence.  The floor was in fact slippery,
25   that it was slick, that it was wet.
```

1    THE COURT:  How do the policies put Outback on notice

2  of any particular defect or problem with the floor on May 23rd

3  when the plaintiff traversed across the floor?

4    MR. HAYSBERT:  They are required to comply with their

5  policies.  But the floors, our experts and our witnesses are

6  going to opine, were not clean, were not as they were supposed

7  to be on that date, and they were supposed to be, given their

8  own policies and procedures.  But we're not relying on those

9  internal policies and procedures to provide the standard of

10 care.  What we're relying on is industry practice as will be

11 opined on by experts.

12   THE COURT:  All right.  I'm prepared to rule on that.

13   This is pursuant to the Fourth Circuit case Hottle v.

14 Beech Aircraft Corporation at 47 F.3d 106, Pages 108 to 110,

15 it's a 1995 case.  "Private internal rules cannot be used to fix

16 a standard of care established by common law."  So I'm going to

17 sustain the objection in part.

18   I will reserve in part to the extent that plaintiff

19 seeks to admit these private practices exhibits for other

20 purposes.  We'll have to await the evidence at trial to

21 determine what if any such purposes may be valid.

22   That brings us to the floor plan, Exhibit 23.

23   MR. McGAVIN:  Your Honor, ordinarily a floor plan

24 would be not an issue, but in this case, plaintiff still

25 persists in asserting that there was a video of the location

1  where the incident occurred.  Judge Miller dealt with that.  We

2  had extensive discovery.  There are exhibits later on that deal

3  with this regarding what was purchased when.  And in this floor

4  plan there are references to the location of cameras.  Still

5  photos.

6            THE COURT:  Where is that?  Where is that on the --

7            MR. McGAVIN:  Page 2, Your Honor, 3DVR photo link.

8  Still photo link at the bottom.  It's very -- it's small.

9            THE COURT:  I see that.

10           MR. McGAVIN:  Yeah.  And then you go to the next page,

11 Safety and Security and there's a reference to cameras, card

12 swipes, those types of things.  There's a layout, if that's what

13 they're interested in, but this issue of the cameras --

14           THE COURT:  Let me ask you this:  Do you have any

15 objection to the admission of the first page as being a true and

16 accurate representation of the layout of the floor plan?

17           MR. McGAVIN:  No, Your Honor.

18           THE COURT:  Very well.

19           All right, let me hear from Mr. Haysbert on that.

20           MR. HAYSBERT:  Your Honor, if he has no objection to

21 No. 1, I think the issue would be with respect to the remaining

22 two pages of the document, and our only concern is that we have

23 testimony, potentially, if we can get her, Deajah Clark, which

24 indicated in her affidavit that she saw Lisa Crosby, the manager

25 at the restaurant, slip and fall in the same area where the

1  plaintiff slipped and fell.

2          And we also have Ms. Haysbert, the daughter, who will

3  be testifying to the fact that when she came in she saw them

4  mopping the floor where the plaintiff fell.

5          We also have documentation of the witnesses who will

6  talk about the fact that they were there and where they were

7  with respect to the incident that occurred.  Samantha Gump, who

8  may be called to testify and was deposed, indicated that she was

9  with Lisa Crosby at certain key moments when pictures of the

10  plaintiff were taken such as when she was walking out of the

11  door.

12          So it's very important that we orient the jury to

13  where people were, and there's been no issue with that.  We've

14  used this at deposition very effectively, and I think it will be

15  important for the jury to fully understand what was happening,

16  where it was happening in the restaurant, as you discussed

17  earlier on as we were going through the exhibits.

18          THE COURT:  Do you have any objection then to

19  withdrawing Pages 2 and 3?  Is Page 1 sufficient for your

20  purposes to identify where the fall took place and where people

21  were and, you know, presumably they can testify to where they

22  were on the drawing if they're able to?

23          MR. HAYSBERT:  Your Honor, the reason why we included

24  these three pictures is because they do depict things

25  differently between pictures.  For example, the last picture

1   provides like a more 20,000-foot view of the facility.  It takes

2   out a lot of the extra noise in the picture and provides --

3          THE COURT:  Do you have any objection then to --

4   because frankly I did go back in light of the exhibits that

5   follow, I reviewed Judge Miller and Judge Smith's ruling

6   concerning the camera.  Do you have any objection to removing

7   the references to the DVR photo links and to safety and security

8   as it relates to cameras and card swipes and those kinds of

9   things?

10         MR. HAYSBERT:  Your Honor, I have no objection to

11  that.

12         THE COURT:  Mr. McGavin, would that resolve your

13  concerns with respect to these exhibits?

14         MR. McGAVIN:  Your Honor, I agree that Page 3 is the

15  easiest to read, but I haven't studied every line of this.  But

16  it seems to me if they just want a diagram, all they need's the

17  diagram, and all of the other information should just be

18  redacted.

19         THE COURT:  Well, that's something different.

20  Plaintiffs can offer whatever evidence they want, but what I'm

21  trying to do is address your concern about whether the plaintiff

22  is going to try to revisit the videotaping issue, which from my

23  perspective is not going to be allowed.  And it seems to me if

24  we redact anything from these documents that -- and it

25  doesn't -- I know we're doing it on the fly here, but if

1  everyone will agree that anything related to cameras and filming

2  and DVRing of the facilities will be redacted, then it seems

3  like we've resolved the issue with respect to this exhibit.

4           MR. McGAVIN:  I think that's right, Your Honor.  It's

5  just -- I'll look at it again.  I have to get a magnifying lens,

6  because my -- I can't 100 percent --

7           THE COURT:  Sure.  It's small.

8           MR. McGAVIN:  -- read it, but that's fine.  It's just

9  a layout.  I don't have a problem with that.  I just don't want

10 to get whip-sawed by putting something in and then having an

11 argument, see, there were cameras, where are the cameras, why

12 haven't they produced the film and so on and so forth.

13          THE COURT:  We'll address that.  But do you have any

14 objection to -- I'm going to put the objection's resolved

15 subject to the parties' agreement to redact references to camera

16 and videotaping and the like.

17          MR. HAYSBERT:  No objection, Your Honor.

18          THE COURT:  All right.

19          Okay then.  I don't want to steal anybody's thunder,

20 but the Exhibits 24 through 27, which are invoices for Solid

21 Security Services, Incorporated referencing cameras and payment

22 for cameras and upgrading to hard drives and alarm repairs, CCTV

23 repair labor, installing of camera at bar and the like, that all

24 appears to be related to this issue that Judge Miller and Judge

25 Smith had rejected the plaintiff's contentions on.  Is there

1  some other reason that this information is relevant,

2  Mr. Haysbert, other than as it relates to whether or not the

3  premises were filmed and videotaped?

4         MR. HAYSBERT:  Well, my concern, Your Honor, is that

5  we're disputing evidence that defendant wants to bring into the

6  case which were pictures that were taken by me that we provided

7  to them, and we see no relevance for those pictures other than

8  the fact that there was a camera that we found had been working

9  two or three months after the incident occurred.  We want to

10 know why that exhibit is there.  And the reference we're -- we

11 put this in when we understood that Mr. McGavin, defense

12 counsel, was going to try and include those series of pictures,

13 which we believe have no relevance other than to reflect whether

14 or not there was a camera working at the time that was situated

15 above the hostess stand and may or may not have caught anything

16 happening at the front of the house.

17        So let's be clear:  The issue that's still relevant in

18 this case is the front of the house and what was happening with

19 respect to the floors itself and whether people were slipping

20 and falling on the for due to some defect in the floor at the

21 front of the house.  There is a camera situated right above the

22 hostess stand that was working at that time that would have been

23 able to capture things like whether there was a mat that had

24 been situated at the front of the house.

25        I am not prepared to discuss at trial, Your Honor,

1   anything regarding video.  I don't intend to.  But we put that

2   there in an abundance of caution because we don't know what Mr.

3   McGavin intends to do with the pictures that I took that were

4   fully and focused on the cameras at that time.

5           THE COURT:  Mr. McGavin, what exhibit is he referring

6   to?  Have you marked an exhibit that has a photograph of a

7   camera?  If you have, I need you to point it out to me.  I've

8   got your exhibit book here.  I'm not seeing any photographs of a

9   camera.

10          MR. McGAVIN:  I didn't know that --

11          THE COURT:  Is this Exhibit 7.?  Is that what you're

12  referring to?  I don't even know if that is a camera.  Defense

13  Exhibit 7?

14          MR. McGAVIN:  I guess that's what Mr. Haysbert's

15  referring to.  We're not --

16          MR. HAYSBERT:  D7, yes, Your Honor.

17          MR. McGAVIN:  There are three of these images, Your

18  Honor.

19          THE COURT:  Okay.

20          MR. McGAVIN:  If that brings the camera issue back

21  into the case, that's not why I was offering them.  They're just

22  a view of the area, and they were on plaintiff's witness list

23  and so we put them on.  But I don't want to reinject the camera

24  issue, so we'll -- I'm not pressing that issue.  I'm not trying

25  to have this both ways.  I hadn't really contemplated that the

1  camera was in those photos, so... I can, I'm not interested in

2  those in that case.

3          THE COURT:  Is there any way that these could be

4  copied such that the camera could be redacted?  Just blacked out

5  and...

6          MR. McGAVIN:  I guess you could cut off part of it and

7  put a piece of --

8          THE COURT:  You cut off the ceiling shot there.  That

9  probably would work.

10          MR. McGAVIN:  Yes, I could do that.

11          THE COURT:  Is that agreeable to you?

12          MR. HAYSBERT:  That's agreeable to us, Your Honor.

13          THE COURT:  All right.  So we'll get to that Defense

14  Exhibit 7 then, but with that correction then are you

15  withdrawing proposed Exhibits 24 through 27?

16          MR. HAYSBERT:  Yes, Your Honor.

17          And can we, with the withdrawal of these exhibits,

18  renumber at this point?

19          THE COURT:  Yes, you can renumber.  Since they haven't

20  been -- actually there's no stickers on exhibits yet anyway.

21  You can renumber the exhibits.

22          Do you have any objection to that?  It would make

23  sense to have them sequential rather than having gaps.

24          MR. McGAVIN:  That's fine, Your Honor.  I just --

25  that's fine.

1          THE COURT:  All right.  So I'm going to put "Plaintiff

2     withdraws Exhibits 24 through 27 and defendant agrees to" -- I

3     don't know what the -- "Redact, recopy Defendant's Exhibit 7 to

4     remove photo of camera, photos of camera."

5          Okay.  That brings us to 28, Plaintiff's 28, which is

6     this Insurance Who-To-Contact List.  I think the objection

7     speaks for itself.  Why is this relevant, Mr. Haysbert?  Because

8     it sure doesn't appear to be relevant and it certainly appears

9     to be potentially unduly prejudicial.

10          MR. HAYSBERT:  Your Honor, our concern again is that

11     we have no one from Bloomin' Brands, a person most knowledgeable

12     or otherwise that we've been able to notice to testify at trial.

13     I have requested from Mr. McGavin if he was willing to produce

14     anyone on behalf of that organization, he's indicated that he's

15     not willing to do so.  We've had affidavits submitted by Teresa

16     Matthews and other individuals from Bloomin' Brands' Brands, we

17     just haven't been able to get anyone to trial.  And they are a

18     defendant in this action for all the reasons stated in your

19     motion for summary judgment ruling and our motion for summary

20     judgment on Bloomin' Brands.

21          THE COURT:  Thank you.

22          MR. HAYSBERT:  Sure.

23          THE COURT:  Mr. McGavin, leaving aside questions of

24     foundation, which will have to be established at trial, and

25     authenticity of this document, could we resolve your objection

```
1   by redacting the references to insurance and Worker's

2   Compensation and anything like that?

3           MR. McGAVIN:  I just don't know how --

4           THE COURT:  I hear Mr. Haysbert to say to a limited

5   extent this document would suggest that if there is an accident

6   at this Outback Steakhouse in Chesapeake, that someone is to

7   make a report to Bloomin' Brands about that accident, and that

8   might suggest that Bloomin' Brands has some connection to the

9   operation of this particular business enterprise.  I'm not

10  saying it's admissible, but I'm saying if a foundation is laid

11  and if that's the limited purpose, would you agree to redact --

12  would you agree that redacting "insurance" and the like could --

13          MR. McGAVIN:  You would have to redact virtually the

14  entire document, Your Honor.  I'm just looking at it and trying

15  to wrap my arms around what it would look like.  I think there's

16  information in other discovery matters in the interrogatories

17  that Mr. Haysbert can get if he could just tell me what he

18  wants, and that may resolve it.  But there's going to be so many

19  holes in it the jury will be left at going back and saying what

20  did they take out of this?  And I don't see that there's really

21  a good way to do this.

22          MR. HAYSBERT:  Your Honor, I could think of one, to be

23  helpful to the Court.  What we need is logo.  What we need is

24  "Who-To-Contact" list, and then "All incident reporting

25  questions should be directed to," the number, and "Internal Use
```

1  Only".  Anything beyond that I don't think is necessary for us

2  to get across what we want to get across to the jury.

3          THE COURT:  All right.  Here's what I'm going to do.

4  I'm going reserve on the exhibit and direct plaintiff to redact

5  and make the redaction that you've just suggested, I think.  So

6  the admissibility can be addressed at trial.  I'm going direct

7  that you redact everything below "Internal Use Only".

8          MR. HAYSBERT:  We'll do, Your Honor.

9          THE COURT:  That brings us to Exhibit 29, Plaintiff's.

10  There's a relevance and prejudice argument.  Why is this

11  relevant, Mr. Haysbert?

12          MR. HAYSBERT:  Your Honor, this is the incident report

13  that the manager on duty at the time, Lisa Crosby, the

14  front-of-the-house manager, indicated that she filled out at the

15  time the incident occurred, or sometime after the incident

16  occurred, while Ms. Haysbert was sitting with her and while she

17  was discussing this incident with other individuals, including

18  plaintiff's daughter and perhaps Mr. Robinson, who was a

19  witness, potential witness to what occurred.

20          So we asked Ms. Crosby a number of questions about

21  this document at her deposition.  Some questions that she seemed

22  unwilling to respond to.  One of the things that we wanted to

23  know -- because she indicated that she took a photograph of

24  Ms. Haysbert -- wanted to know, well, did that comply with some

25  training?  Were you required to provide the photograph?  Why did

1   you provide the photograph of Ms. Haysbert, and why did you take

2   a photograph of, specifically, her shoes?  And then you went

3   back and you took a photograph of -- or at least the alleged

4   testimony is that she took a photograph of the floor where the

5   incident occurred, and it shows that it was clean and dry.

6   Well, how do we know that this photograph was taken at the time

7   that you say it was and that the floor was clean and dry?

8            THE COURT:  Judge Miller already addressed those

9   issues, again.  But sticking to this report, why does the blank

10  incident report add anything?  Ms. Crosby testified to those

11  matters.  Is she going to be a witness at trial?

12           MR. HAYSBERT:  Yes.

13           THE COURT:  All right.  She's going to be here.  You

14  have the right to cross-examine her.  What does this blank

15  incident report add to anything?

16           MR. HAYSBERT:  We'll strike that from the expert --

17  from the exhibit list, Your Honor.

18           THE COURT:  All right.  Plaintiff has withdrawn that.

19  Thank you.

20           The work order request.  I understand the basis for

21  the objection.  I don't know that there's any great need to

22  argue this, it will just be reserved for trial and depending on

23  the evidence at trial.  The Court's familiar with the exhibit.

24  The trial judge is going to have to make that determination.

25           MR. HAYSBERT:  The determination of?

```
1            THE COURT:  Admissibility.

2            MR. HAYSBERT:  I think the foundation questions I have

3  or foundation and authenticity, is that something that's going

4  to be objected to by opposing counsel and do we need to worry

5  about that?

6            MR. McGAVIN:  No objection as to authenticity, Your

7  Honor.  It's a true and accurate copy of a Outback document.

8            THE COURT:  Okay.  I'll note that the defendant is not

9  objecting to the authenticity of the document.

10           MR. HAYSBERT:  And the foundation for the document?

11           THE COURT:  Well, I think that's the second -- you're

12 agreeing it's a business record of one or both defendants; is

13 that correct?

14           MR. McGAVIN:  Yes, I'm agreeing it's a business

15 record, but I'm not satisfied that the adequate foundation of

16 relevance and materiality -- I don't know whether that's

17 specifically a foundational issue, but I don't want my response

18 to be misconstrued.

19           THE COURT:  I think, yeah, authenticity is a, maybe a

20 subpart or component of relevance, certainly, but it's not the

21 whole ball of wax.

22           MR. McGAVIN:  Authenticity I am not disputing, Your

23 Honor.

24           THE COURT:  All right.

25           MR. McGAVIN:  I do not want a records custodian called
```

1   for various documents.

2            MR. HAYSBERT:  So am I to understand that we will not

3   need to get a records custodian in order to attempt to admit

4   this into evidence, Your Honor?  That is plaintiff's concern.

5            THE COURT:  Yes.  Here's what I'm writing down:  That

6   the defendant agrees -- or defendants agree that this document

7   is an authentic business record.  Questions of admissibility are

8   reserved.

9            Brings us to -- we're getting near the end of these

10  exhibits -- 31, Declaration of Kristina Perry.  She's the

11  defense investigator.  And I guess this has these text messages

12  by someone who purports to be the son of Christopher Robinson.

13           Let me hear you on this, Mr. McGavin.

14           MR. McGAVIN:  First Your Honor, I believe you may have

15  misspoke.  This is plaintiff's investigator.

16           THE COURT:  I'm sorry, yes.  Plaintiff's investigator.

17  Thank you.

18           MR. McGAVIN:  First, Your Honor, the document is

19  hearsay because it's an out-of-court statement by Ms. Perry

20  followed by an out-of-court statement by not only Ms. Perry, but

21  also by this person identified as the son of Mr. Robinson, who

22  then goes on to say "All I know is it was, I guess, wet."

23  Guessing and speculation of someone who is not on either witness

24  list is not appropriate.  The son is not on anyone's witness

25  list and definitely not on plaintiff's witness list.  And the

54

```
 1   father, the Senior, Mr. Robinson, is on our witness list and

 2   under subpoena.

 3            THE COURT:  All right.  Thank you.

 4            MR. McGAVIN:  Pardon me?

 5            THE COURT:  Thank you.

 6            MR. McGAVIN:  You're welcome.

 7            THE COURT:  Mr. Haysbert?

 8            MR. HAYSBERT:  Your Honor, I think the question that I

 9   had and that my investigator had was whether or not this was, in

10   fact, Mr. Robinson or not responding with these text messages.

11   And what we have is testimony from the Chris Robinson that

12   defense counsel is referring to who indicated in his deposition

13   that he could not recall the majority of what happened during

14   the incident, but what he believed was that the floor was not

15   slippery or wet from what he could recall.  But then we have

16   what is completely contradictory evidence by his son who,

17   through deposition testimony I was able to determine from

18   Mr. Robinson, that his son would have been able to see more of

19   the action than Mr. Robinson himself would have been able to

20   see.  So I was able to elicit that from him.  So this directly

21   contradictory evidence to Mr. Robinson's, quote unquote, what

22   will be his testimony, should be evidence that can be used to

23   impeach him.

24            THE COURT:  Have you subpoenaed the son to testify?

25            MR. HAYSBERT:  Your Honor, we -- I believe we're
```

1  attempting to communicate with the son.  I have attempted

2  to myself, and had at one point spoken with him, and he shared

3  some very choice words with me and hung up the phone.  So I'm

4  trying to, but no, we have not.

5          THE COURT:  All right.  I'm going to sustain the

6  objection to the declaration.  There's multiple levels of

7  hearsay.  Questions of the impeachment of the father,

8  Christopher Robinson, can be addressed at trial during

9  cross-examination.

10          We have this preservation letter to Chip Chase,

11 Managing Partner, June 22nd, 2018.  That's Exhibit 32.  That

12 appears and is discussed in Judge Miller's ruling which is ECF

13 No. 145, and Judge Smith's ruling 146 concerning this whole

14 spoliation question and the videotaping.  And I assume that's

15 the basis for your objection; that it's not relevant and is

16 unduly prejudicial to submit a request for preservation of

17 evidence; is that correct, Mr. McGavin?

18          MR. McGAVIN:  Yes.

19          THE COURT:  Mr. Haysbert, do you want to be heard on

20 this?

21          MR. HAYSBERT:  Yes, Your Honor.  We don't intend to

22 use it for that purpose.  What we intended to use this

23 particular document was for the purpose of Chip Chase having an

24 awareness that there had been an incident that occurred at his

25 restaurant and being able to be impeached on the fact that he

1    had obtained or should have obtained this document within 30

2    days of the incident having happened and should have followed

3    up.

4           THE COURT:  I'm going sustain the objection that's

5    been made.

6           Next we're on Exhibit 33, which is the excerpts from

7    the Day In The Life video.

8           MR. McGAVIN:  Yes, Your Honor.

9           THE COURT:  Mr. McGavin?

10          MR. McGAVIN:  There are a number of problems with the

11   Day In The Life video.  They include, first of all, in the Day

12   In The Life video there's a section where the narrator, first of

13   all, starts by saying Mrs. Haysbert had a loving family, she had

14   an employment, she had a professional a career.  Those

15   statements are untrue.  She still has a loving family and she

16   still has a professional career, and she is working.  Her

17   current contract has her working through June 30, 2023.  So the

18   narration is incorrect.

19          Secondly, when talking about the loving family, which

20   is quite evident from the photographs, it's a beautiful family,

21   there is a still image of a very handsome gentleman who I

22   believe is counsel for the plaintiff.  And the Court has ordered

23   me not to point out that he is the son of the plaintiff.  So on

24   the one hand, the plaintiff wants to prevent any reference or

25   knowledge to the jury that he is the advocate for his own

1  mother, but then on the other hand in the document in the video

2  it appears, I believe, that the nice-looking gentleman there is,

3  in fact, plaintiff's counsel.  And I would be entitled to ask

4  Mrs. Haysbert who is that gentleman with his arm around you in

5  that loving embrace?  Because it would be in evidence at that

6  point.  And if I did, I would be running afoul of Your Honor's

7  ruling.  So start with those two points.

8        Secondly, it's dated, I believe, November of 2021.  So

9  I don't know whether this is the same version that may have been

10  produced in discovery or not, but it's produced November of

11  2021.

12        Finally, Your Honor, it is -- I believe there's a

13  further flaw in it.  It talks about how Mrs. Haysbert is or was

14  an excellent and very skilled public speaker, and then offers a

15  clip of her speaking.  Well -- and that's the before picture.

16  It's described as her eloquence before.  But actually it's a

17  video that was prepared -- it's on my impeachment list -- of

18  June 2020 as part of the fundraising effort for Hampton

19  University when Mrs. Haysbert was speaking.

20        So there are a number of foundational issues with it.

21  It's not accurate, and it injects issues into this case that the

22  Court has already addressed.  So I do object to the Day In The

23  Life video.

24        THE COURT:  Mr. Haysbert?

25        MR. HAYSBERT:  Yes, Your Honor.  We attempted to meet

1   and confer.  During the attorney conference with Mr. McGavin

2   about this video, I indicated to him then that we did not intend

3   to use the entire video.  First of all, the voiceover is out.

4   We don't need a voiceover for what we intend to show with the

5   video.

6           There are certain sections of the video that are also

7   out:  The warm embrace that he mentioned, the information

8   provided by the person doing the voiceover regarding how the

9   incident occurred.  We discussed this with Mr. McGavin already

10  and indicated that those portions would be removed.  So I don't

11  believe, once that is done, that there will be any issues with

12  what we're trying to show in this Day Of The Life video.  It's

13  there to show what is allowed as admissible to be shown in a Day

14  In The Life video, and that is what deficits Ms. Haysbert is

15  experiencing in her life as a result of having suffered through

16  what she went through.

17          THE COURT:  All right.  Thank you.

18          I don't have this modified video that Mr. Haysbert's

19  referred to.  The only thing I have is what's in front of me.

20  I've reviewed it.  It's more in the nature of a closing

21  argument/PowerPoint presentation, if you will.  And it is fairly

22  and rightly objected to by the defense.  I'm going to sustain

23  the objection to Exhibit 33.

24          34 is the CDC Materials/Guidance regarding traumatic

25  brain injury.

1          Mr. McGavin?  I think this is the last exhibit that's

2     in the binder that I have.

3          MR. McGAVIN:  Your Honor, this is clearly hearsay, and

4     it is -- to offer this into evidence would require the jury to

5     read it and understand it.  And plaintiff seeks to, and will, we

6     understand, put on evidence regarding the nature and extent of

7     the injury, the affect on specifically Mrs. Haysbert, and that

8     can be done.  But this is generic, it's broad, it's

9     non-specific, and it would invite the jury to speculate about

10    many, many things.  And it is highly prejudicial to ask the jury

11    to review this and act like they are doctors.  They will have to

12    listen to the evidence presented, the factual underpinning of

13    that, and reach whatever verdict they may.  But strenuously

14    object to this document being offered as an exhibit.

15         THE COURT:  Mr. Haysbert?

16         MR. HAYSBERT:  Yes, Your Honor.  I did include this

17    exhibit, portions of it, in my deposition of defendants' doctors

18    and they agreed that it was a government document, it was

19    something --

20         THE COURT:  I'm having a little trouble hearing you.

21    If you could just speak up a little bit?

22         MR. HAYSBERT:  Sure.  She agreed that this was a

23    government document, that they could or would rely upon it if

24    asked to do so under oath, and opine on its content.  This is a

25    self-authenticating document, Your Honor, as a government

1   document that discusses traumatic brain injuries, and we believe

2   that it is something that -- portions of it should be able to go

3   to the jury.

4        THE COURT:  Does it contain anything terribly relevant

5   to -- I understand you contend the plaintiff has suffered a

6   traumatic brain injury, but what in this is specifically

7   relevant to this case and will help the jury assess the issues

8   to be decided?

9        MR. HAYSBERT:  Certainly, Your Honor.  There are a

10  range of things that are germane to this case.  No. 1,

11  allegations are going to be made -- because these experts have

12  opined on this through their reports and the deposition, at

13  least one deposition we were able to take -- where they minimize

14  the -- whether or not there was any sort of deficit experienced

15  by Dr. Haysbert by virtue of the timing of when the trauma or

16  the TBI was discovered.  And in this document can -- I was able

17  to point out and the doctor agreed that traumatic brain injuries

18  don't always show up right away, as an example.

19       THE COURT:  Where is that?  Can you point me to that?

20       MR. HAYSBERT:  Sure.  Of course.  Your Honor, I can

21  point you to the first paragraph of the Classification section.

22       THE COURT:  What page?  Page 2?

23       MR. HAYSBERT:  This is on Page 2, and then will

24  continue throughout.  The first paragraph down from the public

25  health impact also on Page 2.

1            THE COURT:  Let me just read the classification.

2            MR. HAYSBERT:  Sure.

3            THE COURT:  So what am I missing?  It says "the

4    assessment of TBI-related effects, health effects is vital for

5    delivery of medical care for discharge planning, inpatient

6    treatment and rehabilitation.  Some health effects of TBI in

7    children such as deficits in organization and problem-solving

8    might be delayed and not surface until later."  And it says "As

9    a result, for both adults and children, TBI is being recognized

10   more as a diseases process rather than a discrete event."

11           MR. HAYSBERT:  Your Honor, I believe we are looking at

12   two different sections, I think.  Looking at Page 2 under the

13   first paragraph of Classification, "The severity of TBI can be

14   classified as mild moderate or severe.  The symptoms of TBI vary

15   from one person to another.  Some symptoms might resolve

16   completely.  Others, especially as a result of blunt [inaudible]

17   and severe TBI can result in symptoms that persist, resulting in

18   partial and permanent disability."

19           THE COURT:  All right.  That doesn't seem to move your

20   needle very much, but is there something else?

21           MR. HAYSBERT:  Oh, yes.  There's more.  There's a lot

22   more.  Under the first paragraph --

23           THE COURT:  Give me one more example.

24           MR. HAYSBERT:  Okay.  Well, then, if I'm going to give

25   you one more example.  I've got to go further down the list.

1          Under the "TBI Health Effects."

2          THE COURT:  All right.  Is that Page 18?

3          MR. HAYSBERT:  This is Page 3.

4          THE COURT:  Page 3.

5          MR. HAYSBERT:  "A TBI can result in health effects

6   that vary in intensity, length and clinical manifestation.

7   Symptoms can affect behavior, emotion and motor function, lead

8   to difficulties of memory, attention, learning and coordination.

9   Other signs and symptoms include headaches, fatigue and sleep

10  disturbances.  In addition, secondary neurological disorders

11  such as mood disorders."

12          ..."also increase the risk for neurodegenerative

13  disorders such as dementia"...

14          "...can negatively affect families"...

15          THE COURT:  Okay.  I've seen it.

16          Mr. McGavin, do you want to respond briefly?

17          MR. McGAVIN:  Your Honor, these are completely

18  non-specific and would require the jury to, if it were to come

19  into evidence as an exhibit, would require the jury to

20  speculate.  It offers no probative value of the diagnosis,

21  treatment, prognosis and injuries claimed by Mrs. Haysbert.

22          THE COURT:  Thank you.  I'm going to reserve on this

23  for the trial judge.  It does arguably -- it's a public record,

24  it's a report to Congress on TBI.  I'm not seeing much that

25  seems terribly relevant, but it may help inform the expert's

1    opinion testimony as trial.  We'll have to wait and see what the

2    other evidence is whether Judge Smith thinks this is relevant or

3    whether it's simply a frolic and a detour and a waste of time.

4            All right.  So that appears to be all of the

5    plaintiff's exhibit.  I do note that there are several kind of

6    markers, placeholders for, it says, Reserved, other

7    demonstrative, illustrative materials, charts, PowerPoints,

8    summaries and presentations, plaintiff notes, but nothing is

9    contained in Exhibits 35 through 38 and then 39 and 40 are also

10   reserved.  Are there other exhibits, Mr. Haysbert, that we don't

11   know about?  Because, you know, that's problematic.  That's why

12   we hold this conference is to make sure we have all the exhibits

13   and that the Court can address them and so that the defense has

14   them and they can lodge timely objections.

15           MR. HAYSBERT:  Your Honor, I think we just, we put

16   that information there as a placeholder.  What we want to do,

17   and I've done before, is, given whatever happens at trial, we

18   should be able to summarize it in some fashion and be able to

19   present that to the jury in closing argument.  We also want to

20   be able to show slides of witness testimony and point back to it

21   when we are going through closing argument as well.  My

22   understanding is that there are certain demonstratives that can

23   be reserved up until a couple days before trial:  PowerPoint

24   presentations, aids intending for use for opening statement and

25   throughout the trial that we shouldn't have to be able to

64

1  provide on an exhibit list.

2          THE COURT:  Let me just ask you just so I'm clear,

3  just want to make sure the record's clear --

4          MR. HAYSBERT:  Sure.

5          THE COURT:  -- you're telling me that there's no other

6  substantive exhibits that you have that aren't listed here?

7          MR. HAYSBERT:  That is correct, Your Honor.

8          THE COURT:  You're talking about demonstratives and

9  summaries?

10          MR. HAYSBERT:  Absolutely.

11          THE COURT:  Okay.  I understand.  I don't think

12  there's anything further for me to address on that.  I'm going

13  to note that plaintiff advises...

14              (Pause in the record.)

15          THE COURT:  We've been going at it here for a couple

16  hours.  Why don't we take a 15-minute break so everybody can

17  catch their breath and hopefully we can push through the rest of

18  this fairly quickly.  I do have a 2 o'clock guilty plea that you

19  need to know about, so that may affect whether you have to stay

20  after the plea to conclude the hearing today.

21          Court will be in recess.  We'll resume at just before

22  1:25.  Thank you.

23              (Recess taken from 1:08 p.m. to 1:25 p.m.)

24          THE COURT:  Okay.  We're back on the record, and we

25  are at the point of ruling on the plaintiff's objection to

```
 1  defense exhibits.  And I don't know if there's anything for me
 2  to address with respect to Exhibits 1 and 2.  I think -- oh, we
 3  lost Mr. Haysbert.  He's not here.  Can you go get him?
 4            MR. McKELVEY:  Yes, sir.  More than happy to.
 5  Apologize.
 6                 (Pause in the record.)
 7            MR. McKELVEY:  Judge, he's apparently on the phone
 8  with another court.  I can cover, but they wouldn't give me the
 9  computer to come in.  This is all news to me as of a minute ago.
10            THE COURT:  Let's proceed.  Mr. McKelvey, if you can
11  have a seat.  I think we can move through these defense exhibits
12  quickly.
13            So defendant's Exhibit 1 -- Mr. McGavin, do you have a
14  copy that he can look off of --
15            MR. McKELVEY:  Appreciate it, Your Honor.
16            THE COURT:  -- to the extent he needs to?
17            This is a photograph of the floor.  This was
18  previously addressed in my ruling in ECF No. 235, and I denied
19  the motion in limine to exclude it without prejudice subject to
20  objection at trial.  So I'm going to reserve on Exhibit No. 1.
21            MR. McKELVEY:  Understood.
22            THE COURT:  Photograph of the defendant's shoes.
23  Mr. McGavin, can you represent that Defendant Exhibit 2, was
24  this photograph taken at the Outback on the night or the day of
25  the fall?
```

1          MR. McGAVIN:  Yes.  Ms. Crosby took it.

2          THE COURT:  All right.  I'm going reserve on that.

3          Exhibits 3 and 4, plaintiff objects on the grounds of

4    hearsay, and it's clear hearsay, Mr. McGavin.  Do you want to be

5    heard briefly on that at all?

6          MR. McGAVIN:  I do.  Your Honor, in Alexandria and I

7    believe in Richmond, the court tells us move the CV in and skip

8    the qualification.  So if it's this court's practice that we

9    don't use the CV and then we orally qualify the expert, that is

10   just, that is a little different even in the Eastern District.

11   And so in our meet-and-confer I said to counsel I can't be

12   100 percent sure how Judge Smith will proceed, but either the

13   CVs will come in or it'll be done orally.  So...

14         THE COURT:  All right.  Here's what I'm going to do.

15   I'll reserve on that and I'll let you all address that with

16   Judge Smith at the start of the presentation of these experts'

17   testimony.  Presumably it will come up with plaintiff's experts

18   first.  By time you get to Dr. Pugach and Dr. Huang you'll know

19   the answer.

20         MR. McGAVIN:  Thank Your Honor.  I just needed the

21   Court's guidance on that and cannot say exactly what would

22   happen.

23         THE COURT:  Sure.  The photograph of the plaintiff's

24   head.  I previously denied a motion *in limine* with respect to

25   that without prejudice to objection at trial.  So I'm going to

1   reserve on that.

2          Exhibit No. 6 -- and I'm sorry, that was Exhibit

3   No. 5.

4          Exhibit No. 6 is another photograph of the defendant's

5   shoes.  I will -- or multiple photographs of the defendant's

6   shoes.  I will reserve on that for the trial judge.

7          MR. McGAVIN:  If Your Honor -- I'm sorry to interrupt.

8   But the Court had suggested that we redact those, so the record

9   should be clear that we will redact those to remove the camera

10  piece.  Those are the photos we were referring to previously.

11         THE COURT:  Defendant's 7.  Yes.  You're one step

12  ahead of me.

13         MR. McGAVIN:  I thought we were on 7.  I

14  misunderstood, Your Honor.

15         THE COURT:  That's fine.  I'm going to note that the

16  defendant is to remove the portion of the photos depicting the

17  camera in Exhibit 7.

18         Then we have these, what are referred to as labor

19  punches.  I assume that's people punching in on the clock --

20         MR. McGAVIN:  Yes.

21         THE COURT:  -- for the day in question?

22         MR. McGAVIN:  Yes, Your Honor.

23         THE COURT:  Mr. McKelvey, do you want to be heard on

24  this objection briefly?

25         MR. McKELVEY:  We'll withdraw that objection, Judge.

```
1              COURTROOM DEPUTY CLERK:  Your Honor?

2              THE COURT:  Ma'am?

3              MR. McGAVIN:  I'm conferring with counsel.

4              COURTROOM DEPUTY CLERK:  Mr. Haysbert is at the front

5    door and they won't allow him to bring his laptop in unless --

6              THE COURT:  My law clerk can go to the front door.

7              COURTROOM DEPUTY CLERK:  -- Mr. McKelvey goes to the

8    front door.

9              THE COURT:  I'll send my law clerk.  Thank you.

10             All right.  So that brings us to the 2020 fundraising

11   video and the April 2022 video of the retirement ceremony.

12   Mr. McGavin, are you telling the Court that you only desire to

13   use them for impeachment purposes?

14             MR. McGAVIN:  I wish to reserve both purposes, Your

15   Honor, both substantive and impeachment.

16             THE COURT:  All right.  Have you disclosed these

17   videos to the plaintiff?

18             MR. McGAVIN:  I have notified the plaintiff in a

19   supplemental list of exhibits.  I have not provided them either

20   a link or the video and I can do so.

21             THE COURT:  Why hasn't that happened already?

22             MR. McGAVIN:  I just discovered the April 2022 video,

23   and just discovered the 2020 fundraising video in attempting to

24   address the Day In The Life video.  So both I just discovered in

25   the trial preparation.
```

1            THE COURT:  How did you discover them?

2            MR. McGAVIN:  I started reviewing the Day In The Life

3   video and then started Google, using the Google Machine to

4   research as much as I could, and then I discovered the videos.

5   So that's how I came upon it.

6            THE COURT:  So you found the videos online; is that

7   what you're telling me?

8            MR. McGAVIN:  Yes, I did, Your Honor.

9            THE COURT:  And when did you receive the Day In The

10  Life video?

11           MR. McGAVIN:  Your Honor, to my knowledge, it was

12  received in November 12 of 2021.  That's the date.  It's dated

13  that day, so I assume I received it approximately then.

14           THE COURT:  All right.  Mr. McKelvey, do you want to

15  be heard on the use of these videos either as substantive or

16  impeachment evidence?

17           MR. McKELVEY:  Your Honor, on the impeachment, I mean,

18  if the foundation is laid through the plaintiff's testimony, I

19  don't know there's a whole lot we could say until we get to that

20  point.

21           On substantive it's a little late in the show for it,

22  but from a, from an evidentiary standpoint we haven't seen them

23  so we don't know what the, what prejudicial aspects exist in

24  them that -- I mean, we would really need to review them to go

25  tit-for-tat on them, and how long are they and that type of

1  thing.  Obviously there's probably some probative value if it

2  has to do with the extent of her brain injury and how well she's

3  able to articulate in public post the accident.  So I think it's

4  more a matter of meet-and-confer is probably going to be the

5  best way to resolve it, because I don't know what the content of

6  them are.

7          THE COURT:  All right.  Is there any reason you cannot

8  supply copies of these videos to?  You got them online, so I

9  assume you could copy them and email them not later than noon on

10 Monday?

11         MR. McGAVIN:  Yes, Your Honor.

12         THE COURT:  All right.  So I'm going to direct the

13 parties to meet and confer.  I will reserve ruling on those.

14         MR. McKELVEY:  Your Honor, do you want to us submit

15 that as kind of like we're doing the discovery, the combined

16 discovery document or do you want to just leave that for Judge

17 Smith?  How do you want us to...

18         THE COURT:  It'll be reserved for the trial judge, so

19 I don't think you need to submit anything to me, but I'm going

20 to direct you to meet and confer.  I don't view these videos as

21 constituting the alleged, the reference to surveillance video

22 that was discussed in the motion *in limine* concerning *sub-rosa*

23 evidence.  There was some question in the prior motion in limine

24 hearing, Mr. McKelvey, about whether or not the defendant had

25 surveilled Dr. Haysbert, the plaintiff, and Mr. McGavin

1   represented that there was no such surveillance and did not have

2   any such evidence.  I view these as different.  So I'm going to

3   direct the parties to meet and confer and defendant to disclose

4   the videos by noon on August 1st.

5           All right.  So that brings us to the objections to

6   witnesses.  Plaintiff's witnesses, there's an objection to

7   calling Kristina Perry as a witness.  Does the plaintiff intend

8   to call Kristina Perry as a witness?

9           MR. McKELVEY:  Based on my understanding, Your Honor,

10  we do intend to call her.

11          THE COURT:  All right.  Mr. McGavin, let me hear you

12  on the adequacy of the disclosure as relates to that.

13          MR. McGAVIN:  This goes to the declaration and the --

14  she's the private investigator, Your Honor.

15          THE COURT:  Yes.

16          MR. McGAVIN:  So she could not offer any -- first of

17  all, she was not disclosed as a potential witness.  And even

18  more importantly, though, the Court's ruling on the declaration

19  and the out-of-court statements by the son, Chris Robinson, make

20  her evidence irrelevant.  So I would, I have to follow up based

21  upon what the Court has ruled in the objection to the

22  declaration and the text messages to say her testimony can't be

23  relevant either.

24          THE COURT:  All right.  So that was a hearsay ruling

25  though.  In her affidavit, her declaration was dated, I believe

1    it was the 13th of April, 2021 that she signed it, so you've

2    known about her that she's somebody who did something related to

3    this case for a good long while?

4              MR. McGAVIN:  Yes.  No, no, I'm not disputing that,

5    Your Honor, but...

6              THE COURT:  Did you know about her prior to April 13,

7    2021 when you got that declaration?

8              MR. McGAVIN:  Your Honor, it's been so long, I don't

9    know the answer to that.  And I don't want to misspeak.

10             THE COURT:  Fair enough.

11             Mr. McKelvey, you can stand right there.  Mr. McGavin,

12   stay there.

13             So I guess the question kind of goes down to, one,

14   does she have anything useful that she can impart, but more

15   importantly, I guess on this disclosure issue is, you know, was

16   your failure -- one, did you disclose her, and if you didn't,

17   was the failure to do so substantially justified or harmless in

18   light of the Southern States factors and Rule 37?

19             MR. McKELVEY:  Judge, my best memory of this case

20   filing is that I don't have any arguments to make with regard to

21   substantial justification.  Other than the actual affidavit that

22   he received, I'm not sure that it was listed anywhere.  Her

23   value to our case in light of the Court's ruling, probably

24   that's the majority of what she was going to testify to.  I

25   can't speak to every single thing that she would testify to

1   because I haven't read her investigative report.  If the Court's

2   going to exclude her, we would ask that she be allowed to be

3   around or that the exclusion not apply to anything she might do

4   for impeachment, because that obviously wouldn't be required to

5   be disclosed to the extent she interviewed anyone and they

6   testify contrary to a prior interview, that kind of thing.

7         THE COURT:  I will sustain the objection in part and

8   reserve as to any testimony she may give in impeachment.

9         MR. McKELVEY:  Thank Your Honor.

10        MR. McGAVIN:  Your Honor -- well, I know you're taking

11  a note, but...

12        THE COURT:  Give me a moment, please.

13        MR. McGAVIN:  Yes.

14        May I confer with counsel?

15        THE COURT:  Yes.

16        (Counsel conferred.)

17        MR. McGAVIN:  I'm sorry, Your Honor.  Thank you.  I

18  was conferring with counsel regarding witness No. 4,

19  Mr. Seifert, who is listed and will be camping with his children

20  in a remote location.  We don't intend to produce him.  He's not

21  been served, and I was notifying counsel that if he is served,

22  that could I know a date, and counsel has pledged to at least we

23  can discuss it and see if there's a path to work that out.

24        THE COURT:  I appreciate you bringing that to my

25  attention.  Doesn't sound like there's anything for me to rule

1    on with respect to that.

2          Let's continue with respect to your objections to Brad

3    Avrit, Witness No. 10.

4          MR. McGAVIN:  As to Mr. Avrit, again, it's a question

5    of foundation, Your Honor.  He may certainly qualify in his

6    field, but there are a number of issues regarding foundation

7    that I submit are for the Court, the trial court to address as

8    the evidence is developed.

9          THE COURT:  Okay.  I'll reserve.

10          Dr. Feigenheimer, is he in the same boat?

11          MR. McGAVIN:  Yes.  Although he may have been

12    withdrawn by counsel.  I have to check my notes from the meet

13    and confer.  I knew there was one, and I believe it may be he,

14    but I am not sure, Your Honor.

15          THE COURT:  Do you know, Mr. McKelvey?

16          MR. McKELVEY:  I do not, Judge.  I don't recall that.

17          THE COURT:  All right.

18          MR. McGAVIN:  I could be mistaken on that, Your Honor.

19          THE COURT:  I'll reserve on that.

20          MR. McGAVIN:  Ms. Chinniry, Your Honor, is new.  She

21    is now listed.  I believe it must be either her father or her

22    husband is deceased, and she has now been offered to testify.

23    It's been suggested that she is still treating, meaning Mrs.

24    Haysbert is treating with Ms. Chinniry.  I have no such records.

25    And very few, maybe three or four, office visits with the

1  deceased Dr. Chinnery.  So she is a treating physician, but I

2  have no record from her to my knowledge, and this substitution

3  has just occurred over the last week.

4          THE COURT:  Mr. McKelvey?

5          MR. McKELVEY:  Judge, I think Mr. McGavin has stated

6  the factual situation pretty straightforward.  I mean, it's a

7  treating doctor.  My understanding, the one passed away and this

8  person has taken over the practice.  So there is a substitution

9  there.  Obviously we can't, you know, do anything about the fact

10  that they are deceased but, you know, I think the goal here was

11  just to simply put the next most-qualified person in that

12  organization into the place of the person we planned to use

13  before.

14          THE COURT:  Do you know, has Dr. Debra Chinnery ever

15  treated --

16          MR. McKELVEY:  I don't know.

17          THE COURT:  -- Ms. Haysbert?

18          MR. McKELVEY:  I don't know at this moment, Your

19  Honor.  I would submit to the Court that it could be -- I mean,

20  my proposal would be that maybe the Court reserve on this, and

21  if the foundation can be laid during the voir dire portion of

22  that doctor, then it would obviously, that would be conveniently

23  dealt with at that time.

24          MR. McGAVIN:  I don't have a problem with that, Your

25  Honor, but if there are records from Dr. Chinnery's office

1   beyond what I believe are just three or four visits, maybe a bit

2   more, then they should be produced and supplemented.  There has

3   been no supplementation, and the representation was made that

4   Dr. Haysbert, Mrs. Haysbert is still treating with, under active

5   treatment.  That is a surprise to me.

6            MR. McKELVEY:  We're happy to do our best to try to

7   get them to him.  There's no problem with that.  As long as we

8   can get them.  I mean...

9            THE COURT:  I'm going reserve on Dr. Chinniry then for

10  the trial until you all sort that out.  Obviously if there's

11  supplementation to be done it should have been done yesterday if

12  not earlier, so...

13           MR. McGAVIN:  Your Honor, may I short-circuit the next

14  three?  I think they --

15           THE COURT:  Yes.

16           MR. McGAVIN:  I think they all go to the trial judge

17  to discuss foundation and any objections that will come up,

18  because there is going to be a significant dispute between the

19  parties regarding work capacity and functional capacity based

20  upon Mrs. Haysbert's continued role as provost and chancellor of

21  Hampton University.

22           THE COURT:  All right.  I will reserve on those.

23           Ninevah Haysbert?

24           MR. McGAVIN:  I withdraw that objection, Your Honor.

25           And I know you're making notes, but I'm trying to help

1   expedite before the plea agreement, Your Honor.

2           THE COURT:  Yes.

3           MR. McGAVIN:  The next category are of 11 witness, and

4   I don't have any information who these people are, what they

5   know.  And I assume they're damages witness, but when I took the

6   plaintiff's deposition and asked her to tell me please identify

7   any friends, family or colleagues who can confirm your claims of

8   cognitive deficit or disability she was instructed not to

9   answer, and the only one that she could produce was her

10  daughter, Ninevah.  So I object to any lay witness coming in to

11  confirm damages.

12          In fact, when I issued subpoenas to Hampton University

13  for information and indicated I wanted to subpoena the coworkers

14  of Mrs. Haysbert, counsel filed motions to quash and threatened

15  to sanction me because any effort to discuss with them any claim

16  of brain injury would be futile since none of them knew of it,

17  and Mrs. Haysbert so testified.  So it would be extremely unfair

18  for her to then bring in any damages witnesses to corroborate

19  her claims.  To my knowledge, the only lay witness who will

20  corroborate her claim as identified in this case is Ninevah.

21  And Mr. Haysbert, we won't even be able to say he's the son.

22          THE COURT:  Mr. McKelvey, have these people been

23  disclosed under Rule 26 as required?

24          MR. McKELVEY:  Not to my knowledge, Your Honor.

25          THE COURT:  Do you have any explanation for why they

78

```
 1   haven't been disclosed?

 2            MR. McKELVEY:  As I stand here, I do not.

 3            THE COURT:  All right.  Then I'm going to grant the --

 4   I'm going to sustain the objection as to all of them.

 5            That brings us to the defense witness to whom there

 6   are objections.  There's an objection to an Alicia

 7   E-l-e-f-t-h-e-r-i-o-n.

 8            MR. McKELVEY:  Judge, I think with the, with the

 9   defense counsel's representation that she's going to testify in

10   her individual capacity as well as in the corporate

11   representative for --

12            For Outback?

13            MR. McGAVIN:  Yes, that's correct.

14            MR. McKELVEY:  -- but not Bloomin' Brands.

15            MR. McGAVIN:  No.  I don't believe so.  I have to

16   check the record on that.  I don't believe she was -- may I

17   confer?  Sorry, Judge.  It may help us to resolve this quick.

18   I'm sorry, Your Honor.

19            THE COURT:  That's all right.

20            (Counsel conferred.)

21            MR. McKELVEY:  With counsel's representation that

22   she'll be there individually and in corporate capacity for

23   Outback, and not sure about Bloomin' Brands, as long as we're

24   cleared up on that, we can withdraw that objection.

25            THE COURT:  Let me just note this.
```

1           MR. McKELVEY:  Yes, sir.

2           THE COURT:  Okay.  Thank you.

3           Dr. Pugach and Dr. Huang, Witnesses 4 and 5, I've

4   ruled on the motion *in limine*, so that's clear.

5           Mr. Robinson?

6           MR. McKELVEY:  Judge, can we just reserve that?  I

7   think it's kind of the same issue we keep seeing.  Just reserve

8   it for purposes of foundational evidence once he's actually on

9   the stand?

10          THE COURT:  Yes.  I think that's appropriate.  Thank

11  you.

12          All right.  So that brings us to -- there's no --

13  neither party expects to present substantive evidence by

14  deposition?

15          MR. McKELVEY:  Other than, Judge, I do stand corrected

16  on that.  That one witness that he identified camping, that

17  could be an issue.  But I just found out about that, so it's not

18  in the order, obviously.

19          THE COURT:  We'll have to cross that bridge when we

20  get to it.

21          MR. McKELVEY:  Yes, sir.

22          MR. McGAVIN:  Your Honor, that would be, that would be

23  the witness Nick Seifert that we're referring to.

24          THE COURT:  Understood.

25          You have the triable issues, and then we'll get to

1   other issues to be addressed.  They are, first, subpoenas.  Do

2   you want to address that, Mr. McKelvey?

3          MR. McKELVEY:  Can I confer one more moment, Your

4   Honor?  And I appreciate the Court's indulgence --

5          THE COURT:  You may, yes.

6          MR. McKELVEY:  -- in this.

7          (Counsel conferred.)

8          MR. McKELVEY:  Judge, I think we've worked out the

9   subpoena issue.  We're trying to get some, some -- we're trying

10  to get some folks that at some point worked for Bloomin' Brands

11  or Outback and it looks like Mr. McGavin's going to give us

12  their last known address.  I mean, I think that's all we can

13  really accomplish --

14         THE COURT:  Okay.

15         MR. McKELVEY:  -- with regard -- I mean, at this

16  moment trying to get them here.  He's not planning on producing

17  them and, you know, I don't think the Court's going to indulge a

18  motion to compel them to produce people at this stage.  So I

19  think that's all we can do there.

20         And then the only other thing I really see on here is

21  the courtroom access, and I think the Court covered that in its

22  opening remarks, the process by which we go about doing the IT

23  stuff and everything.

24         THE COURT:  Yes.  And obviously in terms of what you

25  can do in the well of the court during trial, that's going to be

81

```
1   up to Judge Smith.  But I would wager that by and large she's
2   going to want you at the podium and, you know, if there's some
3   specific demonstration that needs to be done you can request
4   permission for that from her.
5              MR. McKELVEY:  That is dentally a strong difference
6   than what I'm used to in state court, Your Honor.
7              THE COURT:  There's just not that much room to move
8   around in this well in any event.
9              MR. McKELVEY:  Understood.  Understood.
10             THE COURT:  All right then.  And then there's a
11  reference to authentication of certain documents, Plaintiff's
12  Exhibits 17 through 30.  What does that refer to on Page 22?
13             MR. McKELVEY:  One moment, Your Honor.
14             MR. McGAVIN:  Your Honor, those are the discovery
15  responses from Outback and Bloomin' Brands.  And I'm not
16  disputing authenticity.  The Court already inquired about that.
17             THE COURT:  Okay.
18             MR. McKELVEY:  17 through 22 I think are the, all the
19  safety things, safety --
20             THE COURT:  Yes.
21             MR. McKELVEY:  -- things that were excluded for
22  purposes -- I think the Court's ruling was it was excluded for
23  purposes of establishing standard of care, but it was reserved
24  on other issues.
25             And so if you're agreeing that to the extent they're
```

1  admitted, they're business records, I think that's all there is

2  to it?

3          MR. McGAVIN:  I'm not disputing authenticity, Your

4  Honor, if that's the question.

5          MR. McKELVEY:  I think that's what it was, Judge.

6          THE COURT:  Okay.

7          MR. McKELVEY:  Whether they come in or not I guess is

8  a question for a different day at this point.  And...

9          THE COURT:  I'm going to note that the defendant has

10  agreed not to dispute authenticity of these documents.

11          MR. McKELVEY:  Thank you, Your Honor.

12          THE COURT:  And gentlemen --

13          MR. McGAVIN:  I apologize, Your Honor, if it's...

14          Please proceed, Your Honor.

15          THE COURT:  It says "Defendants Issues:  Due to

16  receipt of revised pretrial order, plaintiff's failure to

17  provide complete set of premarked -- defendants reserve the

18  right to amend its objections and update this order."  Has that

19  been resolved?

20          MR. McGAVIN:  I believe so, Your Honor.

21          THE COURT:  What I'm going to do is endorse this

22  order.  I'm going to ask each of you to endorse it as well.

23          MR. McGAVIN:  Your Honor, as we're taking care of that

24  housekeeping, would the Court agree to revisit the issue of ask

25  Mr. Haysbert to go and spend some time and then just give me a

1  list and then we can do our meet-and-confer on the discovery?

2  Because --

3      THE COURT:  Truthfully, Mr. McGavin, I think it'll

4  take you -- it shouldn't take you more than 30 minutes this

5  afternoon to just walk through those answers and, you know, he

6  can tell you which ones he wants to use and, you know, you can

7  put it in the exhibit or he can create the new exhibit, and if

8  you object you can note the objection and I'll reserve on it

9  pending trial.  But I don't, I don't see it as being a heavy

10  lift, truthfully.

11      MR. McGAVIN:  Your Honor, respectfully to counsel and

12  to the Court, our 30-minute meetings are frequently much longer,

13  so... just a suggestion.  I am not arguing with the Court.

14  You've ruled.  I will go where you ask.

15      THE COURT:  I do want you to confer.  Trial's about 10

16  days away.  I'd prefer you do it while you're here rather than

17  leaving and then we run into another set of problems.

18      MR. McGAVIN:  Thank Your Honor.

19      THE COURT:  So the only issue then, so I've given

20  certain orders today and I'll probably issue a brief order to

21  memorialize those, but the only question then is sort of this

22  revision of the final pretrial order to reflect the new exhibit

23  numbering.  I'll tell you what:  I don't think you need to

24  submit -- just submit the supplemental pretrial order with the

25  one exhibit pertaining to the interrogatories and all of them,

1  and I'm hoping you can just combine them in one exhibit.  But my

2  rulings are clear.  I don't see any reason to submit a revised

3  final pretrial order as it relates to that.  To the extent you

4  need to renumber the exhibits for your exhibit lists and for

5  your exhibit binders, just do that independently and have those

6  ready for trial.  I don't see any reason to submit another

7  proposed final pretrial order other than the supplemental one

8  that you're going to submit on, I believe I ordered it on

9  Monday, was it?

10           MR. McGAVIN:  No, Your Honor, that -- we don't have a

11 deadline on when that has to be produced.  There's some

12 supplemental information that each side must produce by Monday

13 at noon.

14           THE COURT:  All right.  So I'll give you until

15 Wednesday.  Is that sufficient time to submit that supplemental

16 final pretrial order?

17           MR. McGAVIN:  Yes, Your Honor.

18           THE COURT:  All right.  And you may email that to

19 chambers as you did before, counsel.  Jointly email that to

20 chambers.  And it's just going to address this additional

21 exhibit, and I will enter it after I receive it, and I'll rule

22 as need be if there are any objections that are outstanding.

23           MR. McGAVIN:  Thank Your Honor.

24           MR. McKELVEY:  Thank you.

25           THE COURT:  All right, gentlemen, is there anything

```
1   further that we need do in this matter today?

2           MR. McKELVEY:  No, sir.

3           MR. McGAVIN:  No.  Thank you, Your Honor.

4           THE COURT:  Then the Court will be in recess.  Thank

5   you.

6           (Whereupon, proceedings concluded at 2:05 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                         *CERTIFICATION*

2

3          *I certify that the foregoing is a true, complete and*

4     *correct transcript of the proceedings held in the above-entitled*

5     *matter.*

6

7              _____

8                    Paul L. McManus, RMR, FCRR

9                         _____

10                              Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25