IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOANN WRIGHT HAYSBERT )
    Plaintiff, )
v. )
   )
BLOOMIN' BRANDS, INC., et al. )      Case No.: 4:20-cv-00121-RBS-RJK
   )
    Defendants. )

## TRIAL BRIEF AS TO THE ADMISSIBILITY OF DR. FILLER

COMES NOW, the Defendants, Bloomin Brands, Inc. and Outback Steakhouse of Florida, LLC, by counsel, and hereby submit their Trial Brief as to the Admissibility of Dr. Filler, and state as follows:

Dr. Filler is limited to the opinions that were designated in his initial disclosure and report. Fed. R. Civ. Pro. 26(a)(2). It is too late, during trial, for Plaintiff to amend her designation of Dr. Filler. *Thomas v. Wash. Indus. Med. Ctr., Inc.*, No. 98-1652, 1999 U.S. App. LEXIS 16771, at *21-23 (4th Cir. July 19, 1999).

Dr. Filler made no opinion as to the causation of Plaintiff's alleged brain damage, just that it is "consistent with the mechanics of the trauma as described." Dr. Filler did not rule out any other possible cause of the alleged brain damage; just that it was consistent with the alleged trauma described as noted in the "INDICATION" section of his report.[1]

Dr. Filler also makes no opinion as to the symptoms Plaintiff suffers as a result of any alleged brain damage. Specifically, as it relates to the Plaintiff, the only thing Dr. Filler notes is that Plaintiff claimed "some loss of consciousness and the onset of neurologic symptoms, a number

---

[1] It should be noted that Dr. Filler's "INDICATION" section is inaccurate in that it states that Plaintiff slipped and fell after "she got up from the table . . . ."

of which have persisted." Then, throughout his report, Dr. Filler opines as to what a person with the brain damage that Dr. Haysbert has might experience as a result of that brain damage. Thus, Dr. Filler has no opinions as to what injuries Plaintiff actually suffers – just what she *may* or *might* suffer: "Overall, these findings demonstrate multiple abnormalities which <u>would be expected</u> to have effects on cognition, emotional behavior and neurologic functions as detailed above. The severity of the abnormalities appreciated in the imaging <u>would be expected</u> to have clinically significant symptoms." This is improper under Rule 702 and under Virginia law. Because of the persuasive nature of expert testimony, experts are required to make opinions with a reasonable degree of certainty. Probabilities and possibilities are not enough. *Vilseck v. Campbell*, 242 Va. 10, 14 (1991) ("In this area of law, we deal in terms of proof with reasonable certainty, of probabilities rather than possibilities."). The Supreme Court of Virginia has rejected expert opinions that "speak[] in terms of impression, feeling, supposition, and suggestion." *Id.* This is because these are "expressions of <u>possibility, not probability</u>." *Id.* (emphasis added).

Dr. Filler does not make any opinions as to causation because he has no foundation to offer any of the above opinions. Dr. Filler never examined Plaintiff, never interviewed her, never reviewed any of her medical records, nor reviewed her deposition testimony. This is evident because if he had reviewed these materials, he would have been required to disclose them in his report pursuant to Federal Rule of Civil Procedure 26(a)(2). Dr. Filler never offered any opinions as to the symptoms that Plaintiff does allegedly suffer for the same reasons – any statements would be purely speculative and lack foundation.

It is well established in Virginia that just because there is an accident and Plaintiff claims she is injured, that is not sufficient – she must prove causation.

> Plaintiff must establish that the accident more probably caused the injuries complained of <u>to the exclusion of other possible causes</u>. *Fitzgerald v. Manning*, 679

2

F.2d 341, 348-49 (4th Cir. 1982). It is not enough that plaintiffs theory of injury might be consistent with the possibility of having been caused by the accident. *Id.* at 349 (citing *Walstad v. Univ. of Minn. Hosps.*, 442 F.2d 634, 639 (8th Cir. 1971)).

*Blanco v. United States*, No. 2:19cv137, 2021 U.S. Dist. LEXIS 263431, at *19 (E.D. Va. July 15, 2021) (emphasis added); *see also Summers v. Syptak*, 293 Va. 606, 615-16 (2017).

In this case, Plaintiff claims a traumatic brain injury with post-concussive syndrome that has resulted in persistent side effects that affect her until this day. Plaintiff has testified that she suffered from forgetfulness, has been forced to retire early, cannot do work 'at the same level' as before, her symptoms are getting worse, and her quality of life is lessened because 'she does not want people to see who she is now.' Plaintiff also testified that subsequent to this slip and fall, she underwent a CT scan and diagnosed with a cerebral aneurysm and has had hypertension for a number of years. There is no indication that Dr. Filler is aware of this CT scan or diagnosis of hypertention. These are not 'simple injuries' and they fall outside the province of the jury.

> [C]ourts distinguish between simple and complex causation, in part by requiring differing levels of expert testimony and degrees of medical certainty in linking alleged injuries with negligent conduct. For simple causation, such as being hit and a bruise developing, lay testimony often suffices to establish causation. *See, e.g., Todt v. Shaw*, 223 Va. 123, 286 S.E.2d 211, 213 (Va. 1982) (soft tissue injuries following a car accident established by lay testimony). In contrast, for complex causation, such as injuries that arise from interrelated medical issues or exacerbation of preexisting conditions, courts often require expert witnesses to opine on causation, to elucidate issues for the jury and to ensure that jurors do not succumb to logical fallacies in determining liability. *See, e.g., Hartwell v. Danek Med., Inc.*, 47 F. Supp. 2d 703, 709-10 (W.D. Va. 1999) ("Where an expert's opinion merely cites a 'cause and effect' relationship, without supporting medical data which can eliminate other causes, it is merely a conclusory opinion.").

*Roop v. Desousa*, No. 3:21cv675 (DJN), 2023 U.S. Dist. LEXIS 40247, at *50-51 (E.D. Va. Mar. 9, 2023) (emphasis added).

Not only can Dr. Filler not offer any opinions as to causation because they were not properly designated, but any opinion would be speculative and lack foundation.

> Expert opinion must be premised upon assumptions that have a sufficient factual basis <u>and take into account all relevant variables</u>.

> Expert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible. Failure of the trial court to strike such testimony upon a motion timely made is error subject to reversal on appeal. Furthermore, expert testimony is inadmissible if the expert fails to consider all the variables that bear upon the inferences to be deduced from the facts observed.

*Hyundai Motor Co. v. Duncan*, 289 Va. 147, 155 (2015) (emphasis added). As stated above, Dr. Filler has not reviewed any medical records, has never interviewed Dr. Haysbert to take a history and physical, and never reviewed Plaintiff's deposition. If Dr. Filler had reviewed these records, Dr. Filler would have been required to disclose these records in his report or designation. Fed. R. Civ. P. 26(a)(2) ("The report <u>must </u>contain . . . a complete statement of all opinions the witness will express and the <u>basis and reasons for them</u> [and] <u>the facts or data considered by the witness</u> in forming them . . . .") (emphases added).

Not only does Dr. Filler not have a factual basis to make any opinion as to causation, Dr. Filler also did not rule out any other causes of Plaintiff's alleged brain damage and so any opinion would be impermissible *ipsi dixit*. While the Fourth Circuit does allow an expert to make opinions based on a differential diagnosis, however, "[a] reliable differential diagnosis typically, though not invariably, 'is performed after physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests.'" *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200-01 (4th Cir. 2001) (finding expert's opinion was a "wholly conclusory finding based upon his subjective beliefs rather than any valid scientific method."). Dr. Filler did none of these things. In fact, Dr. Filler did not make an opinion based on a differential diagnosis at all because he did not 'rule anything out;' *id.*, he merely stated that Plaintiff's imaging "are consistent with the mechanics of the trauma as described.

Plaintiff and Dr. Filler similarly cannot rely upon temporal proximity.

4

Indeed, there is a name for the logical fallacy that assumes a causal relationship from a merely sequential one: "*post hoc ergo propter hoc*," which is Latin for "after this, therefore because of this." Black's Law Dictionary 1285 (9th ed. 2009). To illustrate, one might erroneously reason that since a rooster crows each day at sunrise, the rooster causes the sun to rise.

*Summers v. Syptak*, 293 Va. 606, 615-16 (2017).

Dr. Filler was required to <u>exclude</u> other possible causes of the white matter disease he sees on Plaintiff's DTI imaging. Defendants' experts intend to testify as to other causes, such as Plaintiff's hypertension and aneurysms. Plaintiff additionally recognized in her case in chief that she had a pre-existing diagnosis of hypertension and received a diagnosis of aneurysms after this slip and fall. An expert is required to explain exactly what damage was allegedly caused by this slip and fall.

In conclusion, expert testimony as to causation is required. Dr. Filler was not properly designated the to testify as to causation. Dr. Filler cannot now amend his designation to discuss causation because it is too late and any such opinion would be speculative. Thus, Dr. Filler's testimony would lack relevance because it only explains to the jury what a single diagnostic imaging showed, but cannot tell the jury what caused any alleged damage or any symptoms Plaintiff allegedly suffers as a result. Therefore, Defendants request that Dr. Filler be excluded from testifying.

**BLOOMIN' BRANDS, INC.**
**and OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**
By Counsel


McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555


  /s/ *Emily K. Blake*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August, 2023, a true and accurate copy of the foregoing was sent via the CM/ECF system to:

David A. McKelvey, Esq.
Crandall & Katt
366 Elm Ave, SW
Roanoke, Virginia 24016
dmckelvey@crandalllaw.com

Nazareth M. Haysbert, Esquire
James L. Moultrie, III, Esquire
4640 Admiralty Way, Suite 500
Marina Del Ray, CA 90292
nazareth@hmlaw.la

*Counsel for Plaintiff*

   /s/ *Emily K. Blake*
Emily K. Blake, VSB 90562