UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| **JOANN WRIGHT HAYSBERT**, | ) |
| Plaintiff, | ) Case No.: 4:20-cv-00121-RBS-DEM |
| v. | ) |
| **BLOOMIN' BRANDS, INC., et al.** | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' TRIAL BRIEF [DKT. NO. 294] REGARDING THE ADMISSIBILITY OF DR. AARON FILLER**

COMES NOW, Plaintiff, JoAnn Wright Haysbert, by counsel, and hereby submits her Response to Defendants' Trial Brief as to the Admissibility of Dr. Filler, and states as follows:

Plaintiff is not seeking to amend her expert designation.

Dr. Aaron Filler, M.D., Ph.D., FRCS ("Dr. Filler") is permitted to testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case. Fed Rules Evid R 702.

1

Dr. Filler is undoubtedly qualified to provide expert testimony in this matter, as set forth in his Curriculum Vitae, and there is no dispute of that fact.

In this case, Dr. Filler was properly disclosed as an expert witness by manner of Plaintiff's Rule 26(a)(2) Disclosure of Medical Expert Witnesses ("Disclosure"), which attached his Neuroimaging, Neuroradiographic, Diffusion Tensor Imaging Report (CD of scans previously provided to Defendants), Curriculum Vitae and List of Publications and Testimonies, and Fee Schedule/Statement of Compensation thereto ("Report"). (*See*, Declaration of Nazareth M. Haybert ("Haysbert Dec."), ¶ 2, Exhibit A.)

Contrary to Defendants' claim, Dr. Filler provides several findings resulting from the trauma suffered by Plaintiff, which is the subject of this case, in his Report at "FINDINGS":

- Bilateral losses in the frontal lobes affecting particularly the area of the superior, middle and inferior frontal gyri with expected effects on multistep planning, map-based planning and emotional control release functions.

- There are losses on the left side in the parietal lobe extending into the area of the angular gyrus with expected effects of impairment of word finding and calculation ability.

- Losses are appreciated bilaterally in the arcuate fasciculus which would be expected to have effects on conversation such as impairment of prosody or flow of speech as to the right side and more complex variety of conversational speech impairments associated with the left side abnormality.

- There are losses in the area of the mid-portion of the corpus callosum which is indicative of diffuse axonal injury that may affect cognition more generally.

- There are losses bilaterally in the supra-callosal cingulum with expected effects of increased anxiety and depression.

- Losses appreciated in the right crus of the fornix and the left pillar of the fornix on detailed formal tractographic evaluation of the fornix and the limbic system reveal abnormalities which will have the expected effects of impairment of new memory formation.
- Overall, these findings demonstrate multiple abnormalities with expected effects on cognition, emotional behavior and neurologic functions as identified above.

Dr. Filler then took the stand and testified at trial regarding the causal connection between Plaintiff's fall and her resulting injuries.

As Dr. Filler informed the Court, his opinions were made with a reasonable degree of medical certainty. (*See* Haysbert Dec. ¶ 3, Exhibit B, at page 21, line 25 - page 22, line 3.) Specifically, it is his opinion, "to a reasonable degree of medical certainty that Dr. Haysbert suffered a traumatic brain injury in this case." (*Id.* at page 25, lines 1-3). It is also his opinion, "that Dr. Haysbert suffered this traumatic brain injury from a sudden impact consistent with the fall." (*Id.* at page 25, lines 5-13.).

Defendants argue that Dr. Filler's opinion is insufficient as it does not rule out any other possible cause of the alleged brain damage. On the contrary, Dr. Filler's testified at trial as follows:

**Page 25, line 8 – 24**

A. Yes. As I said, the type of fornix injury she has, if you look at the picture, you may form the same opinion, but you're not used to looking at these, is what I call, as I said before, pathognomonic, meaning this comes from a lateral impact trauma, and there is nothing else that will cause exactly that, why that spot.

Q. So it couldn't come from old age?

A. It did not come from old age.

3

Q. And it couldn't have come from some type of just gradual process over time?

A. No, because it's so focal, and the fornix looks great on either side of it. Q. So it was like a shearing process, like something –Abrupt lateral movement of the fornix in the ventricle so that it causes this traumatic bruising injury at the point where it's, fixated by the whole mass of the brain, so right at that transition point.

**Page 69, line 6 – Page 70, line 12**

Q. Going back to the fornix, you said on both sides it appears to be stable. Is that what you -- A. Yeah. Coming into that area of breach and going out of it, it seems okay, but right at the point of transition, it's got this breach in it there that we're pointing out with the arrow.

Q. Let me ask you specific questions about this breach that's pointing out at the arrow. Is this kind of breach something that someone would have because of old age?

A. No.

Q. Is this kind of breach someone would have because they have dizziness?

A. No.

Q. Vertigo?

A. No.

Q. Headaches?

A. No.

Q. This type of injury is a physical injury to the brain, correct?

A. Yes

**Page 77, line 18 – Page 79, line 18**

BY MR. HAYSBERT: Q. What we can also understand from this image is we can rule some things out, Doctor. You are a neurosurgeon, correct?

4

A. Yes.

Q. You can rule out vertigo from this image?

A. This doesn't show vertigo. It doesn't show a brain hemorrhage. There is no emergency surgery needed. I can tell what's likely to happen, maybe what medicines might help, what treatments we now have, and also say it looks traumatic, that it doesn't look like someone is getting memory problems or diffuse brain problems from old age. This looks like trauma, and if this started with that fall, and the indication for which this test was ordered, then it's my opinion that this indication that caused this concussive syndrome to get an MRI matches this image finding. And that's how doctors will do. That's how we do it.

Q. Do you make that opinion to a reasonable degree of medical certainty?

MR. McGAVIN: Objection, Your Honor.

BY MR. HAYSBERT: Q. You can make that opinion to a reasonable degree of medical certainty. You're a doctor, right? I'm sorry?

THE COURT: Go ahead and ask it. I'll let you cross-examine on the report.

MR. HAYSBERT: Thank you.

BY MR. HAYSBERT: Q. Do you make that opinion to a reasonable degree of medical certainty in this case?

A. Yes. In my experience and training, which I should rely on, is that with that history given to me by the doctor who ordered the test, this finding that, to a reasonable degree of medical certainty, that fall caused the image or concussion, is the cause of this damage, and this will explain the concussive symptom. \

Q. This is objective evidence of damage, correct?

A. Yes. It's an objective finding that links history to symptom and the image finding.

5

> Q. And this type of evidence is something that may not ever be picked up on a CT scan or MRI scan, correct?
>
> A. Right. And it is how doctors do. You don't send a patient down to the radiologist saying, I'm not going to tell you what's wrong with him, image the whole body and see what you find. We don't do that because it won't result in useful information.
>
> Q. And you can tell by the exact physical injury that you see in that brain, that you cannot detect with the visible eye, you can tell that that exact physical impairment goes directly to memory loss, correct?
>
> A. Yes.

Defendants provide no legal basis for the claim that Dr. Filler's testimony should be excluded because he does not provide certain magic words within his Report. Dr. Filler provided testimony as to causation at trial. Defendants had the opportunity to cross-examine Dr. Filler on his opinion and seek further clarification as to the basis of this opinion and whether he was able to rule out any other possible causes.

Defendants' reliance on the case of *Vilseck v. Campbell* (1991) 242 Va. 10, is misplaced. In that case, Plaintiff provided no evidence to establish a causal connection between the accident and the development and removal of the tumor because Plaintiff, who is a physician, "did not say during his testimony that the accident caused the tumor, and **not one of the physicians he consulted took the stand and testified there was a causal connection**." (emphasis added.) *Id*. at 14.

Here, however, Dr. Filler did take the stand and testify at trial regarding the causal connection between Plaintiff's fall and her resulting injuries.

As Dr. Filler informed the Court, his opinions were made with a reasonable degree of medical certainty. (*See* Haysbert Dec. ¶ 3, Exhibit B, at page 21, line 25- page 22, line 3.) Specifically, it is his opinion, "to a reasonable degree of medical certainty that Dr. Haysbert suffered a traumatic brain injury in this case." (*Id.* at page 25, lines 1-3) It is also his opinion, "that Dr. Haysbert suffered this traumatic brain injury from a sudden impact consistent with the fall." (*Id.* at page 25, lines 5-13.)

As Dr. Filler further testified before the jury, "In my experience and training, which I should rely on, is that with that history given to me by the doctor who ordered the test, this finding that, to a reasonable degree of medical certainty, that fall caused the image or concussion, is the cause of this damage, and this will explain the concussive symptom… It's an objective finding that links history to symptom and the image finding." (*Id*. at page 78, line 21- page 79, line 6.)

Furthermore, Plaintiff's Disclosure and Report were served on Defendants in June 2021. Pursuant to FRCP Rule 26(a)(4)(A), "A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conduced only after the report is provided." Here, Dr. Filler's report was provided more than *three years ago*. Defendants have had plenty of reasonable opportunity to depose Dr. Filler once his Designation and Report were disclosed. Instead, Defendants *chose* not to depose Dr. Filler, preferring to simply cross-examine him at trial and attempt to reveal any omissions in his report.

Furthermore, as the Court already pointed out to counsel for Defendants, specifically regarding causation, "My ruling is that you are certainly able, and I said earlier, to cross-examine Dr. Filler, and you can bring up all of these points on cross-examination." (*See* Haysbert Dec. ¶ 3, Exhibit B, at page 39, line 19- page 40, line 2.)

7

Defendants also misunderstand the foundation for Dr. Filler's opinions. It is unnecessary for Dr. Filler to physically examine Plaintiff since the injuries he examines are not visible from a physical examination. As set forth in his report, Dr. Filler relies upon an MRI of the brain with diffusion tensor imaging ("DTI") methods to demonstrate the detailed anatomy of the brain with supplemental analysis through evaluation of fractional anisotrophy and diffusion tensor imaging tractography. Again, Defendants had the opportunity to cross-examine Dr. Filler on the foundation of his opinions in order to clarify his methods if they so required in order to understand them.

Accordingly, Dr. Filler's Disclosure and Report are sufficient for him to provide expert testimony in this matter related to his findings of Plaintiff's symptoms and causation related to the incident which is the basis of this case. Even if the Court were to find that Plaintiff failed to provide the requisite disclosures, Defendants have failed to demonstrate any prejudice or surprise, the extent to which the testimony would disrupt the trial or would be considered bad faith and cannot now do so. *Woodworker's Supply, Inc.*, supra at 993. Rather, Defendants have not demonstrated a reasonable and good faith basis for their request that Dr. Filler be precluded from testifying, or that his opinions be excluded, as they have attempted to manufacture this situation by choosing not to take the deposition of Dr. Filler, where they could have asked him to clarify his opinions in advance of trial. As such, Dr. Filler's expert testimony should not be excluded from trial.

DATED: August 13, 2023                                 **CRANDALL & KATT**

By: /s/ D. Adam McKelvey, Esq.
D. Adam McKelvey, Esq. (75174)
CRANDALL & KATT
366 Elm Avenue, SW
Roanoke, VA 24016
Telephone: (540) 342-2000
Facsimile: (540) 345-3527
dmckelvey@crandalllaw.com

*Attorneys for Plaintiff JoAnn Wright Haysbert*

8

DATED: August 13, 2023               **HAYSBERT | MOULTRIE, LLP**
                                                 Nazareth M. Haysbert [CA SBN 294431]
                                                 (admitted pro hac vice)
                                                 nazareth@hmlaw.la
                                                 4640 Admiralty Way, Suite 500
                                                 Marina Del Rey, California 90292
                                                 Tel: (310) 496-5796
                                                         Fax: (310) 760-4083

                                           *Attorneys for Plaintiff JoAnn Wright Haysbert*

# CERTIFICATE OF SERVICE

*JOANN WRIGHT HAYSBERT v. BLOOMIN' BRANDS, INC., et al.,* Case No.: 4:20-cv-00121-RBS-DEM

I hereby certify that on this 12th day of August, 2023, a true and accurate copy of the foregoing was sent via the CM/ECF system to:

John D. McGavin, VSB No. 21794
jmcgavin@bmhjlaw.com
BANCROFT, McGAVIN, HORVATH & JUDGKINS, P.C.
9990 Fairfax Blvd., Suite 400
(703) 385-1000 Telephone
(703) 385-1555 Facsimile
*Counsel for Defendant*

DATED:    August 13, 2023    **CRANDALL & KATT**
By: /s/ D. Adam McKelvey, Esq.
D. Adam McKelvey, Esq. (75174)
366 Elm Avenue, SW
Roanoke, VA 24016
Telephone: (540) 342-2000
Facsimile: (540) 345-3527
dmckelvey@crandalllaw.com

*Attorneys for Plaintiff JoAnn Wright Haysbert*

DATED:    August 13, 2023    NAZARETH M. HAYSBERT, ESQ. [CA SBN 294431] (admitted *pro hac vice*)
nazareth@hmlaw.la
**HAYSBERT | MOULTRIE, LLP**
4640 Admiralty Way, Suite 500
Marina Del Rey, California 90292
Tel:    (310) 496-5796
Fax:    (310) 760-4083

*Attorneys for Plaintiff JoAnn Wright Haysbert*

1