## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

JOANN WRIGHT HAYSBERT,

      **Plaintiff,**

    **v.**                                  **CASE NO. 4:20cv121**

BLOOMIN' BRANDS, INC.,
**and**
OUTBACK STEAKHOUSE OF
FLORIDA, LLC,

      **Defendants.**

### <u>OPINION</u>

Pending before the court on the fifth day of trial in the above-mentioned case were three (3) motions brought by Defendants: (1) an oral Motion to Quash a Witness Subpoena ("Motion to Quash"); (2) an oral Motion to Revoke Plaintiff's Counsel, Nazareth Haysbert's ("Mr. Haysbert"), <u>Pro Hac Vice</u> Status; and (3) an oral Motion for Mistrial, all of which were brought to the court's attention during trial on Friday, August 11, 2023. <u>See</u> ECF No. 307. The motions were taken under advisement, and the parties were ordered to submit briefs to the court containing their arguments and/or responses by 3:00 P.M. on Sunday, August 13, 2023.[1]

---

[1] Also pending was Defendants' Motion to Strike Dr. Filler's testimony on the basis of admissibility, and Plaintiff's Motion to Admit Work Orders as Subsequent Remedial Measures over Defendants' objections. Although these matters were briefed, <u>see</u> ECF Nos. 294, 300, 301, 303, the court did not make any rulings on these issues, and, consequently, these matters are not resolved further herein. <u>See</u> <u>infra</u> Part IV.

After receiving the parties' briefs, see ECF No. 296 (Plaintiff's Opposition to Defendants' Motion for Mistrial); ECF No. 297 (Declaration of Nazareth M. Haysbert Regarding Service of a Trial Subpoena on Marcus Wilson); ECF No. 298 (Defendants' Trial Brief as to Defendants' Motion for Mistrial); ECF No. 299 (Defendants' written Objection and Motion to Quash a Witness Subpoena, served on Marcus Wilson); ECF No. 302 (Defendants' Trial Brief as to Motion to Revoke Pro Hac Vice Status), the court advised the jurors, through the jury clerk's automated call system, not to report to the courthouse on August 14, 2023, which then allowed for the court to address the pending motions that needed to be resolved before continuing with the trial. The court addressed each motion in turn, thereby providing the parties with an opportunity to orally present their arguments and any responses, and issued its rulings from the bench. Ultimately, the Motion to Quash was **GRANTED**, the Motion to Revoke Mr. Haysbert's Pro Hac Vice Status was **GRANTED**, and the Motion for Mistrial was **GRANTED**. ECF No. 308. Therefore, the purpose of this Opinion is to memorialize the court's rulings in writing.[2]

---

[2] At the hearing on Monday, August 14, 2023, the court specifically indicated that a written opinion would follow regarding its oral rulings.

## I. MOTION TO QUASH

The first motion the court addressed at the August 14, 2023, hearing was the Motion to Quash. See ECF No. 299. On August 11, 2023, Mr. Haysbert represented to the court that Marcus Wilson had been served that day with a subpoena commanding that he appear in court as a witness on August 11, 2023, and August 14, 2023. See ECF No. 297 at 17. Records provided to the court demonstrated that Marcus Wilson had not been served by the process server until 5:25 P.M. on August 11, 2023, outside of the court's normal business hours, and certainly not timely as set forth below. Id. at 14.

The court spent a considerable amount of time, both on August 11, 2023, and on August 14, 2023, seeking to understand why the subpoena was served so late in the proceedings, especially considering that the revised trial date was known to all counsel for the parties on March 1, 2023, there had been identical subpoena issues earlier in the week, and Plaintiff deemed Marcus Wilson to be a critical witness. As the record reflects, the court concluded that Plaintiff failed to demonstrate good cause for the late issuance of the subpoena for Marcus Wilson, and **GRANTED** the Motion to Quash because the subpoena was untimely. See E.D. Va. Civ. R. 45(E) ("Except as otherwise ordered by the [c]ourt for good cause shown, subpoenas for attendance of witnesses at hearings or trials in civil actions shall be served not later than fourteen (14) days before the date of the hearing or trial.").

3

## II. MOTION TO REVOKE MR. HAYSBERT'S <u>PRO</u> <u>HAC</u> <u>VICE</u> STATUS

Next the court addressed the Motion to Revoke the <u>Pro</u> <u>Hac</u> <u>Vice</u> Status of Plaintiff's Counsel. The decision to revoke an attorney's <u>pro</u> <u>hac</u> <u>vice</u> status is within the discretion of the trial court. <u>A1 Procurement, LLC v. Thermcor, Inc.</u>, No. 2:15cv15, 2015 WL 13733927, at *3 (E.D. Va. Nov. 18, 2015) (Leonard, J.), <u>report and recommendation adopted in part</u>, No. 2:15cv15, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (Smith, J.); <u>see</u> E.D. Va. Civ. R. 83.1(E)(2) (providing that the court <u>may</u> admit an attorney <u>pro</u> <u>hac</u> <u>vice</u> and explaining that any such attorney is "subject to the Local Rules of the United States District Court for the Eastern District of Virginia and the Federal Rules of Disciplinary Enforcement"); <u>Belue v. Leventhal</u>, 640 F.3d 567, 577-78 (4th Cir. 2011) (indicating that an attorney's <u>pro</u> <u>hac</u> <u>vice</u> status may be revoked after the attorney receives adequate due process); <u>Thomas v. Cassidy</u>, 249 F.2d 91, 92 (4th Cir. 1957 (explaining that permission to appear <u>pro</u> <u>hac</u> <u>vice</u> "is not a right but a privilege"). "Specific grounds for revocation can include unprofessional conduct, violation of the local rules, and a wide variety of ethics violations," as well as "an attorney's impact on judicial economy." <u>A1 Procurement, LLC</u>, 2015 WL 13733927, at *4. "[E]ven if there is not one bold ground to revoke an attorney's <u>pro</u> <u>hac</u> <u>vice</u> admission, the [c]ourt has the discretion to revoke an attorney's <u>pro</u> <u>hac</u> <u>vice</u> status based on the combined effect of an attorney's

misconduct and disregard for the Local Rules, so long as the attorney is provided due process." Id.

Although "the amount of process required is hardly onerous," a pro hac vice attorney "must receive notice of the specific grounds for revocation and a meaningful opportunity to respond." Belue, 640 F.3d at 577. Briefs were filed on August 13, 2023, as directed by the court on August 11, 2023.[3] Then, at the August 14, 2023, hearing, Defendants first presented their arguments as to why Mr. Haysbert's pro hac vice status should be revoked, to which Mr. Haysbert responded. Then, the court presented its own reasons for why it was considering revoking Mr. Haysbert's pro hac vice status, to which Mr. Haysbert again had an opportunity to respond.

The court considered both parties' positions, and ultimately found that the cumulative effect of Mr. Haysbert's unprofessional conduct, which included violations of the federal rules, local rules, and court rulings, and his impact on judicial economy, warranted the revocation of his pro hac vice status. Below the court lists several examples of Mr. Haysbert's conduct supporting its decision, all of which were addressed at the August 14, 2023, hearing and are part of the case record of the proceedings.

---

[3] See supra at 1-2.

- Unprofessional Conduct:
  - Slamming papers and making outbursts on two (2) occasions in front of the jury.
  - Issuing a subpoena to his own expert, Dr. Haider, who is located more than one hundred (100) miles from the courthouse, even when Mr. Haysbert knew the subpoena was unenforceable. Mr. Haysbert indicated to the court that he still issued a subpoena to Dr. Haider because, as a non-attorney, she was not familiar with the legal process, and he thought it might encourage and put pressure on her to come to trial.
  - Badgering witnesses through repetitive and combative questioning techniques.
  - Misstating Federal Rule of Evidence 407 ("Rule 407") to the court to support admission of a contested work order exhibit, and also implying that the court itself was violating the Federal Rules of Evidence, if the exhibit was not admitted.
  - Attempting to quickly publish an exhibit (i.e., a work order) to the jury, which had outstanding objections to it and on which the court previously reserved its ruling, and claiming the exhibit was being used for impeachment purposes, even though the seemingly real

purpose was to prove negligence, culpable conduct, or a defect, in violation of Rule 407.

o Purposely misleading the jury (e.g., implying that witness statements were inconsistent when they were not, including by misrepresenting Christopher Robinson's and Alicia Eleftherion's ("Ms. Eleftherion") testimony; suggesting that the restaurant had a camera that could have captured Plaintiff's fall when the camera was only positioned to capture the front entrance/host stand area; and repeating that a work order was "authentic" in front of the jury, even though its admissibility was still under advisement).

o Making conflicting representations and misrepresentations to the court (e.g., telling the court that he reached out to his service processing company at approximately 6:00 A.M. when emails confirmed that such contact was not made until 9:00 A.M. on August 11, 2023, ECF No. 297 at 1; and stating that he was a term law clerk to a district court judge when he served as a judicial intern).

o Speaking over the court, opposing counsel, and witnesses on multiple occasions, even after being warned and reprimanded for this conduct.

7

- o Accusing the court of attempting to "catch" him in something when the court was simply and constantly trying to enforce the federal and local rules of the court to ensure a fair trial.

- Violations of Rules and Rulings:

  - o Intentionally eliciting hearsay testimony and testimony regarding risk management/insurance on multiple occasions, even after the court explained that this was a violation of rules and case law.

  - o Failing to understand and/or follow the Federal Rules of Evidence and related court rulings/instructions (e.g., attempting to admit a brain animation into evidence when no foundation had been laid and outstanding objections had not been ruled upon by the court; and declaring two (2) witnesses, Norman "Chip" Chase and Nick Siefert, as adverse in front of the jury _before_ the witness began to testify, and _after_ the court had instructed that this pronouncement by counsel during Ms. Eleftherion's testimony was improper and not pursuant to the Federal Rules of Evidence and the law).

  - o Failing to issue subpoenas to _multiple_ witnesses at least two (2) weeks in advance of trial, in violation of Local Civil Rule 45(E).

- o Failing to properly and timely redact Dr. Filler's PowerPoint exhibit and provide it to the court and counsel in advance of trial, even though Mr. Haysbert had been ordered by the court to do so at the Supplemental Final Pretrial Conference on August 1, 2023.

- o Swiftly publishing Dr. Filler's PowerPoint exhibit to the jury, knowing it had prejudicial headers and outstanding objections not yet addressed by the court and not in compliance with the court's redaction order.

- o Failing to lay proper foundations and improperly impeaching witnesses on multiple occasions, despite court rulings and explanations to the contrary. The court repeatedly had to instruct on the process for using deposition testimony to impeach or refresh the recollection of witnesses, and the difference between the two processes, which also delayed the trial proceedings.

- Negative Impact on Judicial Economy:

  - o Failing to come prepared as required with paper copies of necessary documents, including at the Supplemental

Final Pretrial Conference on August 1, 2023,[4] and during trial itself, which led to two (2) trial delays of at least, or more than, forty-five (45) minutes each.

- o Filing last-minute motions and other filings, including witness subpoenas and a motion to have Dr. Haider testify remotely by Zoom, see ECF Nos. 274, 275 (filed at 10:01 P.M. the Sunday before trial).[5]

- o Scheduling a delivery for August 8, 2023, the morning the trial was to start, to Defendants at their counsel's Fairfax, Virginia office, which delivery

---

[4] For the August 1, 2023, Supplemental Final Pretrial Conference, counsel arrived at the court with all documents on computers contrary to specific instructions and requirements of the court. He had not even submitted an electronic device authorization form for this purpose, which is required and available on the court's website.

[5] Pursuant to the court's website, parties requesting remote participation of outside parties in court proceedings "must attain written authorization from the trial judge **two business weeks** in advance prior to using the [c]ourt's video conference system." United States District Court, Eastern District of Virginia, Evidence Presentation System, https://www.vaed.uscourts.gov/evidence-presentation-system. Moreover, Rule 43 of the Federal Rules of Civil Procedure requires that witness testimony "be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." The motion to have Dr. Haider testify by Zoom was apparently first mentioned on Friday, August 4, 2023, at a settlement conference before Magistrate Judge Douglas E. Miller, but it was not brought before the undersigned trial judge until Sunday, August 6, 2023, in the 10:01 P.M. filing.

contained Plaintiff's updated final trial exhibit binder. Mr. Haysbert represented otherwise to the court, despite the Federal Express receipt and tracking record to the contrary, see ECF No. 313-2 (Court Exhibits 1 and 2 from August 8, 2023), thereby causing delay to the proceedings to sort out the matter, as well as to defense counsel who were delayed in their review of Plaintiff's updated exhibits.[6]

o Making improper and/or frivolous objections on multiple occasions, including his claim that a question was compound when it simply was not.

o Repeating questions that had already been asked and answered on multiple occasions. The repetitions were so numerous that defense counsel and the court stopped raising the objection, just to keep the trial moving forward, as trial had only been scheduled to last for three (3) to four (4) days.[7]

In sum, the court **GRANTED** Defendants' Motion to Revoke Mr. Haysbert's Pro Hac Vice Status based on the combined effect of Mr. Haysbert's misconduct, rules violations, and impact on judicial

---

[6] The court also notes that defense counsel's law firm then had to ship the package containing the updated exhibits from Fairfax to Norfolk on the day that trial was scheduled to start.

[7] See infra note 19 and accompanying text.

economy, which is clearly illustrated by the concerns listed in this Opinion, the record, and addressed from the bench on August 14, 2023. See, e.g., A1 Procurement, LLC, 2015 WL 13733927, at *4.

### III. MOTION FOR MISTRIAL

Lastly, the court addressed Defendants' Motion for Mistrial. As the court stated at the August 14, 2023, hearing, the court recognizes that declaring a mistrial is an extreme measure. That being said, "because the trial judge can best evaluate the atmosphere of the trial and the possibility of prejudice," it is within the court's discretion to determine whether an error in a case can be cured by a cautionary instruction. Riddle v. Exxon Transp. Co., 563 F.2d 1103, 1108-09 (4th Cir. 1997). Unless the exercise of such discretion is clearly erroneous, the decision of the trial judge will not be disturbed. Bright v. Coastal Lumber Co., 962 F.2d 365, 370 (4th Cir. 1992) (internal citation and quotation marks omitted). In short, the court is of the belief that this case has become completely infected by the cumulation of misrepresentations, rules violations, "red herrings," and other misconduct by Plaintiff's counsel, and, the prejudice that presently exists cannot be cured by a cautionary instruction.

### A.

First, the court turns to the repeated, and intentional, injections by Mr. Haysbert of insurance/risk management and an improper standard of care in this negligence suit. "'The rule in

Virginia is that in an action to recover damages for personal injuries, the admission of evidence or argument of counsel <u>deliberately</u> injected into a case to inform the jury that a defendant is insured against the accident is reversible error.'" ECF No. 298 at 1 (quoting <u>Hope Windows, Inc. v. Snyder</u>, 208 Va. 489, 493 (1968)) (emphasis added). Moreover, "a court is required to grant a new trial, if requested, when the prejudicial effect of an improper remark or question is overwhelming, such that it cannot be cured by a cautionary instruction." <u>Lowe v. Cunningham</u>, 268 Va. 268, 273 (2004) (internal citation omitted). That is because "a mistrial . . . should be ordered . . . [when] there has been interference with a fair trial." <u>Riner v. Commonwealth</u>, 268 Va. 296, 315-16 (2004).[8]

This issue first arose during Ms. Eleftherion's testimony on August 11, 2021, where Plaintiff used the word "ensure" in a question even after an objection had been sustained. The relevant testimony, Tr. at 8-9,[9] is as follows:

---

[8] The parties agree that Virginia law applies in this case, meaning that Virginia case law addressing a party's injection of insurance into a negligence suit governs the court's analysis of this issue.

[9] The page numbers cited by the court in this portion of the Opinion correspond to the page numbers of the transcript of Ms. Eleftherion's testimony, which was provided by the court reporter to counsel, at counsel's request. These page numbers will likely change when the full trial transcript is filed by the court reporter.

Plaintiff's Counsel: Okay. You were to ensure there was no grease, cleaning solution, water, soda, Coke left on the floors unattended in the dining room, correct?

Defendants' Counsel: Objection, Your Honor. The use of the term "ensure." There is no -- the law does not require --

Plaintiff's Counsel: Oversee. Oversee. I was saying oversee.

Defendants' Counsel: May I just --

Plaintiff's Counsel: Sure. Of course.

Defendants' Counsel: Thank you. <u>I object to the use of "ensure." It's not the law</u> (emphasis added).

Court: <u>Rephrase your question, please</u> (emphasis added).

Plaintiff's Counsel: <u>Will do, Your Honor</u> (emphasis added). It's your responsibility [] to make sure that wet floor signs were put out when needed, correct?

Witness: Yes. I had direct oversight of all those things.

Plaintiff's Counsel: <u>And your job was to ensure that mats were put down when needed, correct</u> (emphasis added)?

Court: <u>Do not use the word "ensure"</u> (emphasis added).

Plaintiff's Counsel: <u>I will never use the word "ensure" again</u> (emphasis added).[10]

Then, only but a minute later, Mr. Haysbert's line of questioning to the same witness led directly to testimony regarding insurance, Tr. at 10-11:[11]

---

[10] The court emphasizes this exchange to highlight the intentional injection of the insurance issue again in this case. See <u>infra</u> note 12 and accompanying text.

[11] See <u>supra</u> note 9 and accompanying text.

Plaintiff's Counsel: So would part of that overseeing responsibility include following up [on] an injured person who had slipped and fallen on the floors?

Witness: It was not, no.

Plaintiff's Counsel: I'm sorry?

Witness: No, that was not part of my responsibilities at the time.

Plaintiff's Counsel: Whose responsibility was it at the time that you were the manager of the Outback Steakhouse in Chesapeake to follow up with an injured person who had slipped and fallen?

Witness: Correct. If our insurance provider at that time was involved, we had an insurance liaison who would follow up with that person.

Defendants' Counsel: Objection, Your Honor.

Court: Sustained.

Plaintiff's Counsel: It's only been said. I don't have a question pending.

Court: Insurance is not an issue at all in this case.

Plaintiff's Counsel: So I'm only asking you what you would do in your personal knowledge. Okay. So let's leave insurance out of it. And although insurance [is] within your personal knowledge, we are leaving insurance out of it (emphasis added).[12]

---

[12] The court emphasizes this statement, where Mr. Haysbert uttered "insurance" three (3) times before the jury, after the court had sustained the objection, and after he knew, or should have known, from discovery and the law, as well as from the court's previous ruling on the issue of "ensure," that the question would likely result in a problematic response. Moreover, the court found this statement to be particularly harmful and intentional given that Mr. Haysbert included that insurance was within Ms. Eleftherion's personal knowledge, but "we are leaving insurance out of it." See Tr. at 11.

Court: Mr. Haysbert, please, follow the court's rulings.

Plaintiff's Counsel: Yes, ma'am.

Defendants' Counsel: Your Honor, I have a motion.

The court then excused Ms. Eleftherion and the jurors to discuss the oral Motion for Mistrial and spent a considerable amount of time explaining to Mr. Haysbert the issue with his injecting insurance and an improper standard of care into the case.[13] However, once the court returned from recess, Mr. Haysbert posed a nearly identical question to Ms. Eleftherion which, unsurprisingly, led to a nearly identical response, Tr. at 36-37:[14]

> Plaintiff's Counsel: Okay. If a person was injured in the dining room through a slip and fall, whose responsibility is it to follow up with that person at Chesapeake Outback Steakhouse, at the Chesapeake Outback Steakhouse, if anyone?
>
> Defendants' Counsel: Objection, Your Honor. Object to the form, relevance (emphasis added).
>
> Court: Let's see. I hope this doesn't go astray (emphasis added).
>
> Plaintiff's Counsel: It won't. I promise you (emphasis added).
>
> Witness: There is protocol to follow, any type of incident, whether it's slip and fall or different incident regarding to a guest or somebody who works there, we have to call that into our insurance group (emphasis added).
>
> Defendants' Counsel: Objection, Your Honor.

---

[13] See supra note 12 and accompanying text.

[14] See supra note 9 and accompanying text.

Court: You'd asked that question before, and that's the answer you got. There has been an objection to it, and the court specifically said there is no insurance in this case, should be no mention of it and no insurance issue. That's the question you asked before that got the same answer.

Plaintiff's Counsel: I said at the Chesapeake Outback Steakhouse, is what I said.

Court: Whatever. It elicited it. It is along the same lines, and it has now elicited the same response.

Defendants' Counsel: Your Honor, I renew the motion I previously made.

Court: I completely strike that question and that answer at this juncture because it's not part of the case. It's improper under the law for it to even be mentioned. I thought you heard that, too, but you didn't as a witness hear that?

Witness: Yes, ma'am. I heard you.[15]

Plaintiff's Counsel: If I [may] move on. Thank you, Your Honor, and thank you, M[s]. Eleftherion.

Then, when Norman "Chip" Chase took the stand as a witness later in the day, Mr. Haysbert _again_ asked a question that he knew, or should have known, would have injected insurance into the case, Tr. at 6–7:[16]

---

[15] The court recognizes that a lay witness, such as Ms. Eleftherion, takes her responsibility seriously to answer the questions truthfully under oath. Mr. Haysbert should never have asked this question again knowing the answer and with the outstanding objections and warnings from the court. This is yet another example of repeated questions in basically the same form, as he did with many of the witnesses.

[16] The page numbers cited by the court in this portion of the Opinion correspond to the page numbers of the transcript of Mr. Chase's testimony, which was provided by the court reporter to the

> Plaintiff's Counsel: Mr. Chase, what were you responsible for as the number one person and managing partner at the Chesapeake Outback during your tenure?
>
> Witness: Operations of the front and back of the house, staffing, confirming scheduling, hiring, maintaining the facility.
>
> Plaintiff's Counsel: And that would include restaurant safety, correct?
>
> Witness: Yes.
>
> Plaintiff's Counsel: That would also include overseeing guest liability, correct?
>
> Defendants' Counsel: Objection, Your Honor.
>
> Plaintiff's Counsel: When I say that I mean --
>
> Defendants' Counsel: Excuse me. I must object. We are going down the same road that I had previously brought up regarding guest liability. I object (emphasis added).
>
> Plaintiff's Counsel: I withdraw the question (emphasis added).[17]

Given the repetitive nature of these lines of questioning which Mr. Haysbert knew, or at least should have known based on depositions and discovery in this case, see ECF Nos. 298-1, 298-2, 298-3, 298-4, would inevitably lead to responses relating to Defendants' risk management/insurance, the court found this to be a deliberate injection of insurance into the case. See

---

court, at the court's request. These page numbers will likely change when the full trial transcript is filed by the court reporter.

[17] See supra note 15 and accompanying text.

<u>Hope Windows, Inc.</u>, 208 Va. at 493. Therefore, it is the court's opinion that this issue alone is grounds for a mistrial.

B.

However, the above ground is not the only concern of prejudice before the court. Again, the court underscores the cumulation of misconduct that has occurred and recognizes its duty to look at the proceedings as a whole. <u>See</u> <u>Riddle</u>, 563 F.2d at 1108-09. Without repeating the many reasons that supported granting the Motion to Revoke Mr. Haysbert's <u>Pro</u> <u>Hac</u> <u>Vice</u> Status, <u>see</u> <u>supra</u> Part II, many of these reasons also support declaring a mistrial, and the court incorporates those reasons herein. Reasons include, <u>inter</u> <u>alia</u>, Mr. Haysbert's failure to follow the rules and the rulings of the court, his outbursts before the jury, his intentional lines of questioning that injected insurance into the case, his backdoor attempts to introduce evidence that was not yet admitted or ruled upon (including the work orders and brain animation), his blatant mischaracterization of witness testimony, and his improper impeachments, all of which have, no doubt, had a prejudicial effect on the jury and cannot be cured by any type of curative instruction. In the court's opinion, the whole atmosphere of this trial had become infected.

Moreover, in the court's opinion, allowing Plaintiff's local counsel, David Adam McKelvey ("Mr. McKelvey"), to proceed without Mr. Haysbert at this juncture would be extremely prejudicial to

19

Plaintiff. Mr. McKelvey did not examine a single witness, rarely was able to answer questions posed by the court regarding the case, and allowed numerous rules violations to occur before the court, apparently without counsel to Mr. Haysbert. In addition, Mr. Haysbert referred to himself as "lead counsel," he sat in the lead counsel chair at the counsel table for Plaintiff, and he conducted the trial before the jury. His sudden absence from the trial would inevitably cause much speculation among members of the jury, which was also a major concern to the court. Such speculation is not appropriate in a jury trial.

### C.

Although the court constantly endeavored to keep this case on track and made multiple attempts to diligently control it, even before trial began, the court is of the opinion that this case has become so infected that a fair trial cannot proceed. It is the cumulation of problems, explained both on the record and reiterated in this Opinion, that has thwarted fairness for all those involved, such that no curative instructions could overcome the prejudice that exists. Succinctly put, the court is of the opinion that the process of trial has been abused and a fair trial in the presence of this jury could not go forward at this juncture.[18] Therefore,

---

[18] The jury returned at 11:00 A.M. on Tuesday, August 15, 2023, and was dismissed in open court on the record. See ECF No. 313.

the court had no choice but to **GRANT** Defendants' Motion for Mistrial.[19]

## IV. CONCLUSION

The Motion to Quash is **GRANTED**, the Motion to Revoke Mr. Haysbert's <u>Pro</u> <u>Hac</u> <u>Vice</u> Status is **GRANTED,** and the Motion for Mistrial is **GRANTED.** Mr. McKelvey remains in the trial as counsel of record.[20] Plaintiff has twenty-one (21) days from the entry of this Opinion to notify the court if a new trial date should be set.[21]

The court further **DIRECTS** that any new trial be reassigned to another judge of this court with a new jury.[22] Moreover, the newly

---

[19] The court notes that when the Motion for Mistrial was granted on August 14, 2023, Plaintiff had not yet rested her case, and Defendants had not put on their defense, even though the proceedings were in the fifth day.

[20] Mr. McKelvey is on notice from the court that as counsel of record and/or local counsel, if a new trial goes forward, he is responsible for being prepared for all incidents of the proceeding as is required of a member of the bar of this court. Although Mr. McKelvey has indicated he is prepared to go forward with trial, he also indicated he would need some time to get "fully up to speed" [paraphrased by the court], and his participation at the first trial, as shown on the record and as addressed herein, also demonstrates just that. The court further notes that, other than his lack of preparedness in his role as local counsel in this case, the court knows of no deficit in his ability to perform in cases as a member of this court's bar. <u>See</u> <u>infra</u> note 21 and accompanying text.

[21] If no notice is provided by Plaintiff through her counsel, then the case will be closed on the court's docket.

[22] <u>See</u> <u>supra</u> note 21 and accompanying text.

assigned judge will be able to determine any outstanding evidentiary issues, including those related to the admissibility of Dr. Filler's testimony and the work orders, as well as any pro hac vice motion(s), if they are made.

The court further **DIRECTS** the Clerk to send a copy of this Opinion to counsel for the parties and to Mr. Haysbert.

**IT IS SO ORDERED.**

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

August  23 , 2023