IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| JOANN WRIGHT HAYSBERT<br>    Plaintiff,<br>v.<br><br>BLOOMIN' BRANDS, INC., et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   Case No.: 4:20-cv-00121-RBS-RJK<br>)<br>) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS AGAINST ATTORNEYS HAYSBERT AND MCKELVEY**

COMES NOW, the Defendants, Bloomin' Brands, Inc. and Outback Steakhouse of Florida, LLC, by counsel, and hereby submit this Memorandum of law in support of its Motion for Sanctions against both Plaintiff's counsel, and state as follows:

**I.      INTRODUCTION**

On August 14, 2023, this court granted defendant's motion for mistrial and motion to revoke the pro hac vice status of attorney Nazareth Haysbert. This extraordinary result was detailed in a Memorandum opinion documenting outrageous and intolerable misconduct by Haysbert. The Court held "the cumulative effect of Mr. Haysbert's unprofessional conduct, which included violations of the federal rules, local rules, and court rulings, and his impact on judicial economy, warranted revocation of his pro hac vice status." (ECF 315 p. 5). The Court then granted a mistrial because Haysbert deliberately injected insurance into these proceedings. The Court also found that the misconduct by Haysbert "infected" the proceedings and had a "prejudicial" effect on the jury. In short, Haysbert violated numerous rules of the court, and his misconduct was so pervasive that the case could no longer be fairly tried to a jury. For this misconduct, sanctions are necessary as the defense incurred large sums of money in legal fees and expenses for experts as a result.

1

Haysbert violated the rules of court repeatedly, deliberately, and his authority to practice in this court was revoked as a result of this intentional misconduct.

David A. McKelvey, Esq. is a licensed attorney and is similarly bound to follow the Local Rules of the Eastern District of Virginia while serving as local counsel for Haysbert. As local counsel, McKelvey is "responsible for being prepared for all incidents of the proceeding," and was not. McKelvey did not participate in the trial, did not notify the Court that Mr. Haysbert had stopped communicating with him, and was not prepared to take over the trial when it became clear that Haysbert was not going to be able to follow the Local Rules or the Rules of Evidence. McKelvey's passive, hands-off approach similarly contributed to the mistrial as it was clear that he was not prepared to take over the plaintiff's case. As the local counsel responsible for these proceedings, McKelvey is also liable for attorney's fees. McKelvey now seeks to withdraw from this case, and should not be permitted to withdraw until this motion is heard and the sanctions award is paid.

## II.   FACTS

This case was scheduled for trial on August 8, 2023, with a jury. Jury selection was delayed until August 9, 2023 due to last minute motions and misconduct by Haysbert as outlined in the court's opinion.

The case came before the court on August 1, 2023 for a Pre-trial. At the Pre-trial, plaintiff's counsel brought no exhibits and was unprepared for the hearing. After the hearing, this Court ordered Plaintiff's counsel to submit Plaintiff's final list of exhibits and copies of the exhibits, including an animation that was proposed as P1 and a PowerPoint that was proposed as P2. Despite the fact that the Court received the animation by Friday August 4, 2023, undersigned counsel did not. Neither the Court nor the defense counsel ever received a copy of the final PowerPoint until

2

trial had already begun. Local counsel took no part in preparing, submitting, or delivering these documents.

On the first day of the trial, the exhibits were not available to the defense. Instead, they were delivered by Federal Express Delivery to defense counsel's office in Fairfax, thereby preventing counsel from reviewing assessing or evaluating the material. Haysbert alleged that he had sent these items in paper form and a thumb drive on Saturday August 5 to Defense Counsel for delivery on Monday August 7. A hearing followed in which the tracking showed the order was set to be delivered on August 8, and this record showed that counsel's assertion was untrue. The FedEx receipt produced by Haysbert did not have a date on it, but it showed that the package was ordered to be delivered on August 8, 2023. This is corroborated by the information provided by the tracking number.

On the day before trial, August 7, Nick Seifert, an Outback employee was served with an untimely subpoena. This subpoena was signed only by Haysbert and not by McKelvey, the responsible attorney. The subpoena called for Seifert to appear in trial on August 9. The defense submitted a motion to quash. The court took that matter up on the first day of trial, and ultimately based on the representations of Haysbert that the witness was critical to Plaintiff's case to 'prove control between Bloomin' Brands and Outback,' required that the improper subpoena be enforced. Then, Seifert was scheduled for testimony on August 9 at 2pm, and was not called until Friday, August 11 in the afternoon.

Haysbert filed a motion on the evening of Sunday August 6, asking the court to grant a motion for the remote testimony of Dr. Huma Haider. That motion required a detailed inquiry by the court to determine when Haysbert knew of Dr. Haider's alleged unavailability and whether actual arrangements had been made for Dr. Haider's appearance. The Court inquired about the

3

flight arrangements for Dr. Haider, her hotel arrangements, fee arrangements, payments in advance, whether they were actually paid, and made. Haysbert also represented that he had 3 other out of state experts, 2 from California and 1 from Florida, that would be appearing in court. The Court ordered affidavits from the experts, confirmation of flight arrangements, and other documentation that Haysbert actually intended to have the witnesses in person. Counsel was ordered to produce the information by 5pm the following day. When the parties met the following morning, Haysbert announced he was withdrawing all of the experts, including Dr. Haider, except for Dr. Filler. No explanation was provided by either Haysbert or McKelvey why these experts were not appearing and no affidavit for Dr. Filler was ever provided. McKelvey signed off on this late motion and is accountable for its filing as well.

Also during the hearing on August 7, the Court and defense counsel learned that Haysbert had issued a subpoena for his own expert "because, as a non-attorney, she was not familiar with the legal process, and he thought it might encourage and put pressure on her to come to trial." McKelvey learned at least by this point that Haysbert was signing subpoenas, in violation of the Local Rules.

Neither Haysbert nor McKelvey issued a subpoena for Marcus Wilson for trial, a witness plaintiff viewed as critical. On August 11 at roughly midday, Wilson was called as a witness and did not respond. Wilson was under subpoena by the defense but was released from the subpoena. Wilson was never recognized by the court. When Wilson was not present, neither Haysbert nor McKelvey revealed that early that morning, Haysbert had issued a subpoena, signed only by Haysbert, and without the knowledge or input of McKelvey, to be served on Wilson. That request was sent to a California process serving company at 6 am PCT, to be served for trial appearance on August 11, the same day. At the conclusion of the plaintiff's case on August 11, at the inquiry

4

of the Court, Haysbert stated that he intended to call Wilson on August 14, and that he had served him. The Court immediately demanded proof, which could not be fully provided except by a status report that was only brought into the court at roughly 7:30pm, while the entire court, attorneys, and staff were forced to wait. It was clear at this point that McKelvey had absolutely no control over Haysbert. The Court ordered that Haysbert produce all documentation for this subpoena on Monday August 14 and Defense moved to quash the subpoena, which was granted.

Haysbert demonstrated improper conduct throughout the trial. The Court frequently turned to McKelvey to answer questions and on each occasion McKelvey apparently was not consulted. The Court gave fair notice to local counsel and Haysbert that there were potential serious consequences for this pattern of misconduct, and frequently reminded local counsel that he was "responsible" for the proceedings. McKelvey never sought to withdraw at any point.

On many occasions during trial, Haysbert interrupted the Court, talked over the Court, and counsel, and disrupted the proceedings. On two separate occasions, Haysbert slammed his papers down in anger at the proceedings and yelled out in the courtroom. Haysbert was openly disrespectful to counsel and to the court.

More than once, during his questioning of witnesses, Haysbert mischaracterized a witness's testimony. Haysbert asked the same questions over and over again and cuts off witnesses when they are answering his questions. McKelvey never attempted to take over the questioning of any witness once it because clear that Haysbert could not question a witness without violating the Rules of Evidence.

When Haysbert attempted to back-door Dr. Haider's opinions in through Dr. Filler, McKelvey did not notify the Court that the brain animation had not been created by Dr. Filler. McKelvey was also sitting right next to the trial tech during Dr. Filler's testimony and could have

5

told the trial tech not to publish the PowerPoint to the jury as he also knew it had prejudicial headers and outstanding objections not yet addressed by the Court and not in compliance with the Court's redaction order.

McKelvey has practiced in this Court and knows of its no electronics policy. Despite this, McKelvey did not ensure that paper copies of exhibits were brought to the Supplemental Final Pretrial Conference and to trial, resulting in trial delays.

Haysbert deliberately injected insurance into the proceedings, and this misconduct is fully documented in the court's opinion of August 23, 2023. (ECF 315).

### III.     STANDARD OF LAW

Defendants request sanctions against both Plaintiff's counsel under 28 U.S.C. § 1927 and the inherent power of the Court. Trial courts' award of sanctions are granted substantial deference and it is reviewed under an abuse of discretion standard. *Chaudry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999); *Harshbarger v. Prof'l Evaluation Grp., Inc. (In re Gould)*, 77 F. App'x 155, 161 (4th Cir. 2003) (explaining district court is in the best possession to determine sanctionable conduct).

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. *See* Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif. L. Rev. 264, 268 (1979). Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers.

*Roadway Express v. Piper*, 447 U.S. 752, 766 (1980).

In the alternative, Defendants seek Rule 11 sanctions for Plaintiff's motion to allow Dr. Haider to testify remotely and the subpoenas issued for Nick Seifert and Marcus Wilson. The motion and subpoenas were presented for an "improper purpose, such as to harass, cause

6

unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11. Plaintiff's motion and subpoenas were not "warranted by existing law", nor was there "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Id.* Plaintiff never demonstrated that the factual contentions made in her motion had any evidentiary support as she withdrew the experts prior to filing the affidavits ordered by the Court. There was further no factual support for Plaintiff's decision to wait until the week of trial for witnesses she considered necessary to the prosecution of her case.

> A. **Sanctions under 28 U.S.C. § 1927**

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To award sanctions under this statute, an attorney's bad faith conduct "multiplies the proceedings, resulting in excess costs for the opposing party." *Harshbarger (In re Gould)*, 77 F. App'x at 161. Negligent conduct is not sufficient to warrant sanctions under this statute. *Id.*

This case was only slated to be a four-day jury trial. By the end of four days, Plaintiff had not even rested her case-in-chief. Defense counsel was required to return on Monday with Defendants' experts. Now Plaintiff has requested a new trial and a new trial judge has been assigned. The parties have been ordered to appear at a status conference on September 26, 2023. Thus, Plaintiff counsel's intentional misconduct has multiplied the proceedings in this case, causing two trials.

7

## B. Sanctions under Court's Inherent Powers

Federal courts also have "'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). That includes the "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). "And one permissible sanction is an 'assessment of attorney's fees'—an order. . . instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* (quoting *Chambers*, 501 U.S. at 45); *see also Roadway Express*, 447 U.S. at 766 ("The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes."). Because Defendants seek no more than to shift their attorney's fees and costs caused by Plaintiff's counsel's misconduct, no special "procedural guarantees applicable in criminal cases" are necessary in this case. *Goodyear Tire & Rubber Co.*, 581 U.S. at 108.

It is a but-for test; the Defendants are entitled to the fees and costs they incurred that they would not have incurred but for the attorney's misconduct. *Id.* at 109. The trial court is allowed to "exercise discretion and judgment" and it is not required to "'become green-eyeshade accountants' (or whatever the contemporary equivalent is)." *Id.* at 109-110 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011). "'The essential goal' in shifting fees is 'to do rough justice, not to achieve auditing perfection.'" *Id.* at 110 (quoting *Fox*, 563 U.S. at 838). The trial court's findings, therefore, are "entitled to substantial deference on appeal." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

In some cases, it is appropriate for a "trial court to shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop." *Id.* (citing *Chambers*, 501 U.S. at 51). The Supreme Court has provided the additional following examples:

> If a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award. And similarly, if a court finds that a lawsuit, absent litigation misconduct, would have settled at a specific time—for example, when a party was legally required to disclose evidence fatal to its position—then the court may grant all fees incurred from that moment on. In each of those scenarios, a court escapes the grind of segregating individual expense items (a deposition here, a motion there)—or even categories of such items (again, like expert discovery)—but only because all fees in the litigation, or a phase of it, meet the applicable test: They would not have been incurred except for the misconduct.

*Id.* at 110-111.

Here, Plaintiff's counsel came to trial prepared with a litigation strategy and outlines for witness testimony that they knew would elicit evidence that would violate established Virginia precedent regarding what is admissible evidence, the Rules of Evidence, and the Local Rules. They further knew that McKelvey would not be taking any active role, despite his obligations under the Local Rules. Their intentional misconduct resulted in a mistrial and requires the entire case to be tried again. Thus, this Court is well within its discretion to shift all of Defendants' trial attorneys' fees and costs to Plaintiff's counsel.

  **C.**  **Jurisdiction**

Even though Haysbert is no longer an attorney in this case, this Court still has jurisdiction to consider this motion. "[A] court's power to resolve collateral issues extends beyond its power to resolve the underlying case." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 145 (4th Cir. 2020). "Because sanction proceedings are collateral to the merits of the underlying case, an otherwise

9

proper sanction award may be imposed even if the court lacks jurisdiction to enter a judgment on the merits against the sanctioned party." *Id.*

### IV. LEGAL ANALYSIS

Defendants request their attorneys' fees and costs no later than from August 6, 2023 through August 14, 2023, including the costs of filing this motion. The misconduct began with an untimely motion to allow remote testimony on August 6, which ultimately demonstrated that Haysbert had not made arrangements for his out of state experts to appear in person. When challenged on the proof of preparation, Haysbert withdrew 3 of the experts and never submitted the information ordered by the Court. In short, there was no proof that the experts were even scheduled to appear. Counsel for the defense was forced to brief the motion and prepare for the experts' cross-examination, when, clearly, the experts were not even scheduled to appear in person. Instead, they were withdrawn without explanation. The misconduct continued on August 7 with the untimely subpoena to a witness requiring a separate brief in opposition by defense. Then, incredibly, the pre-trial list of exhibits including demonstratives was sent to undersigned's office in Fairfax, Virginia for delivery on the morning of trial, 4 hours away from the trial. By Friday, August 11, when a subpoena was served on Marcus Wilson after close of business for him to appear on August 11, that same day, and counsel for the defense was forced sit in the courtroom until almost 8 pm for Haysbert to produce proof of service, the prejudice and cost had grown to intolerable levels. It was at that time that counsel moved to revoke the pro hac vice admission of Haysbert, and renewed the motion for mistrial.

Now, plaintiff seeks to have the entire case be re-tried (as Plaintiff has filed a request for a new trial date) and Defendants will have to pay additional attorneys' fees and costs to bring this case to a resolution. This case should have been resolved August 11, 2023. If Plaintiff's counsel's

misconduct had not occurred, the mistrial would not have occurred, and a new trial would not be necessary. Moreover, before resetting this case for trial, the attorney's fees and costs of the defense must be paid.

In *In Re Gould*, the Fourth Circuit considered a trial court's award of defendant's attorneys' fees against plaintiff's counsel pursuant to 28 U.S.C. § 1927. *In re Gould*, 77 F. App'x at 156. Plaintiff's counsel sought to introduce certain alleged falsified medical reports that would 'impeach the credibility' of the corporate defendant. *Id.* at 157. Defendant objected and plaintiff's counsel ultimately agreed to withdraw the medical reports. *Id.* at 158. However, after the ruling, the plaintiff's attorney "asked questions which appeared to elicit testimony regarding the allegedly falsified medical reports, prompting the court to interrupt the questioning." *Id.* After a bench conference, the trial court again ruled that the alleged falsified medical reports were inadmissible. *Id.* at 159. Then, during a cross-examination, plaintiff's counsel once again attempted to ask another witness about the alleged falsified medical reports. *Id.* Defendant objected and moved for mistrial, which the trial court subsequently granted. *Id.* Defendant moved for fees and costs under 28 U.S.C. § 1927. *Id.* at 160.

> The district court found that "plaintiff's counsel recklessly flouted the Court's ruling and multiplied the proceedings by placing inadmissible evidence before the jury after being directed by the court not to do so." The district court further noted that plaintiff's counsel had withdrawn "the same evidence from use in any capacity in the trial during sidebar conferences . . . ." Finally, the district court noted that the conduct of plaintiff's counsel multiplied the proceedings, resulting in excess costs to the [defendant]. Based on these findings, the district court exercised its authority pursuant to 28 U.S.C. § 1927 to grant the [defendant's] motion and ordered both [plaintiff's attorneys] to "pay, in equal proportions, the amount of $ 17,677.86 to Defendant."

*Id.* At the hearing held on the motion, the trial court further found that plaintiff's counsel had acted "vexatiously and unreasonably." *Id.* at 163.

The Fourth Circuit upheld the trial court's award of fees and costs as to one of plaintiff's attorneys.[1] *Id.* at 164. The Fourth Circuit held it was clear that the alleged falsified medical reports were both withdrawn by plaintiff's counsel and excluded by the trial court and that plaintiff's counsel acted "vexatiously and unreasonably." *Id.* at 161-163. Finally, the Fourth Circuit agreed that plaintiff's counsel actions resulted in multiplication of the proceedings or excess cost, as required by 28 U.S.C. § 1927. *Id.* at 163-164. The trial court had awarded the defendants the costs for the third day of trial, as that was the day of the mistrial hearing. *Id.* The Fourth Circuit held that the "attorney's costs incurred by the [defendant] for the mistrial proceedings were in no way related to the merits of its defense and were not expenses that the [defendant] would have incurred absent [plaintiff counsel's] conduct." *Id.* at 164.

Here, Haysbert's intentional misconduct related to his eliciting testimony related to liability insurance which, in part, caused a mistrial in this case. As argued in Defendants' motion for mistrial due to Haysbert's insertion of insurance in this trial, Haysbert knew that by questioning witnesses 'who was responsible for following up with guests after a slip and fall,' he would elicit testimony related to insurance and risk management. Further, Haysbert was reading from typed-out questions. Haysbert (and anyone who helped him draft his direct of these witnesses) planned, in advance, to elicit improper testimony.

Throughout the trial, Haysbert attempted to introduce evidence that had been objected to by defense knowing the Court had not yet ruled on those objections. This included Dr. Filler's PowerPoint, the brain animation, and the work orders/tickets issued before and after Plaintiff's

---

[1] It reversed the award as against one of the attorneys because it held that that attorney was not properly put on notice that the motion for sanctions was against that attorney as well as the offending attorney who elicited the excluded evidence at trial. *Id.* at 160-161.

fall. Haysbert had absolutely no regard for this Court's rulings and would constantly attempt to confuse and prejudice the jury against Defendants. For example, by calling Defendants' employees 'adverse' and insinuating Defendants had a video of the slip and fall that they destroyed. All (or a majority) of Haysbert's questions were pre-planned as every time he questioned a witness, he read from a printed outline. Haysbert's misconduct was pre-planned and either McKelvey knew and supported the plan or failed to inquire, despite his obligations as local counsel. McKelvey certainly should have known after Haysbert's questioning of Alicia Eleftherion (where Haysbert intentionally elicited testimony related to insurance) that he needed to double check Haysbert's outlines for the remainder of the Outback employees. McKelvey evidently did not do anything as Haysbert asked the same questions to Norman "Chip" Chase, again eliciting testimony related to risk management.

Local counsel was not involved in this case to the extent and manner required by the local rules, and Haysbert failed to rely on local counsel's advice, guidance, or involvement. As stated by local counsel on numerous occasions when questioned by the court, McKelvey was unable to respond beyond stating he had little to no knowledge of what had been done. This conduct violates the local rules. Local counsel is accountable as is Haysbert. *See* E.D. Va. Loc. R. Prac. 83.1(G) ("Any attorney who signs a pleading or other filing with the Court will be held accountable for the case by the Court.").

> A lawyer must always remember that he is an officer of the court. He may zealously represent his client, but only within the bounds of 28 U.S.C. § 1927, Fed. R. Civ. P. 11, as amended, and the court's inherent power to govern and regulate the conduct of litigation before it. *See Gullo v. Hirst*, 332 F.2d 178 (4th Cir. 1964). We emphatically reject any suggestion that a lawyer may shield his transgressions behind the simplistic plea that he only did what his client desired.

*Blair v. Shenandoah Women's Ctr., Inc.*, 757 F.2d 1435, 1438 (4th Cir. 1985). Similarly, here, McKelvey should not be able to 'shield' himself simply because he was local counsel. By agreeing to serve as local counsel, McKelvey attested:

> I, the undersigned, do certify that I am a member of the bar of this Court, not related to the applicant; that I know the applicant personally, that the said applicant possesses all of the qualifications required for admission to the bar of this Court; that I have examined the applicant's personal statement. I affirm that his/her personal and professional character and standing are good, and petition the court to admit the applicant *pro hac vice*.

App. to Qualify as a Foreign Atty under L.Civ.R. 83.1(E) and L.Crim.R. 57.4(E). As soon as McKelvey learned that Haysbert did not, in fact, have the "qualifications required for admission," McKelvey had a duty to inform this Court that Haysbert lacked such qualifications and to withdraw his support of Haysbert's *pro hac vice* status.

Haysbert did not conduct himself with dignity and propriety. The Court repeatedly noted on the record that Haysbert has not complied with basic rules of courtroom decorum.

This Court can consider Haysbert's and McKelvey's candor, or lack thereof. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018) ("Among their other affirmative duties, '[a]ttorneys are obligated to act with candor in presenting claims for judicial resolution.'") (citation omitted). In *Six*, the Fourth Circuit affirmed a district court's decision to sanction both the attorney who made the misrepresentation and the attorneys who did not speak up to correct the misleading arguments. *Id.* at 519-20.

This matter is a simple slip and fall case. Due to misconduct, failure to follow the local rules, lack of preparation, the inquiries necessary by the Court to address last minute untimely filings and requests by Haysbert, the actual trial of this case did not even begin until August 10, two days late. Plaintiff was not able to complete his evidence until 6pm on August 11, and then

announced he had subpoenaed a witness he intended to call on August 14. Further inquiry followed that showed the subpoena was not even served until 5:25pm on Wilson on August 11, commanding him to appear on August 11 and 14. The proceedings did not even end on Friday, August 11 until almost 8pm. Defendants were then required to return on Monday, August 14, 2023, and brought their experts as they expected to finally begin presenting their case to the jury. Instead, the Court was forced to grant a mistrial.

In summary, Haysbert failed to comply with the basic requirements of a foreign attorney practicing in this Court. In court, Haysbert acted in a totally inappropriate manner, and despite multiple warnings, admonishments, requests, he persistently acted in a manner unacceptable to common standards of decency and decorum. McKelvey did nothing, but continued to allow Haysbert to be 'lead counsel.' All of this culminated in a mistrial, which severely prejudices Defendants. Defendants had their exhibits, their witnesses, and their expert witnesses ready to go. Defendants' experts had to sit around for multiple hours because Haysbert and McKelvey kept delaying the presentation of evidence with their tactics. Defendants should not have to incur these costs and their attorneys' fees when it was Plaintiff's counsel's intentional misconduct that caused a mistrial.

WHEREFORE, for the foregoing reasons, as well as any additional argument to be raised during oral argument, Defendants respectfully request that this Honorable Court grant their motion and award Defendants their costs and attorneys' fees starting from August 6, 2023 through August 14, 2023, including the costs of filing this motion. The Court should not set this case for a new trial until the costs and fees are paid. In addition, if Counsel for Plaintiff seeks to withdraw from further representation, this case should not be set for trial again unless new counsel is in place.

                                                      **BLOOMIN' BRANDS, INC.**
                                                      **and OUTBACK STEAKHOUSE**
                                                      **OF FLORIDA, LLC**
                                                      By Counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:    (703) 385-1000
Facsimile:     (703) 385-1555


  /s/ *John D. McGavin*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of September, 2023, a true and accurate copy of the foregoing was sent via the CM/ECF system to:

David A. McKelvey, Esq.
Crandall & Katt
366 Elm Ave, SW
Roanoke, Virginia 24016
dmckelvey@crandalllaw.com

Nazareth M. Haysbert, Esquire
James L. Moultrie, III, Esquire
4640 Admiralty Way, Suite 500
Marina Del Ray, CA 90292
nazareth@hmlaw.la

*Counsel for Plaintiff*

/s/ *John D. McGavin*
John D. McGavin (VSB 21794)