IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| JOANN WRIGHT HAYSBERT | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BLOOMIN' BRANDS, INC., et al. | ) | Case No.: 4:20-cv-00121-EWH-RJK |
| | ) | |
|     Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE

COMES NOW, that the defendants, Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., by counsel, and in support of their Motion in Limine, and state as follows:

### I. INTRODUCTION

This is a run of the mill slip and fall case involving an incident where the plaintiff alleges that she slipped and fell in an Outback Steakhouse in Chesapeake, Virginia. The case has a long history of extensive filings, including a motion for mistrial, which was granted by the Court in August 2023. The mistrial was granted because evidence was repeatedly offered that tainted the jury and made the ability of the defense to obtain a fair trial impossible. In order to prevent a similar occurrence and to promote a fair trial in this matter, these defendants submit these Motions in Limine.

Additionally, during trial, Defendants filed a Trial Brief as to the Admissibility of Dr. Filler (ECF 294) and a Trial Brief as to Subsequent Remedial Measures (ECF 301). The trial Court did not make any rulings on these issues and stated that "the newly assigned judge will be able to determine any outstanding evidentiary issues, including those related to the admissibility of Dr. Filler's testimony and the work orders . . . ." ECF 315 pp. 21-22. Defendants renew these motions and request this Court rule on the issues presented.

1

## II. MOTIONS IN LIMINE

**FIRST MOTION**: **Insurance, incident reports, claims process, and evidence how a claim is presented after an individual suffers an incident.**

For the reasons stated in their Motion for Mistrial (ECF 307) and for the reasons stated in Judge Smith's Opinion granting a mistrial (ECF 315), Defendants move to exclude any mention of the word "insurance," "incident reports," discussions related to the claims process, and evidence regarding how Outback follows up with individuals who claim to have sustained an injury on their premises.

It is, without a doubt, understood by all parties that after a person who claims to have suffered an injury on Outback's premises, Outback employees turn over the claim to insurance/risk management. ECF 315, pp.15-18. 'Whose responsibility it is' to follow up with an injured patron is not relevant to anything Plaintiff is required to prove at trial. Thus, Defendants move to exclude any such discussion at this second trial.

**SECOND MOTION: Surveillance cameras inside the restaurant, as there are no operating surveillance cameras inside the restaurant and the Court has previously so ruled.**
**&**
**THIRD MOTION: Spoliation of evidence regarding video from inside the facility from cameras, regarding any documentation or otherwise, as the Court has previously ruled on these matters.**

Plaintiff's counsel spent significant time in the prior trial asking witnesses questions regarding a surveillance camera that was located in the front of the restaurant and what Outback employees did or did not do in order to view or preserve that footage. *See*, *e.g.*, Ex. A (trial testimony from Alicia Eletherion; the video was also discussed during the testimony of Norman "Chip" Chase, but defense counsel does not have a copy of that portion of the trial transcript). However, that surveillance footage would not have captured Plaintiff's slip and fall. Thus, Plaintiff's counsel was indicating to the jury that there was a video that would have shown the slip

and fall, but it was not available because Outback had it deleted, which was not the case. In her Opinion granting the mistrial, Judge Smith found that this line of questioning was "[p]urposely misleading the jury . . . suggesting that the restaurant had a camera that could have captured Plaintiff's fall when the camera was only positioned to capture the front entrance/hostess stand area . . . ." ECF 315, p. 7. Because the surveillance camera would not have captured the area where Plaintiff fell, any line of questioning regarding why Outback no longer has a video from the date of the slip and fall, why there is not a video of the slip and fall, who saw the video, or why they did not view the video is not relevant. To allow such testimony would be unduly prejudicial as it would imply to the jury that there was once a video that Outback destroyed because it was not favorable to them. In reality, there was never any video that captured the slip and fall.

**FOURTH MOTION: Subsequent remedial measures, a matter briefed by the Court as part of a trial brief on August 13, 2023. Plaintiff seeks to offer evidence regarding replacement of the subject floor, which occurred following a leak of a soda machine in the back of the restaurant and was unrelated to any complaint regarding the subject incident.**
**&**
**FIFTH MOTION: Work order prepared by Marcus Wilson, which references an area of the subject restaurant at the entrance but not where plaintiff fell and has no probative value for the facts related to this incident**

Defendants rely upon the Trial Brief, submitted August 13, 2023 (ECF 301). Plaintiff has no evidence that the floors were replaced because of any issue complained of by Plaintiff. The floors were replaced as a result of a water leak from a soda machine. Furthermore, the portion of the floors that were replaced were in a different part of the restaurant. Thus, any evidence that a portion of Outback's floors were replaced is simply not relevant.

**SIXTH MOTION: Policies and procedures for cleaning, mopping or inspecting, as this Court has previously ruled that internal policies and procedures do not establish the standard of care and are irrelevant.**

This Court has already ruled that private internal rules cannot be used to fix the standard of care under common law. *See* ECF 273, pp. 4-6 (citing *Hottle v. Beech Aircraft Corp.*, 47 F.3d

3

106, 108-110 (4th Cir. 1995) in support of rulings to sustain Defendants' objections, in part, to policies and procedures Plaintiff intends to introduce as exhibits at trial). Plaintiff has never offered any viable reason to support a finding that these policies and procedures would be admissible. Therefore, Defendants request that they be excluded.

**SEVENTH MOTION: Plaintiff's proposed demonstrative exhibits including, but not limited to, (Ex. 1) a Power Point that was proposed and not timely provided and that included irrelevant and prejudicial information, (Ex. 2) a video that was apparently prepared by another person who did not testify in the previous trial and has no evidentiary foundation.**
**&**
**EIGHTH MOTION: Defendants' object to the testimony of Dr. Filler, as Dr. Filler never examined the patient, has no basis for offering an opinion on causation or the relationship of any diagnostic findings he might make to any claimed deficits of the plaintiff.**

During the Pretrial conference on August 1, 2023, Plaintiff was ordered to provide Plaintiff's Exhibit 1 (Haider Demonstratives and Images – Brain Map Animation) and Plaintiff's Exhibit 2 (a PowerPoint slide deck to be used as a demonstrative exhibit during Dr. Filler's testimony) in advance of trial. Plaintiff's counsel did not do so. ECF 315 p. 9. Defense counsel was only provided a copy of Plaintiff's proposed Exhibits 1 and 2 during trial.

Once Judge Smith took Plaintiff's Motion for Leave to Present Dr. Huma Haider via Zoom under advisement, on August 9, 2023 in open court, Plaintiff withdrew Dr. Huma Haider, Brad P. Avrit, P.E., and Dr. Joel Feigenheimer, Ph.D as experts. Plaintiff then proceeded with Dr. Filler as her only expert witness. During testimony, it became clear that Dr. Filler lacked foundation to make any opinion as to causation. Thus, Defendants filed its Trial Brief as to the Admissibility of Dr. Filler on August 10, 2023 (ECF 294) and adopts and incorporates that brief into this motion.

Plaintiff's proposed Exhibit 1 is a brain map animation that was allegedly prepared by Dr. Haider. Dr. Filler did not prepare Plaintiff's Exhibit 1. Ex. B (trial testimony from Dr. Filler). It

has not been designated as a document that Dr. Filler has reviewed or relied upon in Plaintiff's Rule 26 disclosures.

Plaintiff's proposed Exhibit 2 is a PowerPoint animation that contains significant amounts of hearsay and irrelevant information. During the Final Pre-Trial conference, Plaintiff was ordered to provide an amended PowerPoint because Plaintiff needed to have "Dr. Filler update PPT to remove references to court rulings." ECF 273, p. 3. However, the amended proposed Exhibit 2 that was provided by Plaintiff during trial simply black-box redacted the references to prior court rulings on the Diffusion Tensor Images, but then left the caption of the PowerPoint slide in the slide deck. Judge Smith never had an opportunity to rule upon all of Defendants' objections to the various slides because Plaintiff's counsel introduced the exhibit during his direct examination of Dr. Filler, quickly publishing it to the jury, and Judge Smith wanted to move things along. *See* Ex. B, p. 50:19-51:10; *see also* ECF 315 pp. 8-9. Then, while the slide deck was published the jury, Plaintiff's counsel flipped through numerous slides to which Defendants had objected.

Defendants would request that a final copy of Plaintiff's proposed Exhibit 2 be provided that has the references to the prior court rulings and any other hearsay *removed* rather than redacted in advance of any oral argument on these motions in limine so that this Court can rule on the remainder of Defendants' objections to Plaintiff's proposed Exhibit 2. Plaintiff's proposed Exhibit 1 should be stricken due to lack of foundation, relevance, speculation, and undue prejudice.

**NINTH MOTION: Last minute subpoenas the day before trial or during trial, as during the previous trial plaintiff issued subpoenas the day before trial, which required various motions to quash and even during trial, which further delayed the proceedings.**

The prior trial was delayed because of last minute witness subpoenas that were issued the day prior to trial and during trial itself. Defendants therefore request a court order instructing Plaintiff to comply with Local Civil Rule 45(E).

**TENTH MOTION:** Last minute motions to permit expert witnesses to testify at trial by Zoom. The record in this case reflects that plaintiff attempted at the last minute to obtain relief from the Court to allow Dr. Haider to testify by Zoom and then when forced to produce information about her unavailability, withdrew not only Dr. Haider but two other nonresident experts.

&

**ELEVENTH MOTION:** Confirmation of which of plaintiff's four nonresident Virginia experts will be coming to trial. Plaintiff withdrew three proposed experts at trial. The number of experts and when they may testify will impact the length of the trial. This specifically goes to the issue of defendants' expert witnesses waiting and ultimately never being allowed to testify despite four reserved trial dates. The defense seeks a reasonable expectation of how long plaintiff's case may last including, which witnesses will actually be called so that a reasonable schedule and orderly trial may occur.

During the initial final pre-trial conference, held August 1, 2023, counsel for Plaintiff confirmed that all of Plaintiff's experts would be appearing for trial. Then, on the eve of trial, Plaintiff filed a motion to permit Dr. Haider testify remotely via Zoom. ECF 274, 275. The parties then spent the majority of the first day of trial hearing argument as to whether Dr. Haider should be permitted to appear remotely. ECF 288. After returning from lunch on August 8, 2023, counsel for Plaintiff indicated that Plaintiff was withdrawing Dr. Haysbert's life care plan as an exhibit (P3). This meant that Plaintiff was no longer introducing any special damages, as no past medicals had ever been designated and Plaintiff had withdrawn her claim for past and future lost wages during the pre-trial conference.

On August 9, 2023, Plaintiff's counsel then represented to the Court that he would be withdrawing the remainder of Plaintiff's experts, except for Dr. Filler. Thus, despite representing to the Court during the pre-trial conference held August 1, 2023 that Plaintiff would be calling these experts, causing undersigned to prepare for trial as if these experts were appearing, Plaintiff withdrew these experts mid-trial. As evidenced by Defendant's Trial Brief as to the Admissibility as to Dr. Filler, this seriously called Plaintiff's ability to prove causation into question.

Then, even though Plaintiff had withdrawn three of her expert witnesses, by the fourth day of trial (of a trial set for four days), Plaintiff still had not rested. This resulted in significant expenses to Defendants, as they had their expert witnesses waiting in the courthouse, and inconvenience to Defendant's witnesses.

Now that Plaintiff has withdrawn these witnesses in open court, Defendants would object to Plaintiff being permitted to call them again. However, if this Court is inclined to permit Plaintiff to bring these witnesses, Defendants request that Plaintiff provide which experts she intends to call and provide what dates she intends for them to testify. All of Plaintiff's experts are located out-of-state and so their transportation will have to be arranged prior to trial. Thus, it should not be burdensome on Plaintiff to provide this Court with confirmation of her expert's travel plans.

Furthermore, in her opinion granting the mistrial, Judge Smith specifically advised Plaintiff of this Court's website that requires requests for remote participation of outside parties to be submitted at least two business weeks in advance of the hearing date. ECF 315, p.10, n.5. Defendants request that this Court enter an order requiring Plaintiff to adhere to this local practice.

**TWELFTH MOTION: As plaintiff is proceeding pro se, without counsel, establishing a deadline that no new counsel will be permitted to enter an appearance in this matter because inevitably there would be a motion for continuance, and further delay.**

After this Court granted Mr. McKelvey's motion to withdraw, it granted Plaintiff fourteen (14) calendar days to retain new counsel. ECF 333. After the deadline passed, it was directed that Plaintiff shall proceed *pro se* and the matter was set for trial. ECF 333. If Plaintiff is able to find counsel to represent her in this matter, Defendants would object to any continuance of the trial date. At this point, Plaintiff has had three months since Mr. McKelvey filed his motion to withdraw to find new counsel and has not done so. Any further continuance of the trial date would be extremely prejudicial to the Defendants.

**THIRTEENTH MOTION:** A good faith assertion by the plaintiff, proceeding pro se, whether the plaintiff actually intends to go forward to trial on this matter in February or will voluntarily dismiss this action.

&

**FOURTEENTH MOTION:** Defendants' object to Nazareth Haysbert participating in the trial, pre-trial conferences and meet and confer conferences.

In preparation to file this Motion, counsel for Defendants attempted to have a meet and confer with Dr. Haysbert. During the first call, counsel for Defendants attempted to discuss which witnesses and exhibits Plaintiff intended to introduce at trial. Counsel for Defendants also indicated that it had certain motions in limine it intended to file. Counsel for Defendants sent the draft motion in limine to Plaintiff and scheduled a second call to discuss these motions. During this call, Nazareth Haysbert, Plaintiff's former attorney, joined the call to indicate that Dr. Haysbert intended to file a motion for a voluntary dismissal pursuant to Rule 41 because of Dr. Haysbert's inability to prosecute this case herself and her inability to secure an attorney prior to trial. Mr. Haysbert also stated that he did not participate in the prior call, but 'was in and out of the room.' Undersigned stated that it was inappropriate for Mr. Haysbert to be on the call as he is not permitted to practice law in Virginia and has been removed as an attorney in this case, instructed Dr. Haysbert on the local rules regarding ghostwriting, and indicated that Defendants do not consent to any request for a voluntary dismissal. The conduct of Mr. Haysbert in that call resembled his misconduct in trial: arguing, repeating himself, talking over counsel, and offering accusations and insults. Mr. Haysbert improperly injected himself into the call and compounded that by failing to act in a manner appropriate to this Court.

If the Court is inclined to permit a voluntary dismissal, Defendants assert that it should be with prejudice. In the alternative, Defendants would request a condition that if Plaintiff re-files, Plaintiff would be responsible for paying for all of the costs of this action and attorneys' fees. Fed. R. Civ. P. 41(d). Defendants reserve the right to file an Opposition to any Motion for Voluntary

8

Dismissal by Plaintiff. However, in the interim, Plaintiff should affirmatively state whether what was represented by Mr. Haysbert is accurate – that she intends to move to dismiss this action.

### **FIFTEENTH MOTION: Defendants' object to plaintiff offering any new witnesses or exhibits.**

During the parties' first meet and confer, Plaintiff indicated that she may have additional witnesses or exhibits she intends to designate. During the second call, undersigned again asked whether Plaintiff intended to designate any additional witnesses and exhibits and she indicated that she intended to do so. As of the time of filing this motion, Plaintiff has not provided any new witnesses or exhibits. Regardless, these designations come too late. In this Court's Scheduling and Pretrial Order, ECF 339, the parties were requested to "meet and confer and remove any exhibits that will not be used or witnesses who will not be called at trial." ECF 339, p. 2. This Order does not grant Plaintiff the authority to identify new witnesses or exhibits and Defendant objects to the extent Plaintiff intends to do so.

### **SIXTEENTH MOTION: Defendants' object to plaintiff having "advisors" at counsel table.**

Defendants request that this Court instruct Plaintiff that only herself and her attorney, should she be able to retain one, is permitted to sit at counsel table.

### III. CONCLUSION

WHEREFORE, the foregoing considered, Defendants request that this Court enter an order granting the above motions.

                    **BLOOMIN' BRANDS, INC.**
                    **and OUTBACK STEAKHOUSE**
                    **OF FLORIDA, LLC**
                    By Counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:   (703) 385-1000
Facsimile:   (703) 385-1555

    /s/ *John D. McGavin*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 18th day of December, 2023, a true and accurate copy of the foregoing was filed via the CM/ECF system and served via email and U.S. Mail to non-filing Pro Se Plaintiff:

    Joann Haysbert
    244 William R. Harvey Way
    Hampton, VA 23669
    joannhaysbert@yahoo.com
    Plaintiff, Pro Se

                                           /s/ *John D. McGavin*
                                       John D. McGavin (VSB 21794)