**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**JOANN WRIGHT HAYSBERT,**

          **Plaintiff,**

**v.**                                                             **Civil Case No.:  4:20-cv-00121**

**BLOOMIN' BRANDS, INC., et al,**

          **Defendants.**

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER,**
**ALTER OR AMEND THE COURT'S ORDER IMPOSING SANCTIONS**

      COMES NOW, Nazareth M. Haysbert ("Mr. Haysbert"), an interested party, by and

through the undersigned counsel, hereby submits the following Memorandum in Support of his

Motion to Reconsider, Alter or Amend the Court's July 9, 2024 Order under Federal Rule of

Civil Procedure 59(e) imposing sanctions on Mr. Haysbert.[1]

**I.**      **INTRODUCTION**

      On July 8, 2024 - approximately 11 months after the precipitating mistrial - the Court

issued its decision on Defendants' motion for sanctions. In its oral opinion documented in a

forty-three (43) page transcript ("Op. Tr."), the Court overwhelmingly rejected Defendants'

allegations of misconduct. See gen. Op. Tr. 17:4-20:4, 26:14-34:5. The Court, however,

concluded that Mr. Haysbert should be sanctioned under 28 U.S.C. § 1927 for having

unreasonably and vexatiously multiplied the proceedings by misrepresenting that he intended to

call three expert witnesses to testify (Op. Tr. 20:5-25:19), and memorialized its decision in a

---

[1] Should the Court consider that this motion or any portion thereof is not proper under Rule 59(e) for any reason,
Mr. Haysbert prays the Court to consider this motion, in the alternative, as a motion for relief from an order under
Rule 60(b), a motion for reconsideration of an interlocutory order under Rule 54(b), or a motion for amended
findings under Rule 52(b).

short Order dated July 9, 2024. ECF No.: 378.

Despite the Court's finding, for reasons which will be explained herein, the inferences supporting the decision cannot withstand scrutiny because Mr. Haysbert did not ever misrepresent his intentions with respect to calling the expert witnesses - Dr. Huma Haider, Dr. Joel Feigenheimer, and Mr. Brad Avrit, PE.  As detailed below, Mr. Haysbert respectfully requests that the Court reconsider its decision imposing sanctions and alter its judgment in order to account for evidence that the Court did not consider[2] and correct an error of law and fact, and to prevent manifest injustice.  In order to consider the evidence, Mr. Haysbert requests the Court's permission to submit the evidence for the Court's *in camera* review, as the materials are subject to the work product privilege and Mr. Haysbert is ethically prohibited from disclosing them to Defendants.

Despite its remarkable diligence in parsing Defendants' allegations, the Court has sanctioned an attorney for something that he did not do, based on inferences that are not permitted by the law or supported by the evidence. While Mr. Haysbert acknowledges his errors and missteps at trial, at no point did he act in bad faith, and he should not be unfairly forced to bear the consequences of something he did not do.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 59(e) provides that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." [3]  Because the Federal Rules do not provide for a specific procedure for reconsideration, Rule 59(e) motions (as

---

[2] As will be discussed *infra*, evidence in the possession of Mr. Haysbert was not presented to the Court in advance of the hearings on the Motion for Sanctions because (1) the information and documents include Mr. Haysbert's strategical analysis and communications with members of his trial team with regard to trial and certain aspects of the litigation, all of which are attorney work product, and (2) Defendants did not expressly allege that Mr. Haysbert had no intention of calling the experts at trial.

[3] Because the Court's order imposing sanctions was entered on July 9, 2024, this motion is timely under Rule 59(e).

well as Rule 60(b) motions for relief from an order or judgement) are commonly used to request that a Court reconsider a previous decision. See Katyle v. Penn Nat. Gaming, Inc., 637 F. 3d 462, 470 n.4 (2011).

While Rule 59(e) "does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment," the Fourth Circuit has recognized three grounds upon which a Rule 59(e) motion may be granted: "1) an intervening change in controlling law; 2) previously unavailable evidence; or 3) to correct a clear error of law or prevent manifest injustice." JTH Tax, Inc. v. Aime, 984 F. 3d 284, 291 (4th Cir. 2021).

### III.   LEGAL ARGUMENT

As detailed below, the Court's conclusion that Mr. Haysbert acted in bad faith by representing that he would actually call the three experts to testify despite not intending to do so is legally erroneous and not factually supported by the evidence.  It would be manifestly unjust to impose sanctions on an attorney for something that he did not do. To avoid such injustice, the Court should permit Mr. Haysbert to submit privileged and confidential materials evidencing his intention to call the three experts at trial for *in camera* review and grant the instant motion.

### A.   Mr. Haysbert Did Not Misrepresent His Intention to Call Three Expert Witnesses

In the Court's Order, it states that Mr. Haysbert "misrepresented to the Court and opposing counsel that he intended to call three expert witnesses at trial" on three instances: "the Final Pretrial Conference on July 29, 2022, the Supplemental Final Pretrial Conference on August 1, 2023, and the trial on August 8, 2023." Order at 1. In its Oral Opinion, the Court identified these alleged misrepresentations as, first, listing these expert witnesses in the Final Pretrial Order as "Witnesses whom Plaintiff intends to call at trial," Op. Tr. at 20:21-24 (citing ECF No.: 243 at 11); second, doing the same in the Supplemental Final Pretrial Order, where

they were listed under the heading "PLAINTIFF'S FINAL WITNESS LIST (INTEND TO CALL)." id. at 20:24-21:1 (citing ECF No.: 273 at 10); and, third, stating on the first day of trial that "With respect to my experts, they are all coming with the exception of Dr. Haider, you know, depending on what the Court's scheduling is and how we get through. Everybody else is coming. Everyone else is here." Id. at 22:11-18 (quoting Day 1 Tr. 27:12-15). The Court erred, however, by treating Plaintiff's witness lists and Mr. Haysbert's statement at trial as definitive representations that he would call each of the three expert witnesses.

      1.  *All of Mr. Haysbert's Representations Were True*

First, and perhaps most importantly, even if this Court concludes that Mr. Haysbert represented to the Court that he expected to call each of the three expert witnesses, those representations were true.  In its decision, the Court incorrectly concluded that "that Mr. Haysbert did not intend to call Dr. Feigenheimer, Dr. Haider or Mr. Avrit at trial." Op. Tr. 23:17-20. To the extent that Mr. Haysbert represented that he expected to call Dr. Haider, Dr. Feigenheimer, and Mr. Avrit to testify, those representations were true every time they were made. As explained below, Mr. Haysbert always intended Dr. Haider to testify and expected to call Dr. Feigenheimer and Mr. Avrit until deciding otherwise after the first day of trial for reasons of litigation strategy.  Plaintiff's 2022 motion to permit them to testify remotely is not to the contrary. Therefore, the Court erred in finding that Mr. Haysbert had misrepresented his intentions to call these expert witnesses at trial.

However, because Mr. Haysbert's further evidence on these points constitutes confidential attorney work product, he requests that he be permitted to submit such evidence for the Court's review *in camera*, so as not to prejudice his former client's continued prosecution of her case.  This evidence includes email communications in the days leading up to trial involving

4

the expert witnesses and strategical considerations that were involved in the decision.

2. *Mr. Haysbert Always Intended for Dr. Haider to Testify Until Her Last-Minute Family Issue and the Court's Position on the Motion to Allow Remote Testimony*

Mr. Haysbert always intended for Dr. Haider to testify in person until he was made aware of her last-minute family issue, at which point, he attempted to salvage the situation by asking the Court to allow her to testify via remote means.  The strongest evidence that Mr. Haysbert intended to call Dr. Haider to testify is that, even after learning that her responsibilities as caregiver for her ailing father would interfere with her ability to travel to Virginia to testify, he continued to make efforts to enable her to testify.  Mr. Haysbert moved under Federal Rule 43(a) to permit Dr. Haider to testify remotely via Zoom from her home in Houston (see ECF No.: 274, 275; see gen. Opp. at 19-21), and provided her with a copy of a subpoena in the hope that it might assist her in explaining to others that she had to attend the trial in Virginia. See Day 5 Tr. 112:7-12.

No one has suggested that Mr. Haysbert and Dr. Haider, who submitted an affidavit as to her father's condition and her responsibilities for his end-of-life care (see ECF No.: 275-1), fabricated the circumstances underlying Plaintiff's motion.  Indeed, the Court rejected the idea that this motion was filed in bad faith, finding instead that Mr. Haysbert had "attempted to use [Rule 43(a)] appropriately." Op. Tr. 26:2-13. While Judge Smith did question whether Mr. Haysbert had ever intended to have Dr. Haider appear; inquiring: "[Y]ou said you were planning to have her here.  Well, where are the reservations?  [W]here are your plane reservations?  . . . Where are your hotel reservations?" (see Day 1 Tr. 9:9-25), Mr. Haysbert tried his best to explain to Judge Smith that he would not have those reservations because his standard practice was to not get involved in the logistics of his experts' travel arrangements ahead of trial.  As was the case with Dr. Filler, and also standard practice in this case, each expert was paid a set amount

in advance of trial which they would presumably use to cover expert fees, costs of travel, and lodging to stay overnight, if they chose to do so. The experts were paid a large sum of money, and as professional witnesses, were paid to ensure that they were available when needed.

In this case, Judge Smith also then asked to see Plaintiff's agreement with Dr. Haider: "I can't imagine you don't have an agreement with an expert" (Id. 16:9-10), the provision of which to the Court would have been entirely inappropriate.  Mr. Haysbert diligently tried to explain that he "focused the declaration on exactly what the circumstances require, and that is compelling evidence that they cannot appear live."  Id. 34:20-22.  In the face of all these unreasonable demands, many of which were potentially violative of HIPPA and other privileges, coupled with the burden it would put on Dr. Haider during a very difficult and emotional time, the decision to withdraw Dr. Haider was made by Mr. Haysbert.

3. *Mr. Haysbert Decided not to call Dr. Feigenheimer and Mr. Avrit on the First Day of Trial for Strategic Reasons*

As Mr. Haysbert explained in his declaration, however, the decision not to call Dr. Feigenheimer or Mr. Avrit was only made <u>after</u> the first day of trial. <u>See</u> ECF No.: 376-1 at 5. As the evidence that Mr. Haysbert proposes to submit to the Court for its *in camera* review shows (<u>see</u> <u>infra</u> Section III(B)**Error! Reference source not found.**), Mr. Haysbert had continued in the lead-up to trial to plan his examinations of Dr. Feigenheimer and Mr. Avrit, just as he did with Dr. Haider and Dr. Filler. Had Mr. Haysbert already decided not to call Dr. Feigenheimer or Mr. Avrit, it would make no sense for him to continue to spend his own time and resources to prepare for their testimony.

Although the Court found it implausible that Mr. Haysbert decided not to call Dr. Feigenheimer and Mr. Avrit until after the first day of trial, <u>that is what actually happened</u>. While it may be true that "nothing happened on the first day of trial which was relevant, or which

materially changed which experts you would want to call," (Op. Tr. 25:1-4), it was only then that Mr. Haysbert decided against calling them, for reasons that he is prepared to provide the Court *in camera*. In other words, this was simply a last-minute decision, not deceptiveness and abuse of process. There is no rule against an attorney keeping his options open as long as possible before making a decision, and even the possibility that Mr. Haysbert simply waited to make his final decision following the first day of trial defeats a finder of fact's ability to infer bad faith as a matter of law because it is not "plain beyond controversy," (see Ripley v. United States, 220 U.S. 491, 496 (1911)), that Mr. Haysbert already did not intend to call these expert witnesses. See Supp. Opp. at 18 (describing when bad faith may be inferred).

The Court also referred to Mr. Haysbert's declaration that "[w]hen I disclosed Dr. Haider, Dr. Feigenheimer, and Mr. Avrit as expert witnesses, and when I included them on Plaintiff's witness list, I did not know that I would not call them to testify." Op. Tr. at 23 (citing ECF No.: 376-1). In the Court's view, this statement was "misleading" and appeared to be "very, very carefully crafted attorney language which is stated to say one thing when it really should be stated to say another."  While it is true that the language was carefully crafted, that was done in an effort to be precise and not to mislead. Mr. Haysbert's point was that he disclosed and listed these witnesses properly in order to permit them to testify at trial. He phrased it in the negative, however, because he was always aware that disclosing and listing a witness permits a party to call the witness but does not obligate them to do so, as explained above. In contrast, phrasing Mr. Haysbert's statement in the affirmative - that is, stating that "when I disclosed Dr. Haider, Dr. Feigenheimer, and Mr. Avrit as expert witnesses, and when I included them on Plaintiff's witness list, I knew that I would call them to testify" - would have gone a step too far. That is, while Mr. Haysbert retained, disclosed, and listed these witnesses for the purpose of having them testify, he

7

was also aware that he could make the final decision about calling them as late as trial. Nevertheless, it would have been equally true for Mr. Haysbert to have stated that "when I disclosed Dr. Haider, Dr. Feigenheimer, and Mr. Avrit as expert witnesses, and when I included them on Plaintiff's witness list, I expected to call them to testify." Id.  Accordingly, the Court erred in concluding that Mr. Haysbert did not intend for Dr. Feigenheimer or Mr. Avrit to testify.

> 4.  *Plaintiff's August 6, 2022 motion to permit remote testimony does not show that Mr. Haysbert lacked the intention to call the expert witnesses*

Plaintiff's August 6, 2022 motion to permit remote testimony does not unequivocally demonstrate that Mr. Haysbert did not intend to call the expert witnesses in 2022 or 2023.  Even if the Court concludes that it may rely on Plaintiff's August 6, 2022 Motion to permit remote testimony ("2022 Motion") *and* that the 2022 Motion demonstrates that certain witnesses were unlikely to be available for trial in August 2022 (see Op. Tr. 21:24-25:1), it does not show that Mr. Haysbert lacked the intention to call the three expert witnesses at trial.   First, the motion did not request that Mr. Avrit be permitted to testify remotely. See ECF 257-1 at 3; see also Op. Tr. 21:11-24. Therefore, there is no basis for reaching any conclusion from the motion as to Mr. Avrit. Second, the motion did request that Dr. Filler be permitted to testify remotely. See ECF No.: 257-1 at 3; see also Op. Tr. 21:20-22.  However, Dr. Filler was never withdrawn and eventually testified - in person - at trial. Thus, even if the motion demonstrates that Dr. Haider, Dr. Feigenheimer, and Dr. Filler, all of whom are identified as having other commitments, would not have been available for trial in August 2022, it does not demonstrate that Mr. Haysbert did not intend for them to testify. If this motion is consistent with Mr. Haysbert intending to call Dr. Filler, as actually occurred, it cannot also prove that he did not intend to call Dr. Haider and Dr. Feigenheimer.  Rather, the motion reflects Mr. Haysbert's efforts to deal with a difficult situation. Recall that the COVID-19 pandemic was still ongoing in August 2022, during which

time it had become common for courts to permit, if not require, remote or "virtual" testimony. See, e.g., Federal Judicial Center, Report on Use of Virtual Technology to Hold Court Proceedings (May 2022) at 4 (reporting the results of a survey of federal judges showing that the percentage who "sometimes" or "frequently" used videoconferencing technology for court proceedings increasing from 18% prior to the pandemic to 91% during the pandemic), *available at* https://bit.ly/4cYW5wy (last accessed July 28, 2024). Apparently, some of Plaintiff's expert witnesses had started to assume that they would be permitted to testify remotely and, unbeknownst to Mr. Haysbert, had "double booked" themselves for the planned trial dates based on the expectation that they would not be required to appear in person in Virginia. In doing so, they left Mr. Haysbert in a difficult position, which he tried to rectify by requesting that they be permitted to testify remotely. Mr. Haysbert's error, therefore, was failing to sufficiently communicate to the witnesses that they needed to be available for in-person testimony. But this is a far cry from misrepresenting in bad faith that he intended to call his expert witnesses. Accordingly, the Court erred in concluding from this motion that Mr. Haysbert did not intend to call Dr. Haider, Dr. Feigenheimer, and Mr. Avrit.

## B.   Evidence That Should be Considered by the Court in Support of Mr. Haysbert's Intention to Call his Expert Witnesses

If given the opportunity, Mr. Haysbert has evidence showing that he continued to plan for the examination of Dr. Haider, Dr. Feigenheimer, and Mr. Avrit in advance of trial, which should prevent a conclusion that Mr. Haysbert did not intend for them to testify. Similarly, Mr. Haysbert's explanation of the particular litigation-related reasons he chose to withdraw the experts could reassure the Court that he, in fact, decided not to call them following the first day of trial. However, because Mr. Haysbert's reasoning and his communications with others about these witnesses constitutes attorney work product, which is protected from disclosure, and Mr.

Haysbert is further prevented by his ethical obligations from disclosing such confidential information about Plaintiff's litigation strategy, Mr. Haysbert requests the Court's permission to submit his evidence *in camera*.

Specifically, for the reasons given below, Mr. Haysbert, proposes to submit the following privileged and confidential materials to the Court for *in camera* review:

1. A declaration explaining the specific strategic concerns that led him to withdraw the expert witnesses and describing the context for the other documents;
2. Emails concerning preparation for the examination of the expert witnesses and providing outlines for examining the expert witnesses;
3. Emails with Dr. Feigenheimer and Mr. Avrit's office concerning their attendance at trial; and
4. Emails soliciting legal advice concerning the examination of expert witnesses.

The materials that Mr. Haysbert proposes to submit for *in camera* review are all confidential attorney work product. The work product privilege is a "historic common law rule of evidence," under which "an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing." In re Doe, 662 F. 2d 1073, 1077 (4th Cir. 1981); see gen. Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). While the codification of the privilege in Rule 26(b)(3) is limited to documents and other tangible things, the common law protection from disclosure covers work product "reflected in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." Hickman, 329 U.S. at 511.

Even if Mr. Haysbert wished to waive protection for his work product to protect his own interests, he is prevented from doing so by his ethical obligations of confidentiality. Rule 1.9(c) of the Virginia Rules of Professional Conduct, to which Mr. Haysbert was subject based on his pro hac vice admission (see Loc. Civ. R. 83.1(E)(2), (J), (M)), prohibits a lawyer from

"reveal[ing] information relating to the representation [of a former client] except as Rule 1.6 . . . would permit or require. . .." Rule 1.6(a), in turn, prohibits a lawyer from "reveal[ing] information . . . gained in the professional relationship . . . the disclosure of which . . . would be likely to be detrimental to the client . . .." Although Rule 1.6(c)(2) authorizes disclosure of confidential information "to respond to allegations in any proceeding concerning the lawyer's representation of the client," Comment 10 to Rule 1.6 states that "disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable." Revealing information concerning trial strategy to an opposing party is certainly "detrimental to the [former] client," and because Defendants pointed to no evidence that Mr. Haysbert lacked the intention to call these experts and there was no apparent reason to doubt the truthfulness of the declaration he submitted under penalty of perjury, he did not reasonably believe that disclosure was necessary until the Court's ruling.

Mr. Haysbert's ethical obligations as a member of the California Bar are even stricter in this regard. Rule 1.9(c) of the California Rules of Professional Conduct similarly prohibits the use or disclosure of confidential information concerning a former client except as would be permitted with respect to a current client. However, the exceptions to the general rule of confidentiality in California's Rule 1.6 are limited to disclosures "necessary to prevent a criminal act that the lawyer reasonably believes is likely to result in death of, or substantial bodily harm to, an individual."[4]

---

[4] Although California Evidence Code § 958 provides a so-called "self-defense" exception to the attorney-client privilege (but not work product privilege) for "a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship," such exception does not apply to third-party claims. See McDermott, Will & Emery v. Superior Court, 99 Cal. Rptr. 2d 622, 626-27 (Cal. Ct. App. 2000).

While *in camera* review of allegedly privileged materials most commonly occurs in the context of discovery, it is also a way for a court to assess factual evidence that may not be disclosed to the opposing party, such as in cases under the Freedom of Information Act. See, e.g., Bowers v. U.S. Dept. of Justice, 930 F. 2d 350, 353 (4th Cir. 1991). *In camera* review is also sufficient to establish a factual basis for a district court's decision. See City of Virginia Beach, Va. v. Dept. of Commerce, 995 F. 2d 1247, 1252 n.12 (4th Cir. 1993).

In this case, *in camera* review is appropriate because of the need to balance Mr. Haysbert's ability to make his case that the Court should reconsider the award of sanctions against him with the privileged nature of the evidence required to do so. Other courts have approved of the use of *in camera* review in similar situations. In Barnes v. Dalton, 158 F. 3d 1212, 1214-15 (11th Cir. 1988), the Eleventh Circuit upheld an award of sanctions under § 1927 where the district court had relied on its *in camera* review of the sanctioned attorney's financial records in setting the amount of the award.  In Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 182 (3rd Cir. 1997) (internal quotations omitted), which concerned a former in-house attorney's Title VII discrimination case against her former employer, the Third Circuit explained that "the district court may use a number of equitable measures at its disposal designed to permit the attorney plaintiff to attempt to make the necessary proof while protecting from disclosure client confidences subject to the privilege," including the use of *in camera* proceedings. Id.

Finally, the Court should consider the evidence that Mr. Haysbert proposes to submit because it supports both the second and third grounds upon which a Rule 59(e) motion may be granted - namely, accounting for previously unavailable evidence, and correcting clear errors of law and preventing manifest injustice. Even if, as a factual matter, evidence was previously available, a court may grant a Rule 59(e) motion on the basis of such evidence if the movant

presents a "legitimate justification for failing to timely submit the evidence" or lacked "advance notice of the . . . issues." Bogart v. Chapell, 396 F. 3d 548, 558 (4th Cir. 2005). A court may also rely on previously available evidence to grant a Rule 59(e) motion if the evidence shows that altering or amending the judgement at issue is necessary to prevent manifest injustice. EEOC v. Lockheed Martin Corp., 116 F. 3d 110, 112 (4th Cir. 1997).

In this case, the evidence that Mr. Haysbert proposes to submit should be considered previously unavailable because, as explained above, Mr. Haysbert is not ethically permitted to disclose it to Defendants or their counsel and therefore could not have submitted it with his briefing on Defendants' motion for sanctions. Alternatively, such reasons provide a legitimate justification for why Mr. Haysbert did not present this evidence previously. Moreover, such evidence also demonstrates the need to prevent the manifest injustice of sanctioning an attorney for misconduct that did not actually occur.

## C.      Plaintiff's Witness Lists Did Not Represent That She Would Call All of the Listed Witnesses

With respect to Plaintiff's witness lists included in the two pretrial orders, the headings indicating that Mr. Haysbert intended to call Dr. Haider, Dr. Feigenheimer, and Dr. Avrit cannot be read in isolation from the background principles concerning witness lists. The division of each party's witness lists into "intend to call" and "may call" sub-lists reflects the direction in Rule 26(a)(3)(A)(ii) to "separately identify[] those [witnesses] the party expects to present and those it may call if the need arises." See Amended Rule 16(b) Scheduling Order (ECF 56) ("Rule 16(b) Order") at 5 ("The pretrial disclosures required by Rule 26(a)(3) shall be delivered to all counsel and unrepresented parties . . . and filed with the Court at the final pretrial conference as part of the final pretrial order.") (emphasis in original). As the language of the rule indicates, listing a witness on the "intend to call" list is not an irrevocable commitment to call that witness at trial; it

13

is simply a statement of what the party expects to do at trial. And expectations can, of course, change for any number of reasons, as they did here.

Critically, because failing to include someone on the witness list generally prevents that person from testifying, a responsible attorney is required to be over-inclusive and list anyone whom they might wish to call. See Rule 16(b) Order at 6 ("With the exception of rebuttal or impeachment, any information required by Rule 26(a)(3) not timely disclosed, delivered, and incorporated in the proposed final pretrial order shall result in the exclusion of the witnesses, depositions, and exhibits which are the subject of such default."); Fed. R. Civ. P. 37(c)(1) ("If a party fails to . . . identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."). Under Rule 37, the failure to list a witness may even subject an attorney to sanctions. Thus, a prudent attorney who is uncertain about whether to actually call a witness at trial, or has yet to make a final decision on whether to do so, has no choice but to list that witness - or else forfeit the right to have them testify.

A witness list, therefore, is not a representation that any listed person will actually be called to testify. Rather, it is a tool for defining the universe of people whom a party is permitted to call as witnesses. For this reason, courts, including this Court, regularly refer to those people included on a witness list as "potential witnesses." See, e.g., Samsung Electronics Co., Ltd. v. NVIDIA Corp., 2016 WL 356083, *2 (E.D. Va. Jan. 28, 2016); David v. Caterpillar, Inc., 324 F. 3d 851, 857-58 (7th Cir. 2003), Alpha Energy Savers, Inc. v. Hansen, 381 F. 3d 917, 925 (9th Cir. 2004); Pro v. Donatucci, 81 F. 3d 1283, 1285 (3d Cir. 1996); Shackelford v. Deloitte & Touche, LLP, 190 F. 3d 398, 408 (5th Cir. 1999).

Judge Smith, who oversaw the August 1, 2023 Supplemental Final Pre-Trial Conference,

14

viewed the witness lists in this context when she told Mr. Haysbert that, even though Defendants had listed Nick Siefert, "they never gave assurance they would call him. A party is not required to call any of his or her witnesses." Day 1 Tr. 58:11-13; see also Day 2 Tr. 137:22-24 ("You can list witnesses, and you can subpoena them and have them. There is no legal requirement that you call a witness."). Id. at 133:3-4. ("You have to do your own subpoenas. They don't even have to call him."). Id. Nor did Judge Smith - who had all of the same information that this Court relied upon - include Mr. Haysbert's decision not to call the three expert witnesses within the alleged "cumulation of misconduct" described in her Memorandum Opinion granting Defendants' Motion to Quash, Motion to Revoke Pro Hac Vice Status of Mr. Haysbert, and Motion for Mistrial.  ECF No.: 315.

Defendants also did not treat listing a witness on the "intend to call" list as a commitment to actually call that witness, as they had listed Marcus Wilson in the Supplemental Final Pretrial Order (see ECF No.: 273 at 12), but decided not to call him prior to trial a week later. See Day 2 Tr. 132:14-133:19; Day 4 Tr. 810:7-10.

To hold that the inclusion of a potential witness on a witness list - even with an intend-to-call indication is sanctionable if that witness is not called - would have profound implications for the conduct of trials, as lawyers will be forced to navigate between the Scylla and Charybdis of losing the right to call unlisted witnesses, on one hand, and the risk of sanctions for listing a potential witness whom the lawyer is uncertain about whether to call or later decides not to call, on the other. The logic of the Court's opinion would, paradoxically, also force lawyers to multiply the proceedings by calling experts and other witnesses whose testimony could otherwise be excused, simply to avoid the risk of facing sanctions for misrepresenting their intention to call such witnesses.

**D.**     **The Misunderstanding Concerning Mr. Haysbert's Statements on the First Day of Trial**

First, as for Mr. Haysbert's statement on the first day of trial that "[w]ith respect to my experts, they are all coming with the exception of Dr. Haider, you know, depending on what the Court's scheduling is and how we get through," the text and context both indicate that he was referring to the availability of the expert witnesses to appear, not to whether he would actually call them to testify.  The context of Mr. Haysbert's statement was his motion for Dr. Haider to testify remotely via Zoom and his efforts to get her to attend in person. Mr. Haysbert began by explaining that he was responding to statements from Judge Smith that the request for Dr. Haider to appear remotely was being raised at the "11th hour." See Day 1 Tr. 27:9-10 ("Well, I wanted to handle the point that was being made about all this 11th hour business."); see also id. at 11:21-22 (The Court: "The [Z]oom requests are supposed to be made in advance, and this was the 11th hour."), 16:23-17:2 (The Court: "I'm not saying that any of that [Dr. Haider's statements about her father's health] isn't correct, but under the caselaw, frankly, in my mind is not a grounds to exercise my discretion to say, all right, at the 11th hour, you can't get here and be here in person."), 23:15-17 (The Court: "You can say that's part of the 11th hour pattern, is what you are arguing."). He then proceeded, both in and following the section quoted by the Court, to note that the issue of unavailability was limited to Dr. Haider and that he had attempted diligently to deal with this late-arising issue. See id. at 27:20-28:3 ("The problem is only with Dr. Haider, and the issue wasn't an issue until the day after the final status conference when she informed me that her father had been discharged from the hospital. That's when I was told that, and unfortunately, my hands are tied. What could I do but try and attempt to get her here? I did speak about it with the Magistrate Judge because it had come up, and it was something that came up suddenly. It

was something that was not in my control.").

Second, with respect to the portion of his statement to which the Court points, Mr. Haysbert stated that "[w]ith respect to my experts, they are all coming with the exception of Dr. Haider" and that "Everybody else is coming." To say that an expert is "coming" is not the same as committing to actually call them to testify.  Defendants even recognized (see Op. Tr. 6:19-21) that Mr. Haysbert was explicit that "they are all coming" did not include Dr. Haider.  Moreover, the context further makes clear that the next sentence from Mr. Haysbert: "Everybody else is here" <u>does not</u> refer to the expert witnesses but rather describes the absence of "logistical problems with local counsel, with trial tech, with attorneys that work with me, with the plaintiff, with the plaintiff's daughter, with other witnesses." <u>Id</u>. at 27:15-19. Mr. Haysbert was speaking off the cuff in terms of witnesses generally and any ambiguity in the statement cited by the Court should not be held against Mr. Haysbert. As the Court itself recognized, "very often attorneys wish they hadn't said the thing they said in exactly the way they said it, but that's just what trial is." Op. Tr. 32:1-3. At that moment, Mr. Haysbert would not have been thinking whether his statement could be interpreted as a commitment to call Dr. Feigenheimer and Mr. Avrit, and should not be held accountable for, at most, vague or inartful words, particularly as sanctions under § 1927 are only permitted for the "serious and studied disregard for the orderly processes of justice." <u>Kiefel v. Las Vegas Hacienda, Inc</u>., 404 F. 2d 1163, 1167 (7th Cir. 1968) (emphasis added); <u>see also</u>, e.g., <u>United States v. Nesglo, Inc</u>., 744 F. 2d 887, 891 (1st Cir. 1984) (same); <u>Ford v. Temple Hosp</u>., 790 F. 2d 342, 347 (3rd Cir. 1986) (same); <u>United States v. Ross</u>, 535 F. 2d 346, 350 (6th Cir. 1976) (same); <u>Jaquette v. Black Hawk County, Iowa</u>, 710 F.2d 455, 462 (8th Cir. 1983) (same); <u>Barnd v. City of Tacoma</u>, 664 F. 2d 1339, 1343 (9th Cir. 1982) (same); <u>Dreiling v. Peugeot Motors of America, Inc</u>., 768 F. 2d 1159, 1165 (10th Cir. 1985) (same);

United States v. Wallace, 964 F. 2d 1214, 1220 (D.C. Cir. 1992) (same).

Given the high bar for imposing sanctions under § 1927, the Court's adoption of a clear-and-convincing-evidence standard of proof, and the requirement that Mr. Haysbert have acted with an improper state of mind, the Court erred in concluding that Mr. Haysbert had represented that he would actually be calling the three expert witnesses to testify.

## IV.   PROCEDURAL ARGUMENTS

First, from a procedural standpoint, the Court imposed sanctions that were not requested by Defendants and without affording Mr. Haysbert the requisite notice of the grounds for sanctions being considered. In simplest terms, the sanctions awarded by the Court were not specifically requested by Defendants.  As a result, Mr. Haysbert did not receive the particularized notice required, and as supported by the request to submit evidence *in camera*, was unaware of the weight the Court had elected to give to Mr. Haysbert's withdrawal of his expert witnesses.  Otherwise, this evidence would have been tendered to the Court prior to this point in time with an *in camera* request.

"An attorney facing sanctions is entitled to notice and some opportunity to respond to the charges." In re Cohen (Bost v. Fox), 122 F.3d 1060 (table), 1997 WL 577583, *2 (4th Cir. 1997) (citing Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980)); see also Roadway Express, 447 U.S. at 757 ("Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice.").  Specifically, "due process requires notice designed to inform the respondent of what matters he must address to avoid sanctions." In re Cohen, 1997 WL 577583 at *3 (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350 (3d Cir. 1990)).

Despite the laundry list of bad acts alleged by Defendants, they have been consistently clear that their request for sanctions was based on compensation for the excess costs associated

with the mistrial. As summarized in Defendants' Motion, "[i]n short, Haysbert violated numerous rules of the court, and his misconduct was so pervasive that the case could no longer be fairly tried to a jury. For this misconduct, sanctions are necessary as the defense incurred large sums of money in legal fees and expenses for experts as a result." Memorandum in Support of Defendants' Motion for Sanctions ("Defendants' Motion" or "Defs' Mot.") (ECF No.: 327) at 1. With respect to § 1927 in particular, Defendants argued that "Plaintiff counsel's intentional misconduct has multiplied the proceedings in this case, causing two trials." Id. at 7.

According to Defendants, "[t]he misconduct began with an untimely motion to allow remote testimony on August 6, which ultimately demonstrated that Haysbert had not made arrangements for his out of state experts to appear in person." Id. at 10. Defendants therefore sought an award of "costs and attorneys' fees starting from August 6, 2023 through August 14, 2023." Id. at 15. While Defendants complained about a vast array of alleged misconduct, all of it was alleged to have been in support of a single harm: the mistrial. See 5/15/24 Hearing Tr. 38:4-39:15 (Defendants' counsel describing how "all of" Mr. Haysbert's conduct allegedly prevented Defendants from receiving a fair trial and resulted in a mistrial); see also Defs' Mot. at 10 ("Now, plaintiff seeks to have the entire case be re-tried (as Plaintiff has filed a request for a new trial date) and Defendants will have to pay additional attorneys' fees and costs to bring this case to a resolution . . .. If Plaintiff's counsel's misconduct had not occurred, the mistrial would not have occurred, and a new trial would not be necessary."); 15 ("All of this culminated in a mistrial, which severely prejudices Defendants. Defendants had their exhibits, their witnesses, and their expert witnesses ready to go. Defendants' experts had to sit around for multiple hours because Haysbert and McKelvey kept delaying the presentation of evidence with their tactics. Defendants should not have to incur these costs and their attorneys' fees when it was Plaintiff's

counsel's intentional misconduct that caused a mistrial."); Defendants' Supplemental Motion for Sanctions ("Supp.") at 14 ("Since <u>Goodyear</u>, there does not appear to be any published decisions discussing an appropriate amount of fees to award after a mistrial."). <u>Id</u>.

While Defendants complained about Mr. Haysbert's decision not to call Dr. Haider, Dr. Feigenheimer, and Mr. Avrit (<u>see</u> Defs' Mot. at 3-4, 10), they never alleged that it resulted in a distinct harm (and certainly not one related to the two pretrial conferences). Defendants failed to provide any evidence that Mr. Haysbert did not intend to do so beyond the fact that, after withdrawing the expert witnesses, he did not submit proof of their travel arrangements. <u>Id</u>. at 10 ("When challenged on the proof of preparation, Haysbert withdrew 3 of the experts and never submitted the information ordered by the Court. In short, there was no proof that the experts were even scheduled to appear."); Supp. at 20-21 ("Haysbert has never given this Court any evidence to substantiate his assertion that he intended on calling his experts at trial."); 5/14/24 Tr. 10:6-14 (Mr. McGavin: "The bad faith, Your Honor, is that there was never any evidence presented by Mr. Haysbert that he had made arrangements for Dr. Haider to be present. There was no plane ticket. There was no hotel. There was no correspondence, no email, nothing. And no trial lawyer prepares to bring an expert in from Houston, Texas, without arrangements and communication, and we still haven't seen that. And we don't believe there is any evidence that she was expected to be present at trial."); <u>but</u> <u>see</u> Mr. Haysbert's Opposition to Defendants' Motion ("Opp.") at 19-21; Mr. Haysbert's Second Supplemental Opposition to Defendants' Motion ("Supp. Opp.") at 19 n.3, 25-26.[5]

---

[5] While counsel for Defendants alluded at the May 15, 2024 hearing to Plaintiff's August 6, 2022 motion to permit Dr. Haider, Dr. Filler, Dr. Feigenheimer, and Ms. Kristina Perry to testify remotely, <u>see</u> ECF 257, 257-1, he never identified how it was supposedly relevant or alleged that it evidenced Mr. Haysbert's lack of intention to call Dr. Haider, Dr. Feigenheimer, or Mr. Avrit at trial a year later. <u>See</u> 5/14/24 Tr. 6:15-7:4 (Mr. McGavin: "But before the first trial the same motion was filed on the eve of trial regarding Dr. Haider, to which we objected, and so here we go again on trial number three a motion to --," "So, either a day or two before that scheduled trial, so that came up before. So, there was a history of having filed an emergency motion to allow Dr. Haider to testify, and she was the

Indeed, Defendants did not even directly allege that Mr. Haysbert had no intention of calling the experts at trial. See Defs' Mot. at 10; Supp. at 4 n.2. ("Defendants argue that this reasoning can be extended to Haysbert's failure to inform the Court and counsel when he reasonably knew that he would not be calling Plaintiff's experts in-person at trial."), 17 ("Months later, Haysbert has never produced any documentation to verify that his experts ever had any intention of testifying at trial."), 20 ("Counsel for Haysbert argues that the decision to not to [sic] call certain experts at trial is 'litigation strategy.' However, that is not the case if Haysbert never intended to call these experts in the first place."); 5/14/24 Tr. 10:25-11:22.[6]

Nevertheless, the Court awarded sanctions compensating Defendants for something other than the mistrial, including for events prior to the August 6-14, 2023 time period identified in Defendants' Motion. And it did so on an allegation that Defendants did not directly make, resting on misrepresentations that were not identified in Defendant's motion, and, most critically,

---

key witness for the plaintiff. The request came, in our view, way too late."). Moreover, a contention made for the first time at oral argument is waived. West Virginia CWP Fund v. Stacy, 671 F. 3d 378, 389 (4th Cir. 2011).

Defendants also did not identify any allegedly false representations until referring to "Plaintiff's witness list and discussions at the Pre- Trial Conference on August 1, 2023" in Defendants' Supplemental Motion. See Supp. at 20. However, the Court correctly does not appear to have considered the new allegations and evidence contained in Defendants' Supplemental Motion, see Order at 1 ("This matter is before the Court on Defendants' Motion for Sanctions, ECF No. 326.); see also Supp, Opp. at 31-34 (explaining why the Court should not consider Defendants' new allegations, evidence, and arguments).

[6] In this exchange, reproduced below, counsel for Defendants only conceded that "I think that's accurate" after being prompted by the Court.

THE COURT: It sounds, just to say it explicitly, that what you're really alleging is that Mr. Haysbert prepared for trial with no intention of calling his experts in person and that there were, then, associated misrepresentations or at least a misleading of the Court and defendant. I mean, I just want to be clear. Because when you couch it in this, "There is not evidence of this," I think, to me, that's what you're alleging, and if that's what you're alleging, then I want to be clear that that's what you're alleging.
MR. MCGAVIN: Well, I think that that could have easily been put to rest by saying, you know, "Here is an email" or "Here is my correspondence with Dr. Haider."
THE COURT: That's not my question, Mr. McGavin.
You're asking for sanctions, and you are saying that he proceeded in bad faith, and it sounds to me like what you are suggesting but not saying is that he never intended to bring his experts in person for trial. Is that right?
MR. MCGAVIN:  Well --
THE COURT: If that's not what you're saying, then tell me that.
MR. MCGAVIN: No. I think that's accurate.

"based . . . upon" evidence to which Defendants never pointed, Op. Tr. at 23:23-24:2 ("I will find that Mr. Haysbert did not intend to call them, at least by the time of the final pretrial conference in 2022. And I have based that upon the earlier filed motion, which I think makes clear that in that context he didn't intend to call them.").

Thus, Mr. Haysbert was never provided notice that sanctions could be awarded based on allegations and evidence outside of Defendants' Motion, including (i) for a harm other than the mistrial; (ii) for excess costs incurred prior to August 6, 2023; (iii) in reference to Plaintiff's witness lists included in the Final Pretrial Order and Supplemental Final Pretrial Order; and (iv) based on Plaintiff's 2022 motion for remote testimony. Given these critical differences between what Defendants alleged and the Court's conclusion and reasoning, it cannot be said that Defendant's Motion (or even their subsequent briefing and oral arguments) provided Mr. Haysbert with the requisite notice of the sanctions being considered. See Jones, 899 F.2d at 1357 (notice must be sufficient to inform a party "as to the particular factors that he must address if he is to avoid sanctions"). And, while the Court is not bound by Defendant's motion, it may only "impose sanctions sua sponte [if] it provides the attorney with notice regarding the sanctionable conduct and an opportunity to be heard." Jolly Group, Ltd. v. Medline Industries, Inc., 435 F. 3d 717, 720 (7th Cir. 2006).

In particular, it was legal error not to provide Mr. Haysbert the opportunity to address the evidence on which the Court's conclusion was based. This error requires the Court to reconsider its decision because Mr. Haysbert would have explained that the cited evidence does not support the Court's inferences or conclusions. Accordingly, the Court should grant Mr. Haysbert's motion to correct a clear error of law and prevent manifest injustice.

Second, with all due respect to the Court's measured evaluation of the evidence, Mr.

22

Haysbert challenges the conclusion[7] that his alleged misrepresentations multiplied the proceedings. Section 1927 authorizes sanctions against an attorney "who so multiplies the proceedings in any case . . .." Dictionaries define "multipl[y]," as used here, as "to increase in number especially greatly or in multiples," Multiply, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/multiply (last accessed July 25, 2024), "to increase, or to increase something, very much in number," Multiply, Cambridge English Dictionary, https://dictionary.cambridge.org/dictionary/english/multiply (last accessed July 25, 2024), and "to increase or make something increase very much in number or amount." Multiply, v., Oxford Advanced American Dictionary, available at https://www.oxfordlearnersdictionaries.com/definition/american_english/multiply (last accessed July 25, 2024). As all of these definitions indicate, to multiply something is to make it increase "greatly" or "very much." This meaning is further reinforced by the use of "so" immediately before "multiplies," indicating that such multiplication must be significant.

"A statute's plain meaning must be enforced," U.S. Nat. Bank of Ore. v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 454 (1993), "since that approach respects the words of Congress," Lamie v. U.S. Trustee, 540 U.S. 526, 536 (2004). Here, Congress authorized sanctions under § 1927 for attorneys whose conduct "so multiplie[d] the proceedings." Had Congress wished to authorize sanctions for causing any increase in time expended on the proceedings, it could have selected terms such as "adds to," "increases," or "extends." But it did not. Instead, it chose "multiplies," thereby indicating that § 1927 is limited to misconduct that extends the proceedings "greatly" or "very much."

In this case, the misconduct cited by the Court did not extend the proceedings longer than

---

[7] If only for purposes of specifically preserving the issue for appeal.

they otherwise would have lasted. Rather, the Court found that Mr. Haysbert's alleged misrepresentations added to the time spent on trial and pretrial proceedings by, at most, three hours total. Specifically, the Court found that counsel for Defendants expended a total of one hour "prepar[ing] for and address[ing] issues related to the experts at the Final Pretrial Conference on July 29, 2022, and the Supplemental Final Pretrial Conference on August 1, 2023," and a total of two hours "prepar[ing] for and address[ing] issues related to the experts on the first day of trial." Order at 1-2. Even this figure overstates the amount of actual time, as Defendants had two attorneys present at trial and the second pretrial conference.

In the context of the overall proceedings, causing an increase of less than three hours of time, split between two lawyers, should not be considered "multipl[ying]" the proceedings. Those few hours, spread over three separate occasions in the course of more than a year, did nothing to delay the case. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) (noting that "the purpose of [§ 1927] was 'to deter unnecessary delays in litigation.'") (quoting H.R. CONF. REP. NO. 1234, 96TH CONG., 2D SESS. 8); see also Wisc. Dept. of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 231 (1992) (describing "the venerable maxim de minimis non curat lex" as "part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept . . ..").

Awarding § 1927 sanctions under these circumstances is inconsistent with Harvey v. Cable News Network, Inc., 48 F. 4th 257 (4th Cir. 2022). In that case, the Fourth Circuit overturned sanctions under § 1927 because it considered that misconduct which extended the proceedings by a few weeks did not "result in protracted litigation to the extent that this Court and others have found bad faith that warranted sanctions." Id. at 279-80. Accordingly, it was clear legal error for the Court to impose sanctions for multiplying the proceedings based on the

24

additional less-than-three-hours of time at issue here.

**V.**     <u>**CONCLUSION**</u>

For all of the foregoing reasons, Mr. Haysbert respectfully prays that the Court will grant

this Motion, permit him to submit the privileged evidence described herein for the Court's *in*

*camera* review, and deny Defendants' Motion for Sanctions in its entirety.

Respectfully submitted,

Date: August 6, 2024            By:     _____/s/_____
                                        Mary T. Morgan, Esq.
                                        Virginia State Bar No. 44955
                                        *Counsel for Interested Party, Nazareth M. Haysbert*
                                        INFINITY LAW GROUP, P.L.C.
                                        4646 Princess Anne Road, Unit 104
                                        Virginia Beach, Virginia 23462
                                        Telephone: (757) 609-2702
                                        Facsimile: (866) 212-1310
                                        Email: mary@infinitylawva.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of August 2024, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

John D. McGavin, Esq.
McGAVIN, BOYCE, BARDOT,
THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
jmcgavin@mbbtklaw.com
*Counsel for Defendants*

I FURTHER CERTIFY that I will send the document by electronic mail and U.S. Mail to the following non-filing user:

Joann Haysbert
244 William R. Harvey Way
Hampton, VA 23669
Email: joannhaysbert@yahoo.com
*Pro Se Plaintiff*

_____/s/_____
Mary T. Morgan, Esq.
Virginia State Bar No. 44955
*Counsel for Interested Party,*
*Nazareth M. Haysbert, Esq.*
INFINITY LAW GROUP, P.L.C.
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 609-2702
Facsimile: (866) 212-1310
Email: mary@infinitylawva.com